Rachael D. Lamkin
LAMKIN IP DEFENSE
One Harbor Drive, Suite 300
Sausalito, CA 95965
RDL@LamkinIPDefense.com
916.747.6091
*Counsel for Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DIGITAL VERIFICATION SYSTEMS, LLC**<br><br>                              Plaintiff,<br><br>              v.<br><br>**ENCYRO, INC.**<br><br>                              Defendant. | Case No. 5:22−cv−00686−JWH−SP<br><br>**ANSWER, AFFIRMATIVE DEFENSE, AND COUNTERCLAIMS** |

**ENCYRO'S ANSWER, AFFIRMATIVE DEFENSE, AND COUNTERCLAIMS**

Defendant Encyro, Inc. ("Encyro") hereby respectfully responds to Plaintiff's Complaint, Dkt. No. 1.

## PARTIES AND JURIDICTION

1.      Admit this is an action for patent infringement.   Acknowledge that Plaintiff (DVS") appears to be seeking an injunction.  Denied that DVS is entitled to an injunction.

Answer, AD, & CCs

1

2.      Admitted.

3.      Encyro lacks knowledge or information sufficient to form a belief about the truth of this allegation, and on that basis denies same (hereafter, "denied pursuant to Rule 8(b)(5)").

4.      Admitted.

5.      Encyro will not dispute personal jurisdiction in this matter but denies any acts of infringement.

6.      Admit that Encyro offers its platform for sale worldwide, including in this district. Denied that such fact is relevant for jurisdiction.  Denied as to infringement.

**VENUE**

7.      Although DVS' stated facts are largely irrelevant to the venue calculus, Encyro does not dispute venue for this matter.

**COUNT I**

**(INFRINGEMENT OF US PATENT NO. 9,054,860)**

8.      No response required.

9.      Admitted.

10.     Denied pursuant to Rule 8(b)(5).

11.     Admitted.

12.     Denied that the '860 Patent is valid.   The remaining facts are denied pursuant to Rule 8(b)(5).

13.     Denied.

14.     Encyro provides an email encryption and secure file sharing service that you may access from any web browser, or from Outlook.   Admitted that as part of that service some electronic signature functionality is provided.   Admitted that the screenshots provided by DVS appear to be

from Encyro's website.[1]  As for the remaining facts, denied.

15.    Admitted that the screenshots provided by DVS appear to be from Encyro's website. As for the remaining facts, denied.

16.    Admitted that the screenshots provided by DVS appear to be from Encyro's website. As for the remaining facts, denied.

17.    Admitted that the screenshots provided by DVS appear to be from Encyro's website. As for the remaining facts, denied.

18.    Admitted that the screenshots provided by DVS appear to be from Encyro's website. As for the remaining facts, denied.

19.    Admitted that the screenshots provided by DVS appear to be from Encyro's website. As for the remaining facts, denied.

20.    Admit that Encyro will continue to offer its platform.   Denied that DVS is entitled to an injunction.

21.    Denied.

## AFFIRMATIVE DEFENSE: FAILURE TO MARK

1.    DVS is not entitled to pre-suit damages as it has failed to follow the requirements of Section 287.

## COUNTERCLAIMS

## PARTIES, VENUE, AND JURIDICTION

1.    Counterclaimant Encyro is a California Corporation with a principal place of business

---

[1] This paragraph and the majority of DVS' Complaint violates Rule 10, "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

in this District.

2.      Upon information and belief, counterclaim-defendant DVS is Texas LLC with its principal place of business in Fort Lauderdale, Florida.

3.      This Court has jurisdiction over DVS because it filed its Complaint in this District.

4.      This Court has subject matter jurisdiction over Encyro's counterclaims under Rule 13(a).

5.      Venue is proper as the counterclaims based on 28 U.S.C. § 1391.

**COUNTERCLAIM NO. 1:**

**Non-Infringement**

6.      As part of its pre-suit due diligence, Plaintiff DVS or its representatives visited encyro.com.

7.      Plaintiff DVS or its representatives reviewed the electronic signature teachings on encyro.com.

8.      In the '860 Patent, FIG. 6 is a schematic representation of one embodiment of the digital identification module of said specification.

9.      This image is an accurate representation of Figure 6 from the '860 Patent:



10.    The '860 Patent states, "as illustrated in FIG. 6, the digital identification module 20 of at least one embodiment of the present system 10 includes a primary component 22 and one or more corresponding metadata components 24."

11.    Claim 1 limitation (d) states, "said at least one digital identification module comprising at least one primary component structured to at least partially associate said digital identification module with said at least one entity."

12.    The Accused Product does not have at least one digital identification module comprising at least one primary component structured to at least partially associate said digital identification module with said at least one entity.

13.    Further, the Accused Product does not have at least one digital identification module that is cooperatively structured to be embedded within only a single electronic file.

14.    To name but two examples of non-infringement.

## COUNTERCLAIM NO. 2:

### Invalidity (§§ 102, and 103)

15.    The priority date of the '860 Patent is January 2, 2008.

16.    DVS did not invent digital signatures.

17.    Leigh Rothschild did not invent digital signatures.

18.    In 1976 Whitfield Diffie and Martin Hellman first described the idea of a digital signature scheme, but they only theorized that such schemes existed.

19.    In 1977, Ronald Rivest, Adi Shamir and Len Adleman invented the RSA algorithm, which could be used to produce a kind of primitive digital signature.

20.    In 1988, Lotus Notes 1.0, which used the RSA algorithm, became the first widely marketed software package to offer digital signatures.

21.     In 1999, The ability to embed digital signatures into documents is added to PDF format.

22.     In 2000, The ESIGN Act makes digital signatures legally binding.

23.     In 2002, SIGNiX is founded and becomes the most broadly used cloud-based digital signature software.

24.     The first widely marketed software package to offer digital signature was Lotus Notes 1.0, released in 1989.

25.     DocuSign started offering electronic or digital signatures in 2003.

26.     In reversing the Examiner during the original prosecution of the '860 Patent, the PTAB stated, "Accordingly, the Examiner has not persuasively explained how Caphyon's digital certificate with a validity period teaches "within **only** a single electronic file" (emphasis added by PTAB).

27.     Employing technology that limits electronic signatures to "only a single electronic file" is a simple solution.

28.     Employing technology that limits electronic signatures to "only a single electronic file" would have been obvious to a person of skill in the art ("POSITA").

29.     Employing technology that limits electronic signatures to "only a single electronic file" is not a complex solution.

30.     Based on the above, including the ESIGN ACT and DocuSign, the asserted claims are anticipated and/or obvious.

**COUNTERCLAIM NO. 3:**

**Section 101 Ineligibility**

31.     During the '860 prosecution history ("PxHx"), on or about February 1, 2011, Examiner Louie rejected Claim Nos. 1-44 pursuant to 35 U.S.C. ¶101 ("Section 101").

32.     During the '860 PxHx, on or about April 5, 2011, applicant Rothschild by and through his counsel ("applicants") amended at least claim 1 to add the following language, "said at least one digital identification module is cooperatively structured to be embedded within only a single electronic file".

33.     During the '860 PxHx, on or about April 5, 2011, applicants stated, "A software module/component, per se, is incapable of creating a digital identification module."

34.     During the '860 PxHx, on or about April 5, 2011, applicants stated, "In fact, a software, per se, is incapable of performing any function. Only when software is coupled to hardware is software capable of performing a particular function."

35.     During the '860 PxHx, on or about April 5, 2011, applicants stated, "Therefore, properly construed, the claimed 'module generating assembly' must include hardware, and thus, independent claims 1 and 24 are directed to statutory subject matter within the meaning of 35 U.S.C. § 101."

36.     During the '860 PxHx, on or about April 5, 2011, applicants stated, "The claimed limitations refer to 'a single electronic file' (emphasis added)."  (emphasis added by applicants.)

37.     Applicants made the statement quoted in paragraph 36 to overcome the prior art cited by the Examiner.

38.     During the '860 PxHx, on or about June 15, 2011, the Examiner again rejected at least Claim 1 citing Section 101.

39.     During the '860 PxHx, on or about October 27, 2011, applicants filed an Appeal Brief before the Board of Patent Trials and Interferences ("the Board").

40.     Regarding Section 101, in their Appeal Brief, applicants stated, "A software module/component, per se, is <u>incapable</u> of creating a digital identification module. In fact, a software, per se, is incapable of performing any function. Only when software is coupled to hardware is software capable of performing a particular function. Therefore, properly construed, the claimed 'module generating assembly' must include hardware, and thus, independent claims 1 and 24 are directed to statutory subject matter within the meaning of 35 U.S.C. § 101."

41.     Patent claims covering software and hardware can be patent ineligible.

42.     Am. Axle & Mfg. v. Neapco Holdings LLC, 967 F.3d 1285 (Fed. Cir. 2019) issued before DVS filed the instant complaint.

43.     During the '860 PxHx, on or about November 28, 2014, the Board made the following finding:

> **Rejection of Claims 1–16, 18–25, and 27 under 35 U.S.C. § 101**
>
> The Examiner finds claims 1–16, 18–25, and 27 are non-statutory because they are drawn to software modules and do not recite hardware. Ans. 7 and 40.  Appellant contends the claims must include hardware because in order to create a digital identification module, the software that performs the function must be coupled to hardware.  App. Br. 8–9; Reply Br. 4.  We agree with Appellant.
>
> The Specification describes the limitation "digital identification module" as "one or more objects, codes and/or other devices" (Spec. 7:14–15).  Here, the Specification recites hardware, software, or a combination of both.  *Id.*  Claims 1–16, 18–25, and 27 are limited to hardware or the combination of hardware and software because the claim is a system claim that must have corresponding structure to perform the functional limitation of the software.
>
> Accordingly, for the reasons stated *supra*, we do not sustain the Examiner's rejection of claims 1–16, 18–25, and 27 under 35 U.S.C. § 101.

Answer, AD, & CCs

44.     The mere fact alone that a claim contains hardware is not sufficient to render it patent eligible.

45.     During the '860 PxHx, on or about November 28, 2014, the Board did not follow the test set forth in Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 573 U.S. 208, 134 S. Ct. 2347 (2014)

46.     The claims of the '860 Patent are drawn to abstract subject matter and no technological advancement saves the claims at step two of *Alice*.

**REQUEST FOR JURY TRIAL**

Encyro requests a jury trial for all issues so triable.

**PRAYER FOR RELIEF**

Encyro respectfully requests the following relief:

1.  An order invalidating all asserted claims;

2.  An order finding the asserted claims unenforceable;

3.  An order finding that the accused products do not infringe the asserted claims;

4.  All fees and costs pursuant to 35 U.S.C. §285 and 29 U.S.C. §1927.

Respectfully submitted,

*Rachael D. Lamkin*
Rachael D. Lamkin

*Attorney for Defendant*

Answer, AD, & CCs

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of June, 2022, a true and accurate copy of the above and foregoing:

**ANSWER, AFFIRMATIVE DEFENSE, AND COUNTERCLAIMS**

Was filed with the Court's CM/ECF system, which provides service to all counsel of record.

*Rachael D. Lamkin*
Rachael D. Lamkin