Rachael D. Lamkin
LAMKIN IP DEFENSE
One Harbor Drive, Suite 300
Sausalito, CA 95965
RDL@LamkinIPDefense.com
916.747.6091

*Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DIGITAL VERIFICATION SYSTEMS, LLC<br><br>      Plaintiff,<br><br>  v.<br><br>ENCYRO, INC.<br><br>      Defendant. | Case No. 5:22−cv−00686−JWH−SP<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR A SECURITY BOND** |

**DEFENDANT'S NOTICE OF MOTION
AND MOTION FOR A SECURITY BOND**

Pursuant to Ninth Circuit precedent, the Court's inherent authority, and

California Code of Civil Procedure § 1030, Defendant respectfully moves for a

security bond covering Defendant's accrued and anticipated costs and attorney's fees.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on Friday December 2, 2022, at 9:00 am, or as soon thereafter as counsel may be heard by the above-titled Court, located at Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California 92701-4516, Courtroom 9D, 9th Floor, Defendant Encyro Inc. will and hereby do move the Court to find that Plaintiff DVS should post a security bond for accrued and estimated costs and fees through a claim construction order.  Encyro's motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support thereof ("Motion"), the Declaration of Rachael Lamkin and exhibits attached thereto.

## STATEMENT OF THE ISSUE TO BE DECIDED

Given Plaintiff's litigation conduct and previous refusals to honor court orders awarding attorney's fees, whether Plaintiff DVS should be ordered to post a security bond covering accrued and estimated costs and fees for a period from inception of this matter through the issuance of a claim construction order.

## LOCAL RULE 7-3 CONFERENCE OF COUNSEL

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 6 and 29, 2022.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### TABLE OF CONTENTS

I.  INTRODUCTION ……………………………………………………..5

II.  LEGAL STANDARD …………………………………………………6

III.  A SECURITY BOND IS WARRENTED HERE …………………………..8

A. The Statutory Factors Favor a Bond; its Reasonably Probable that DVS
Cannot Carry its Burden to Prove Infringement ………………….…..8

1) DVS Doesn't Even Try to Demonstrate Infringement……………8

2) The Asserted Claims Are (Already Determined to Be)
Invalid……………………….……………………………...14

B. The *Simulnet* Factors Favor a Bond ………………………………...16

1) DVS has little probability of success on the merits, and the purpose
of the suit is extortion……………………………………………16

2) The amount of the requested security is reasonable from the
defendant's perspective …………………………………………19

3) The amount of the requested security is reasonable from the
plaintiff's perspective …………………………………………....20

IV.  EXAMPLES OF ENCYRO'S COSTS……………………………………..21

V.  ATTORNEY'S FEES ARE WARRANTED HERE…………………………22

VI.  CONCLUSION ……………………………………………………….24

1

# TABLE OF AUTHORITIES

2

3

*AF Holdings LLC v. Navasca*, 2013 U.S. Dist. LEXIS 15617, 2013 WL 450383 (N.D. Cal. Feb. 5, 2013). ........................................................................... 7-9, 15, 25

*Baltayan v. Estate of Getemyan*, 90 Cal. App. 4th 1427, 1432, 110 Cal. Rptr. 2d 72 (2001) ................................................................................................. 8

*Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279 (Fed. Cir. 2011). 10

*CenTrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360 (Fed. Cir. 2019); ...................... 10

*Crytek Gmbh v. Cloud Imperium Games Corp.*, No. CV 17-8937 DMG (FFMx), 2019 U.S. Dist. LEXIS 157184 (C.D. Cal. July 22, 2019). .......................................... 9, 18

*Dig. Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335 (Fed. Cir. 1998) ........................ 12

*Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1326 (Fed. Cir. 2011) ............... 18, 22

*Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08 CV 1992 MMA (POR), 2010 U.S. Dist. LEXIS 98229 (S.D. Cal. Sep. 20, 2010) ......................................................... 7

*GeoTag, Inc. v. Zoosk, Inc.*, No. C-13-0217 EMC, 2014 U.S. Dist. LEXIS 24782 (N.D. Cal. Feb. 26, 2014). ...................................................................................... 25

*Haiping Su v. NASA*, No. 5:09-cv-02838-EJD, 2016 U.S. Dist. LEXIS 122604 (N.D. Cal. Sep. 9, 2016) ............................................................................................ 23

*InteraXon Inc. v. NeuroTek, LLC*, No. 15-cv-05290-KAW, 2016 U.S. Dist. LEXIS 129900  (N.D. Cal. Sep. 21, 2016) ...................................................................... 14

*Olympic Devs. AG., LLC v. Nintendo of Am., Inc.*, No. 11-cv-00329 SBA (NC), 2011 U.S. Dist. LEXIS 171144 (N.D. Cal. Dec. 20, 2011) ............................................ 14

*Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361 (Fed. Cir. 2012) ....... 16

*Redisegno.com, S.A. de C.V. v. Barracuda Networks, Inc.*, No. 5:20-cv-00316-EJD, 2021 U.S. Dist. LEXIS 137269 (N.D. Cal. July 22, 2021). .................................... 25

*Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 n.2 (Fed. Cir. 2000) . 12, 13

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*, 858 F.3d 1383 (Fed. Cir. 2017). ....................................................................................... 25

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*, 858 F.3d 1383 (Fed. Cir. 2017). ................................................................................... 19-21

***Rothschild*** *Dig. Confirmation, LLC v. CompanyCam, Inc.*, 494 F. Supp. 3d 263 (D. Del. 2020). ................................................................................................. 18-20

*Rothschild Dig. Confirmation, LLC v. CompanyCam, Inc.*, 494 F. Supp. 3d 263, 267 (D. Del. 2020). ................................................................................................. 18

*Simulnet E. Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573 (9th Cir. 1994) ... 7-9, 17

*Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358 (Fed. Cir. 2021) ............... 13

28

*Uniloc 2017 LLC v. Apple, Inc*., No. 19-cv-01904-WHO, 2019 U.S. Dist. LEXIS
230501 (N.D. Cal. Dec. 16, 2019). ...........................................................................11

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (*en banc*).............16

## I.      INTRODUCTION

Plaintiff treats the federal court system as his personal slot machine.  But unlike a slot machine, here, the gambler faces no risk.  Through his various shell entities, named inventor Leigh Rothschild has filed nearly one thousand patent lawsuits, never reaching the merits, settling matters for extortion-level sums, refusing to honor court-orders when sanctioned.

Mr. Rothschild's litigations are not abstractions, they are not harmless.   Our heavily burdened courts and small businesses—and the human beings behind them—are the ones who pay full price for Mr. Rothschild's "*in terrorem*" business model.[1]

California lawmakers have enacted critical legislation to defend California-based businesses against entities like Rothschild.  Section 1030 security bonds "act[] to prevent out-of-state residents from filing frivolous lawsuits against California residents." *Gabriel Techs. Corp. v. Qualcomm Inc*., No. 08 CV 1992 MMA (POR), 2010 U.S. Dist. LEXIS 98229, at *7 (S.D. Cal. Sep. 20, 2010) (citations omitted); *see also AF Holdings LLC v. Trinh*, No. C 12-02393 CRB, 2012 U.S. Dist. LEXIS 161394, at *5 (N.D. Cal. Nov. 9, 2012) (Breyer, J.).  As shown below, Mr. Rothschild—the named inventor and owner of Plaintiff DVS—has a pattern and

---

[1] *See Elec. Commun. Techs., LLC v. ShoppersChoice.com, LLC*, 963 F.3d 1371, 1377 (Fed. Cir. 2020) (describing "in terrorem tactics" as "threatening litigation in hopes of a quick settlement with no intention of ever testing either the strength of its patent or its allegations of infringement.").

practice of creating shell entities, assigning his patents to said entities, and then filing meritless patent lawsuits against non-infringing entities such that innocent defendants pay the costs of Mr. Rothschild's frivolous extortion attempts.   In cases such as these, Plaintiff should be ordered to post a costs and attorney's fees bond, otherwise known as a security bond.  *Simulnet East Assocs. v. Ramada Hotel Operating Co*., 37 F.3d 573, 574 (9th Cir. 1994); *Gabriel Techs.,* 2010 U.S. Dist. LEXIS 98229, at *6-7.  The imposition of a security bond is "especially common" where, as here, Plaintiff is not a California resident and because there is a "reasonable probability" that Plaintiff DVS cannot evidence its case-in-chief.  *See Gabriel Techs.,* 2010 U.S. Dist. LEXIS 98229, at *7; *Simulnet*, at 574.

Defendant respectfully asks that Plaintiff DVS be ordered to post a security bond in the amount of $150,723 dollars, through claim construction.  Defendant expects that this Honorable Court will find the asserted '860 Patent invalid at claim construction, consistent with the same finding by the United States Patent and Trademark Office.  Defendant respectfully reserves rights to seek additional amounts should the asserted patent not be found invalid at claim construction.

## II.   LEGAL STANDARD

District courts "have inherent power to require plaintiffs to post security for costs." *Simulnet E. Assocs. v. Ramada Hotel Operating Co*., 37 F.3d 573, 574 (9th Cir. 1994).  The question of whether to impose a bond requires district courts to look to the

forum state's law. *Id*.  The California Civil Procedure Code permits courts to require "an undertaking to secure an award of costs and attorney's fees" from a plaintiff. Cal.Civ.Proc.Code § 1030(b).  A defendant may obtain a bond where: (1) plaintiff resides out of the state or is a foreign corporation and (2) there is a reasonable possibility that Plaintiff cannot meet its burden to demonstrate infringement. *See id*.[2] A defendant does not need to show that there is "no possibility" that the plaintiff could win at trial, "but only that it [is] *reasonably possible*" that the defendant will win. *Baltayan v. Estate of Getemyan*, 90 Cal. App. 4th 1427, 1432, 110 Cal. Rptr. 2d 72 (2001) (*quoting* Cal.Civ.Proc.Code § 1030(b)) (emphasis in the original).  This hurdle is a "relatively low" one. *AF Holdings LLC v. Navasca*, 2013 U.S. Dist. LEXIS 15617, 2013 WL 450383, at *1 (N.D. Cal. Feb. 5, 2013).  This two-prong test is the Statutory Test.

Courts also balance several factors in assessing the propriety of requiring a plaintiff to post security for costs, including: (1) the probability of success on the merits, and the background and purpose of the suit; (2) the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective; and (3) the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary

---

[2] Prong two is usually formulated as, "there is a reasonable possibility that the moving defendant will obtain judgment in the action or special proceeding".  But DVS bears the burden of demonstrating infringement.  As such, Defendant formulates prong two as "there is a reasonable possibility that Plaintiff cannot meet its burden to demonstrate infringement".

plaintiff's perspective. *Simulnet*, 37 F.3d at 576. These factors are often called the *Simulnet* factors.

## III. A SECURITY BOND IS WARRENTED HERE

### A. The Statutory Factors Favor a Bond; its Reasonably Probable that DVS Cannot Carry its Burden to Prove Infringement

As noted above, a defendant may obtain a bond where: (1) plaintiff resides out of the state or is a foreign corporation; and (2) there is a reasonable possibility that Plaintiff cannot meet its burden to demonstrate infringement. *Crytek*, 2019 U.S. Dist. LEXIS 157184, at *3; Cal. Civ. Proc. Code § 1030(b). "A defendant does not need to show that there is 'no possibility' that the plaintiff could win at trial, 'but only that it [is] reasonably possible' that the defendant will win." *Crytek*, at *3. "This hurdle is a 'relatively low' one." *Id*. (*quoting AF Holdings LLC v. Navasca*, 2013 U.S. Dist. LEXIS 15617, 2013 WL 450383, at *1 (N.D. Cal. Feb. 5, 2013).)

Plaintiff admits to being an out-of-state Plaintiff. Complaint, ¶3. Thus, prong one is satisfied.

Prong two—whether there is a "reasonable possibility" that Plaintiff cannot meet its burden to demonstrate infringement—must be answered in the affirmative.

### 1) DVS Doesn't Even Try to Demonstrate Infringement

DVS infringement case is so weak, DVS doesn't even try.

First, the asserted claims are system claims. '860 Patent, Dkt. No. 1-1, Column

9, line 7 (hereafter, '860 Patent, 9:1).  To directly infringe a system claim, you must make, sell, or use the entire system, "each and every element" of the claim.  *CenTrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1371 (Fed. Cir. 2019); *Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).   The claimed system has both hardware and software elements, as explained below.  But Encyro only sells a software service; it does not make, use, or sell hardware.   Lamkin Decl., ¶4.

Because Encyro does not make, use, or sell hardware, *i.e.*, does not make, use, or sell each and every element of the asserted claims, it cannot be a direct infringer as a matter of law.  *CenTrak,* 915 F.3d, at 1371; *Centillion,* 631 F.3d, at 1284.

Thus, the only way Encyro can infringe the '860 Patent is as an indirect infringer; *i.e.*, if it can be held vicariously liable for the actions of its customers, who allegedly would combine Encyro's software with their hardware (e.g., a desktop computer) upon use.  *See Centillion,* 631 F.3d, at 1284-86.  DVS does not even try to make that showing.

To demonstrate indirect infringement, DVS would have had to identify, for each claim element, the party responsible for infringement and identify said party's role in said infringement.  *Uniloc 2017 LLC v. Apple, Inc.*, No. 19-cv-01904-WHO, 2019 U.S. Dist. LEXIS 230501, at *24-27 (N.D. Cal. Dec. 16, 2019).  DVS does not even attempt the meet these obligations.  DVS employs cut-and-paste boilerplate allegations of

indirect infringement that fail to meet the minimum standards under the adopted Patent Local Rules.  DVS Infringement Contentions, 8:28, Lamkin Decl., Exh A, at 7:20-11:7; *Uniloc,* 2019 U.S. Dist. LEXIS 230501, at *24-27.

Encyro does not infringe the '860 Patent; DVS makes no genuine attempt to prove otherwise.

By way of second example, the asserted '860 Patent claims a system for verifying the identity of the person who signs a digital document.  '860 Patent, 1:37-61.  The '860 Patent is not complicated—it's a simple piece of hardware and software that verifies a digital signature.[3]

Every asserted claim requires the accused product to have "a module generating assembly structured to receive at least one verification data element corresponding to the at least one entity and create said at least one digital identification module".  '860 Patent, 9:9-13.  If the Accused Product is missing any of these ideas ("limitations") it cannot infringe.  *Dig. Biometrics, Inc. v. Identix, Inc*., 149 F.3d 1335, 1349 (Fed. Cir. 1998) ("An accused device cannot infringe, as a matter of law, if even a single limitation is not satisfied.") (*citing Pennwalt Corp. v. Durand-Wayland, Inc*., 833 F.2d 931, 934-35, 4 U.S.P.Q.2D (BNA) 1737, 1739-40 (Fed. Cir. 1987) (*en banc*).

---

[3] The only reason the patent even issued is because DVS agreed to limit the claims such that the software could only be embedded in a single document.  '860 Patent, Claim 1, 9:21-22.  This limitation is not present in the accused product (again, the accused product does not infringe the '860 Patent).

The actual structure of the claimed "module generating assembly" is unknown. That is, as the United States Patent and Trademark Office's Appeal Board (the "PTAB") has already determined, the '860 Patent does not tell us what a "module generating assembly actually is. As such, the claims are invalid, as discussed below.

But setting invalidity aside, an understanding of the structure of the module generating assembly is not needed to determine that—whatever a module generating assembly is—the accused software does not have one.

During prosecution, Mr. Rothschild told the USPTO and the PTAB, "the claimed module generating assembly (e.g., a computer processor) is hardware." '860 Prosecution History, 3/16/2012 Reply Brief, at 4. Lamkin Decl., Exh B. And Mr. Rothschild told the PTAB, "the claimed 'module generating assembly' must include hardware". *Id.*, 10/27/2011 Appeal Brief, at 8-9. Lamkin Decl., Exh. C. The PTAB agreed that the module generating assembly must include hardware. '860 Prosecution History, 11/28/2014 Decision on Appeal, at 4, Lamkin Decl. Exh. D.

As such, whatever a module generating assembly is, it must include hardware. Again, Defendant does not sell hardware. *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 n.2 (Fed. Cir. 2000) ("[O]ne may not be held liable under 271(a) for 'making' or 'selling' *less than a complete invention*.") (emphasis added); *Synchronoss Techs., Inc. v. Dropbox, Inc*., 987 F.3d 1358, 1368 (Fed. Cir. 2021) (accord).

In its Infringement Contentions, DVS fails to point to a single piece of hardware in the Accused Product, much less hardware that meets the requirements of the asserted claims, *i.e.*, a module generating assembly that is: "[i] structured to receive at least one verification data element corresponding to the at least one entity and [ii] create[s] said at least one digital identification module".  '860 Patent, Claim 1, 9:9-13.

Again, DVS doesn't even try; DVS points to no piece of hardware used or sold by Encyro or its customers that is: "[i] structured to receive at least one verification data element corresponding to the at least one entity and [ii] create[s] said at least one digital identification module".  '860 Patent, Claim 1, 9:9-13.   The relevant portions of DVS' Infringement Contentions are pages 45 to 58.   Lamkin Decl., Exh E.   Nowhere does DVS point to a piece of hardware that is "structured to receive at least one verification data element corresponding to the at least one entity" and nowhere does DVS point to a piece of hardware that "create[s] said at least one digital identification module".  *Id*.   Instead, DVS' Infringement Contentions are wall-to-wall gibberish. *See id*.   In their silence, DVS' Infringement Contentions impliedly admit DVS' does not have the merits.  Either way, they cannot carry the day. *See, e.g., Olympic Devs. AG., LLC v. Nintendo of Am., Inc*., No. 11-cv-00329 SBA (NC), 2011 U.S. Dist. LEXIS 171144, at *4 (N.D. Cal. Dec. 20, 2011) ("infringement contentions are sufficient under Rule 3-1 when they identify specific parts of the accused device by model number or by their physical location as containing the asserted limitations.  On

the other hand, infringement contentions are deficient under Rule 3-1 when they invite one to assume the presence of a limitation in the accused device.") (citations omitted); *InteraXon Inc. v. NeuroTek, LLC*, No. 15-cv-05290-KAW, 2016 U.S. Dist. LEXIS 129900, at *3 (N.D. Cal. Sep. 21, 2016) (accord; collecting cases).

In sum, Encyro does not sell hardware and cannot be a direct infringer of the asserted claims. Further, Encyro is not aware of any hardware that meets the limitations "[i] structured to receive at least one verification data element corresponding to the at least one entity and [ii] create[s] said at least one digital identification module," used by a customer or any other entity. Tellingly, DVS does not even pretend to identify hardware that can satisfy these limitations. Thus, Encyro cannot be an indirect infringer.

Encyro has many more non-infringement positions, including that Encyro does not infringe because the asserted claims require, "said at least one digital identification module is cooperatively structured to be embedded within only a single electronic file." '860 Patent, 9:20-22. As discussed below, DVS refuses to answer Requests for Admission that get to the heart of DVS's inability to demonstrate infringement over this limitation.

When seeking a bond, defendant need not demonstrate that it will prevail on the merits; defendant need only meet the "relatively low" standard that it is "reasonably possible" that plaintiff cannot demonstrate infringement. *AF Holdings LLC v.*

*Navasca*, No. C-12-2396 EMC, 2013 U.S. Dist. LEXIS 15617, at *3-4 (N.D. Cal. Feb. 5, 2013).  Here, that showing has been met; a bond should be ordered.   But DVS' case is weaker yet.

### 2)  The Asserted Claims Are Invalid

In addition to accusing a product that cannot possibly infringe, it is "reasonably possible" that DVS cannot prevail on the merits because the asserted claims are invalid.  As the PTAB has already determined, Claim 1 is a (and because all claims depend on Claim 1, all asserted claims are) means-plus-function claim(s).  Lamkin Decl., Exh F.   In fact, the PTAB initially found that the Petitioner failed to identify the corresponding structure and denied institution.  *See id*.   Upon motion for reconsideration, the PTAB carefully reviewed the patent and all cited evidence and concluded, on the record and as a matter of claim construction, that the patent failed to disclose a corresponding structure for the means plus limitation "a module generating assembly structured to receive at least one verification data element corresponding to the at least one entity and create said at least one digital identification module".  Lamkin Decl., Exh. F.   On the PTAB's careful analysis concluding the asserted claims were invalid, DVS should not have continued to assert the '860 Patent.  *See Raylon, LLC v. Complus Data Innovations, Inc*., 700 F.3d 1361, 1375 (Fed. Cir. 2012) (attorneys have a duty to "stop and think" before continuing to assert potentially invalid patents).

Regardless, "means-plus-function" is a fifty-dollar phrase that simply means the claim covers the "means" or method for doing something, not the actual thing.   When that happens, the actual thing must be disclosed in the patent's specification or the claim is invalid for disclosing a means or method but not the thing, the "structure," to carry out the method. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350-51 (Fed. Cir. 2015) (*en banc*).   For example, with means-plus-function claims covering a method of riding a bicycle, the claims won't disclose a bicycle, they disclose the means of riding a thing (e.g., a means for propelling a human-powered two-wheeled vehicle) and one must look to the specification to discover the thing (the structure) that is ridden (a bicycle).[4]

Again, the PTAB has already determined that Claim 1 is a means-plus-function claim because it contains a generic means (a "module generating assembly").   Lamkin Decl., Exh. F.   And neither the applicant in the '860 Patent *Inter Partes Review*, nor the PTAB could identify the corresponding structure, the non-generic "thing" that is the module generating assembly in the patent.   *Id*.   Indeed, when asked in deposition, even named inventor Rothschild could not identify a module generating assembly that performed the claimed operations.   Rothschild Depo Tr., 26:25-34:5, Lamkin Decl., Exh. G.

---

[4] Although not relevant to the merits of this Motion, an interesting illustration of riding lawn mowers as means-plus-function claims is at *Toro Co. v. Textron, Inc.*, 502 F. Supp. 2d 904 (D. Minn. 2007).

Of course, as noted above, the Court at this stage need not reach the merits of invalidity (or non-infringement).  At this stage, the Court need merely recognize that it is reasonably possible that DVS cannot demonstrate infringement of a valid patent. Any one of the above single positions on non-infringement or invalidity is sufficient to carry the day.

### B.    The *Simulnet* Factors Favor a Bond

In addition to the Statutory Factors, *supra*, courts also balance several factors in assessing the propriety of requiring a plaintiff to post security for costs, including: (1) the degree of probability/improbability of success on the merits, and the background and purpose of the suit; (2) the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective; and (3) the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective.  *Simulnet*, 37 F.3d at 576.

### 1)   DVS has little probability of success on the merits, and the purpose of the suit is extortion

The first *Simulnet* Factor seeks the merits and "whether the litigation appears vexatious".  *Crytek Gmbh v. Cloud Imperium Games Corp.*, No. CV 17-8937 DMG (FFMx), 2019 U.S. Dist. LEXIS 157184, at *9 (C.D. Cal. July 22, 2019).

The merits are addressed above.  As to the vexatious nature of the suit, there is no question that this case reflects the "indicia of extortion".  *Eon-Net LP v. Flagstar*

*Bancorp,* 653 F.3d 1314, 1326 (Fed. Cir. 2011) ("the district court found that Eon-Net's case against Flagstar had 'indicia of extortion' because it was part of Eon-Net's history of filing nearly identical patent infringement complaints against a plethora of diverse defendants, where Eon-Net followed each filing with a demand for a quick settlement at a price far lower than the cost to defend the litigation.")

DVS has asserted the '860 Patent fifty-eight (58) times in district court and none of those cases have ever made it to the merits, none have made it as far as claim construction.  Lamkin Decl., ¶12.   Under well-established law, this set of facts bears the "indicia of extortion".  *See Eon-Net,* 653 F.3d, at 1326-27; *Rothschild Dig. Confirmation, LLC v. CompanyCam, Inc.*, 494 F. Supp. 3d 263, 267 (D. Del. 2020). Mr. Rothschild exhibits "a pattern of troubling litigation conduct. Plaintiff [Rothschild] has asserted the []Patent (and apparently others) numerous times against a broad swathe of defendants. Almost all of those cases failed to advance beyond the pleadings." *Rothschild Dig. Confirmation, LLC v. CompanyCam, Inc.*, 494 F. Supp. 3d 263, 268 (D. Del. 2020).

Further, of DVS' fifty-eight (58) Patent cases, only thirteen (13) defendants have paid any amount of monies to DVS.  Lamkin Decl., ¶¶13-15.  That is, Mr. Rothschild has dismissed forty-five (45) defendants for payment of ***zero dollars***, a fact that Mr. Rothschild understands to be evidence of vexatious litigation; Mr. Rothschild has already been sanctioned, twice, for the exact same conduct.  *See Rothschild Dig.*

*Confirmation, LLC v. CompanyCam, Inc.*, 494 F. Supp. 3d 263, 266 (D. Del. 2020); *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*, 858 F.3d 1383, 1389 (Fed. Cir. 2017).  As the Honorable Richard Andrews concluded of Rothschild, "Plaintiff's business model does not involve actual litigation of cases, or the hiring of a damages expert. The goal is simply a 'nuisance-value' settlement." Order, Case No. 1:20-cv-00258-RGA, at 2, Lamkin Decl., Exh. H.

As found by the Federal Circuit and, so far, three separate district courts, Mr. Rothschild's litigation conduct is vexatious, aimed solely at nuisance value settlements, and therefore worthy of sanction.  *See Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*, 858 F.3d 1383, 1390 (Fed. Cir. 2017) ("the undisputed evidence regarding Rothschild's vexatious litigation warrants an affirmative exceptional case finding here."); *Rothschild Dig. Confirmation, LLC v. CompanyCam, Inc.*, 494 F. Supp. 3d 263, 266 (D. Del. 2020); *see also* Andrews' Order, at 2, Lamkin Decl., Exh. H.[5]

Mr. Rothschild cannot make a colorable argument that the sanctioned plaintiff in *Rothschild Dig. Confirmation, LLC v. CompanyCam, Inc.*, 494 F. Supp. 3d 263, 266 (D. Del. 2020) and *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*, 858 F.3d 1383, 1390 (Fed. Cir. 2017) and *[Rothschild] Display Technologies v.*

---

[5] The issue of attorney's fees was not before Judge Andrews.  In that Order, Judge Andrews denies a motion for default judgment because of Mr. Rothschild's improper business model, *inter alia*.

*Aston Martin*, Case No. 1:20-cv-00258-RGA, and this matter involve distinct plaintiff entities, as the plaintiffs in those matters and this matter were each formed by Leigh Rothschild and are each owned by Leigh Rothschild.  Lamkin Decl., ¶17, Rothschild Depo Tr., Exh I, at 51:17-22, 82:19-83:4, 100:11-15, 104:19-20.  Indeed, the current parent corporation of all Rothschild entities is Patent Asset Management, an entity owned by Leigh Rothschild.  *Id*., at 51:17-22.[6]

Finally, the most relevant fact for this Motion is that Mr. Rothschild refuses to honor the court orders against him.  For example, when the Honorable Judge Noreika ordered Rothchild Digital Confirmation to pay defendant CompanyCam's attorney's fees, Rothschild simply fired his attorneys and refused to honor Judge Noreika's order.  Rothschild Depo Tr., 100:21-101:12, 103:1-3, Lamkin Decl., Exh. I.   The same is true in the RDC matter, where the Federal Circuit remanded and ordered that attorney's fees be awarded, but Rothschild again refused to honor the court order.  *Id*., at 96:2-5.  Defendant Encyro faces the same risk here.   Should this honorable court award attorney's fees to Encyro, Mr. Rothschild will likely simply refuse to pay.

### 2)  The amount of the requested security is reasonable from the defendant's perspective

Defendant seeks accrued and anticipated fees and costs, which are all

---

[6] In his deposition, Mr. Rothschild claimed to only be a part-owner in Patent Asset Management.  He also claimed he didn't know who the other owners were, and could not explain a declaration wherein he claimed to the "the" [sole] owner.

appropriate should the Statutory Factors, *supra*, be met.  *AF Holdings LLC v. Trinh*, No. C 12-02393 CRB, 2012 U.S. Dist. LEXIS 161394, at *4-5 (N.D. Cal. Nov. 9, 2012) (*citing Gabriel Tech. Corp. v. Qualcomm Inc*., No. 08-1992 MMA, 2010 U.S. Dist. LEXIS 98229, 2010 WL 3718848, at *14 (S.D. Cal. Sept. 20, 2010); *Pittman v. Avish P'ship*, No. 10-1390 JST, 2011 U.S. Dist. LEXIS 59992, 2011 WL 9160942, at *8 (C.D. Cal. June 2, 2011); *Kourtis v. Cameron*, 358 Fed. Appx. 863, 2009 WL 4885054, at **1 (9th Cir. 2009); *20th Century Fox Film*, 429 F.3d at 885.

A bond covering anticipated attorney's fees is particularly apt here.  Given DVS' litigation conduct (asserting a weak case with a history of filing cases with no intention of litigating the merits), a failure to award attorney's fees is reversible error. ***Rothschild*** *Connected Devices Innovations, LLC v. Guardian Prot. Servs*., 858 F.3d 1383, 1390 (Fed. Cir. 2017).

The above notwithstanding, in an attempt to lessen the burden on Plaintiff, herein Defendant only seeks costs and fees through claim construction.   Defendant believes it highly likely that this Court will invalidate the asserted claims at claim construction and, as such, only seeks a bond covering the anticipated costs and fees through said order.  Should this Honorable Court decline to invalidate the asserted claims at claim construction, Encyro respectfully reserves rights to seek an increased bond.

### 3)  The amount of the requested security is reasonable from the

**plaintiff's perspective**

Thus far, plaintiff DVS has produced fourteen (14) settlement agreements totalling two-hundred and twenty-nine thousand dollars ($229,000) in settlement monies (or, $16,357 average per case, a number that is considered evidence of extortion[7]).   Mr. Rothschild testified that DVS has retained all of that money. Rothschild Depo Tr., 62:14-63:24, Lamkin Decl., Exh J.   Further, Mr. Rothschild submitted a sworn declaration as the "principal" of Plaintiff DVS where he avers that DVS has received single-payment settlement sums for $150,000 dollars.  Rothschild Depo Exh. 29, ¶15, Lamkin Decl., Exh. K.  As such, DVS should have roughly four-hundred thousand dollars ($400,000) in its bank account and cannot claim hardship over a bond on the amount requested ($150,723).

Finally, Mr. Rothschild has filed nearly one thousand patent litigations.  Lamkin Decl., ¶19.  Mr. Rothschild explains that he "has licensed and sold patents within his patent portfolio to many major Fortune 100 companies around the world, including Apple and Intellectual Ventures."  Rothschild Depo Tr., 75:1-7.  He should not be heard to complain that he cannot cover the bond.

## IV.   EXAMPLES OF ENCYRO'S COSTS

Encyro seeks costs allowable by Local Rule and statute, including costs to serve subpoenas upon the forty-four (44) defendants who were dismissed for zero dollars to

---

[7] *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1326-27 (Fed. Cir. 2011).

ascertain whether they were dismissed because of providing to DVS irrefutable prior art (*i.e.*, evidence that DVS continues to assert his patent even after being provided additional proof of invalidity). Encyro also seeks costs allowed under Federal Rule of Civil Procedure 37(c)(2) because DVS has refused to answer Requests for Admission central to infringement such as, RFA No. 12, "Admit that a user can sign multiple documents with the same digital signature using the accused product." *See, e.g., Haiping Su v. NASA*, No. 5:09-cv-02838-EJD, 2016 U.S. Dist. LEXIS 122604, at *8 (N.D. Cal. Sep. 9, 2016) (Rule 37(c)(2) covers costs, including attorney's fees). As DVS surely knows from its pre-suit investigation, Encyro does not infringe because, for example, all of the asserted claims require, "said at least one digital identification module is cooperatively structured to be embedded within only a single electronic file." '860 Patent, 9:20-22. Tellingly, DVS refuses to answer Requests for Admission that get to the heart of DVS's inability to demonstrate infringement.

Encyro seeks accrued and expected costs in the amount of $38,883 dollars. Lamkin Decl., Exh L.[8]

## V.   ATTORNEY'S FEES ARE WARRANTED HERE

Pursuant to Section 1030, the Court "shall" order a bond where costs and attorney's fees where the movant has a "reasonable possibility" of succeeding on the

---

[8] That said, Encyro has not sought every cost and fee accrued in this matter. Smaller tasks such as drafting meet and confer letters or drafting the proposed scheduling order are not included.

merits:

> (a) When the plaintiff in an action or special proceeding resides out of the state, or is a foreign corporation, the defendant may at any time apply to the court by noticed motion for an order requiring the plaintiff to file an undertaking to secure an award of costs *and attorney's fees* which may be awarded in the action or special proceeding. ***For the purposes of this section, "attorney's fees" means reasonable attorney's fees a party may be authorized to recover by a statute apart from this section or by contract***.

> (b) The motion shall be made on the grounds that the plaintiff resides out of the state or is a foreign corporation and that there is a reasonable possibility that the moving defendant will obtain judgment in the action or special proceeding. . . .

> (c) If the court, after hearing, determines that the grounds for the motion have been established, the court ***shall order*** that the plaintiff file the undertaking in an amount specified in the court's order as security for costs ***and attorney's fees***.

Cal. Civ. Proc. Code § 1030 (emphasis added).

Where the grounds for the bond motion have been established, the court "shall order" plaintiff to post a bond for costs and attorney's fees.   Cal. Civ. Proc. Code § 1030.  35 U.S.C. § 285 provides for attorney's fees in patent cases.   And while Section 1030 requires that a "separate" statute authorize attorney's fees (Cal. Civ. Proc. Code § 1030(a), *supra*), nothing in Section 1030 requires that a movant meet any additional burdens associated with an attorney's fees statute.   As such, cases hold that, if the two requirements of Section1030 are met (foreign plaintiff and "reasonable possibility of prevailing), attorneys fees and costs art shall be ordered under the bond. *AF Holdings LLC v. Trinh*, No. C 12-02393 CRB, 2012 U.S. Dist. LEXIS 161394, at

*4-5 (N.D. Cal. Nov. 9, 2012) (Breyer, J.) (collecting cases); *Redisegno.com, S.A. de C.V. v. Barracuda Networks, Inc.*, No. 5:20-cv-00316-EJD, 2021 U.S. Dist. LEXIS 137269, at *5 (N.D. Cal. July 22, 2021).

That said, at least one court has found that a movant must satisfy both the Section 1030 standard and the Section 285 standard to obtain attorney's fees as part of the bond. *GeoTag, Inc. v. Zoosk, Inc.,* No. C-13-0217 EMC, 2014 U.S. Dist. LEXIS 24782, at *9 (N.D. Cal. Feb. 26, 2014). Defendant believes that the *Geotag* standard is inconsistent with the plain meaning of Section 1030, which clearly merely states that costs and attorney's fees "shall" be awarded if the Section 1030 standards are met. Regardless, even if the Court concludes differently, here, it is "reasonably possible" that the Section 285 standard of "exceptional case" will be met. *See Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*, 858 F.3d 1383 (Fed. Cir. 2017).

Encyro seeks $111,840 in accrued and expected attorney's fees. The undersigned rate of $600 an hour has been determined to be reasonable by the Honorable Judge Noreika. Lamkin Decl., Exh. M, at 2.

## VI.   CONCLUSION

Plaintiff has asserted invalid claims against a product that does not infringe. Plaintiff's owner has a history of such conduct, and a history of refusing to honor attorney's fees awards. It's hard to imagine a case more suited to a security bond.

Defendant respectfully asks that one be issued in the amount of $150,723.

Respectfully submitted,

*Rachael D. Lamkin*
Rachael D. Lamkin

*Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of November, 2022, a true and accurate copy of the above and foregoing:

### **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR A SECURITY BOND**

Was served upon counsel of record via the Court's ECF system.

*Rachael D. Lamkin*
Rachael D. Lamkin