Shea N. Palavan (State Bar No. 339543)
shea@palavan.com
PALAVAN MOORE
**PALAVAN & MOORE, PLLC**
4590 MacArthur Boulevard, Suite 500
Newport Beach, California 92660
Telephone: (832) 800-4133
Facsimile: (855) PALAVAN (725-2826)

Attorneys for Plaintiff,
DIGITAL VERIFICATION SYSTEMS, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| DIGITAL VERIFICATION SYSTEMS, LLC,<br><br>   *Plaintiff*,<br><br>V.<br><br>ENCYRO, INC.,<br><br>   *Defendant*. | Case No. 5:22-CV-00686-JWH-SP<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR A SECURITY BOND (D.I. 22)**<br><br>**JURY TRIAL DEMANDED**<br><br>Judge:   Hon. John W. Holcomb<br>Courtroom: 9D |

COMES NOW, Plaintiff, Digital Verification Systems, LLC (hereinafter, "Plaintiff"), and hereby respectfully submits this *Plaintiff's Response in Opposition to Defendant's Motion for a Security Bond (D.I. 22)*, hereby respectfully requesting this Honorable Court deny Defendant's Motion for a Security Bond (D.I. 22) in its entirety, and, in support thereof, would hereby respectfully show unto this Honorable Court as follows:

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR A SECURITY BOND (D.I. 22)**

Plaintiff's response is based on Defendant's Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Rachael Lamkin and exhibits attached thereto, and the facts and allegations presented therein (collectively, the "Motion"); and Plaintiff's Memorandum of Points and Authorities and the Declaration of Shea N. Palavan attached hereto, along with all exhibits attached thereto (collectively, the "Response").

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR A SECURITY BOND
(D.I. 22)**

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................III

TABLE OF AUTHORITIES ........................................................IV

   Cases ................................................................................iv

   Statutes ...........................................................................vi

   Rules.................................................................................vi

   Treatises ..........................................................................vi

I.      INTRODUCTION AND BACKGROUND ............................1

II.    ARGUMENT AND AUTHORITIES ....................................3

  A. Legal Principles ..........................................................3

    1.  Federal Bond Requirements .....................................3

    2.  CALIFORNIA CODE OF CIVIL PROCEDURE § 1030 ........4

    3.  Bond Requirements in Patent Litigation .................7

  B. No Security Bond is Warranted and Defendant's Motion Must be Denied..............8

    1.  Plaintiff does not contest that it is a corporation residing outside of California. ...................................9

    2.  Defendant has failed to show a reasonable possibility that it will obtain a judgment in this action entitling it to costs or fees................9

    3.  The background and purpose of this action is proper, and Defendant has failed to show that this action has the appearance of vexatiousness. ...........16

    4.  Defendant's requested amount is unreasonable from both parties' perspectives. ...................................22

III.   CONCLUSION AND PRAYER FOR RELIEF....................26

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*A. Farber & Partners, Inc. v. Garber*,
    417 F. Supp. 2d 1143 (C.D. Cal. 2006) .................................................. 6, 20

*Adidas AG v. Under Armour, Inc.*,
    No. 14-130-GMS, 2015 U.S. Dist. LEXIS 192937 (D. Del. Dec. 15, 2015) .............. 15

*Aggarwal v. Ponce School of Medicine*,
    745 F.2d 723 (1st Cir. 1984) ............................................................ 6

*Avocet Sports Tech. Inc. v. Polar Electro Inc.*,
    No. C12-2234 EDL, 2013 WL 4067823 (N.D. Cal. Aug. 1, 2013) ............................ 8

*Batts v. Adams*,
    No. CV 10-8123-JFW (RZx), 2011 U.S. Dist. LEXIS 163311 (C.D. Cal.
    Aug. 31, 2011) ........................................................................... 6

*Black v. Del Webb Cmtys.*,
    No. CV 05-8743 SJO (JWJx), 2006 U.S. Dist. LEXIS 114779 (C.D. Cal.
    Dec. 5, 2006) ........................................................................... 18

*BladeRoom Grp. Ltd. V. Facebook, Inc.*,
    No. 5:15-CV-01370-EJD, 2018 U.S. Dist. LEXIS 1794, 2018 WL 1989530
    (N.D. Cal. Jan. 4, 2018) ................................................................. 5

*Brooke v. Hyatt Corp.*,
    2020 U.S. Dist. LEXIS 84492, 2020 WL 2474372 (N.D. Cal. May 13, 2020) ........... 19

*Brooke v. Hyatt Corp.*,
    No. 19-cv-07658-TSH, 2020 WL 3432643, 2020 U.S. Dist. LEXIS 109980
    (N.D. Cal. June 23, 2020) .............................................................. 19

*Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279 (Fed. Cir.
    2011) ................................................................................... 11

*Code Rebel, LLC v. Aqua Connect, Inc.*,
    No. CV 13-4539 RSWL (MANx), 2014 U.S. Dist. LEXIS 87315 (C.D. Cal.
    June 24, 2014) ................................................................. 5, 22, 23

*Digitech Image Techs., LLC v. Newegg, Inc.*,
    No. 8:12-cv-01688-ODW (MRWx), 2013 U.S. Dist. LEXIS 147633, 2013
    WL 5604283 (C.D. Cal. Oct. 11, 2013).............................................. 17, 19

*Eitel v. McCool*,
    782 F.2d 1470 (9th Cir. 1986) ............................................................ 7

*Elec. Commun. Techs., LLC v. ShoppersChoice.com, LLC*,
    963 F.3d 1371 (Fed. Cir. 2020) ......................................................... 20

*Entrepreneur Media, Inc. v. Smith*,
    279 F.3d 1135 (9th Cir. 2002) ............................................................ 7

*Eon-Net LP v. Flagstar Bancorp*,
    653 F.3d 1314 (Fed. Cir. 2011) ........................................................ 17, 18, 19

*Foundton v. Naschem Co., Ltd.*,
    No. LA CV14-09829 JAK (MRWx), 2015 U.S. Dist. LEXIS 188361 (C.D.
    Cal. Dec. 17, 2015) ........................................................ 4, 7, 8, 14, 23

*Gabriel Technologies Corp. v. Qualcomm Inc.*,
    No. 08 CV 1992 MMA (POR), 2010 U.S. Dist. LEXIS 98229, 2010 WL
    3718848 (S.D. Cal. Sep. 20, 2010) ........................................................ 4, 7, 9, 20

*GeoTag, Inc. v. Zoosk, Inc.*,
    No. C-13-0217 EMC, 2014 U.S. Dist. LEXIS 24782 (N.D. Cal. Feb. 26,
    2014) ........................................................ 7, 8, 17, 19, 20, 23

*Hammett v. Sherman*,
    No. 19-CV-605 JLS (AHG), 2020 U.S. Dist. LEXIS 49793 (S.D. Cal. Mar.
    23, 2020) ........................................................ 7, 9

*In re Merrill Lynch Relocation Management, Inc.*,
    812 F.2d 1116 (9th Cir. 1987) ........................................................ 3

*IPVX Patent Holdings, Inc. v. Voxernet, Ltd. Liab. Co.*,
    No. 5:13-cv-01708 HRL, 2014 U.S. Dist. LEXIS 83860 (N.D. Cal. June 17,
    2014) ........................................................ 4, 7, 14, 15, 23

*Jefferson v. Stockholders Publ'g Co.*,
    194 F.2d 281 (9th Cir. 1952) ........................................................ 4

*Johnson v. Altamirano*,
    418 F. Supp. 3d 530 (S.D. Cal. 2019) ........................................................ 5

*Mankaruse v. Raytheon Co.*,
    855 F. App'x 728 (Fed. Cir. 2021) ........................................................ 4

*McKnight v. Nobu Hosp. Grp.*,
    No. 2:16-cv-02643-APG-BNW, 2020 U.S. Dist. LEXIS 24037 (D. Nev. Feb.
    12, 2020) ........................................................ 6

*Metal Jeans, Inc. v. Lululemon USA, Inc.*,
    No. 2:15-cv-00738-CAS(JCx), 2015 U.S. Dist. LEXIS 72667 (C.D. Cal.
    June 3, 2015) ........................................................ 3, 4, 5, 6, 7, 8, 24, 25

*Money Mailer, LLC v. Brewer*,
    No. C15-1215RSL, 2020 U.S. Dist. LEXIS 97609 (W.D. Wash. June 3,
    2020) ........................................................ 1

*O'Connor v. Nevada*,
    27 F.3d 357 (9th Cir. 1994) ........................................................ 7

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545, 134 S.Ct. 1749, 188 L. Ed. 2d 816 (2014) ........................................................ 8

*Pittman ex rel. L.P. v. Avish P'ship*,
    525 F. App'x 591 (9th Cir. 2013) ........................................................ 7, 8, 24

*Rosales v. Cty. of San Diego*,
  No. 19-CV-2303-JLS(LL), 2020 U.S. Dist. LEXIS 164436 (S.D. Cal. Sep. 9,
  2020) ............................................................................................................... 5, 9

*Schmidt v. Hermann*,
  614 F.2d 1221 (9th Cir. 1980) ......................................................................... 6

*Shannon v. Sims Serv. Center*,
  164 Cal. App. 3d 907, 210 Cal. Rptr. 861 (1985)............................................ 4

*Simulnet E. Assocs. v. Ramada Hotel Operating Co.*,
  37 F.3d 573 (9th Cir. 1994) ...............................................................3, 5, 6, 8, 25

*Susilo v. Wells Fargo Bank, N.A.*,
  No. CV 11-1814, 2012 WL 5896577 (C.D. Cal Nov. 19, 2012) ...................... 3

*Thomas v. Gerber Prods.*,
  703 F.2d 353 (9th Cir. 1983) ........................................................................... 6

*United States v. King*,
  200 F.3d 1207 (9th Cir. 1999) ......................................................................... 7

*United States v. National Medical Enterprises, Inc.*,
  792 F.2d 906 (9th Cir. 1986) ........................................................................... 7

*Wilson & Haubert, PLLC v. Yahoo! Inc.*,
  No. C-13-5879 EMC, 2014 U.S. Dist. LEXIS 47157, 2014 WL 1351210
  (N.D. Cal. Apr. 4, 2014) ..................................................................... 3, 5, 25

**Statutes**

28 U.S.C. § 1920 ...............................................................................3, 24, 25

35 U.S.C. § 285 ...............................................................1, 3, 8, 17, 23, 24

CALIFORNIA CODE OF CIVIL PROCEDURE § 1030 .......4, 5, 7, 8, 9, 10, 17, 18, 19, 21, 22, 23

**Rules**

CALIFORNIA RULES OF PROFESSIONAL CONDUCT 3.3 ....................................23

CENTRAL DISTRICT OF CALIFORNIA LOCAL RULE 83-8.2 ..................................4

FEDERAL RULE OF CIVIL PROCEDURE 12 ...........................................................1

FEDERAL RULE OF CIVIL PROCEDURE 37 ..................................1, 3, 5, 22, 23, 24

**Treatises**

10 Wright & Miller, et al.,
  *Federal Practice & Procedure*, Civil § 2671 ..................................................3

# I. INTRODUCTION AND BACKGROUND

Despite the unwarranted blatant personal attacks and hyperbole marring Defendant's Motion which focuses more on Defendant's speculation regarding both Plaintiff and persons who are not a party to ***this*** action,[1] the basis of Defendant's Motion appears to be that Plaintiff should be required to post a security bond for Defendant's past and potential future (a) costs in the amount of $38,883 for a potential, but unsubstantiated, award under Rule 37 of the FEDERAL RULES OF CIVIL PROCEDURE and the potential service of subpoenas on forty-four (44) other defendants sued by DVS; and (b) fees in the amount of $111,840 for potential, but unsubstantiated, awards under both Rule 37 and 35 U.S.C. § 285. Defendant further appears to argue that the sole bases for such a bond requirement is because "Plaintiff"[2] has not answered discovery requests in a manner that Defendant has deemed sufficient and should be punished for the acts of non-parties in other, unrelated cases.

This is a patent litigation case brought by Plaintiff, Digital Verification Systems, LLC, against Defendant, Encyro, Inc. alleging Defendant's infringement of U.S. Patent No. 9,054,860 (the "'860 Patent"). No other persons or entities are a party to this action. Plaintiff filed its Original Complaint (D.I. 1) on April 21, 2022. On June 17, 2022, rather than filing any motion to dismiss under FEDERAL RULE OF CIVIL PROCEDURE 12, Defendant filed its Answer (D.I. 14). The sole affirmative defense asserted by Defendant is failure to mark. D.I. 14 at 3. The three (3) counterclaims asserted by Defendant are (i) non-infringement based solely on two limitations of Claim 1[3] being absent from the infringing products (*id*. at 4-5); (ii) invalidity under 35 U.S.C. §§ 102 and 103 based on statements in prosecution relating to a

---

[1] Such acts are, alone, sufficient for dismissal of Defendant's Motion. *See Money Mailer, LLC v. Brewer*, No. C15-1215RSL, 2020 U.S. Dist. LEXIS 97609, *7 (W.D. Wash. June 3, 2020).
[2] Plaintiff is placed in quotes here, as Defendant's Motion, from the outset, continuously improperly merge Plaintiff with the named-inventor of the asserted '860 Patent. *See, e.g.*, Motion at 1-2 (erroneously arguing, without support, that the actions of Mr. Leigh Rothschild, who is not a party to this action, somehow require Plaintiff, a wholly separate legal entity, to post a bond); Motion at 17 (again, erroneously arguing, without support, that the actions of Mr. Rothschild and a separate entity, in a wholly separate case, somehow relate to this action); Motion at 17 (erroneously arguing "Mr. Rothschild has dismissed forty-five (45) defendants").
[3] These limitations are (a) "said at least one digital identification module comprising at least one primary component structured to at least partially associate said digital identification module with said at least one entity" and (b) "at least one digital identification module that is cooperatively structured to be embedded within only a single electronic file." D.I. 14 at 5.

single limitation of Claim 1[4] (*id*. at 5-6); and (iii) invalidity under 35 U.S.C. § 101 based on statements in prosecution relating to two limitations of Claim 1[5] (*id*. at 6-8).

The parties exchanged infringement and invalidity contentions pursuant to this Court's Schedule (D.I. 21) and have exchanged discovery responses. Defendant has not filed any motions on either the sufficiency of Plaintiff's contentions or responses, nor has Defendant ever sought to meet and confer on any such insufficiency. Rather, many of Defendant's alleged complaints therefor are brought before this Court for the first time in its Motion. Not only has this deprived Plaintiff any opportunity to properly address these complaints, Defendant's Motion is, at best, premature in view of the actual actions of the parties ***in this action***.

Moreover, Defendant's Motion is nothing more than an end run around the requirements of the many motions which Defendant has intentionally chosen not to file regarding the very issues it now complains of. Indeed, rather than a request for this Court to order Plaintiff to post a security bond, Defendant's Motion is set forth more as a motion to dismiss (which Defendant failed to timely file) or a motion for summary judgment which is not only premature, but, also, not properly submitted with competent supporting evidence. Even treating the Motion as one for a bond request, the Motion fails to satisfy the applicable legal requirements to show Plaintiff's actions in this case are vexatious nor a reasonably possibility Defendant will prevail on any issue permitting an award of costs or fees. Contrary to Defendant's allegations, ***Plaintiff's*** conduct ***in this case*** is not frivolous, vexatious, or an "*in terrorem*" business model seeking only extortion-level sums, ***Plaintiff in this case*** has never ignored a court order, nor has any agency, court, or tribunal made any determination that any of the asserted claims of the '860 Patent are invalid. More specifically, Defendant's Motion provides no evidence or support for these allegations beyond mere attorney argument. Similarly, Defendant's Motion fails to properly provide reasonable basis for any costs or fees requested, nor any evidence it would actually be entitled to same under any cited potential statutory bases for costs or fees.

---

[4] This limitation is "at least one digital identification module that is cooperatively structured to be embedded within only a single electronic file." D.I. 14 at 6.
[5] These limitations are (a) "module generating assembly" and (b) "at least one digital identification module that is cooperatively structured to be embedded within only a single electronic file." D.I. 14 at 7-8.

Further, Defendant's Motion misstates both the law and facts applicable in this case.

Despite this, correctly parsed under the actual law and facts, Defendant appears to seek unreasonable amounts of (a) $7,407.89 in accrued costs and $24,245.85 in expected costs under 28 U.S.C. § 1920; (b) $9,000 in expected costs for an unfiled, speculative motion under Rule 37; and (c) $94,860 in accrued attorneys' fees and $45,000 in expected attorneys' fees under 35 U.S.C. § 285. As set forth in detail below, not only are these costs unreasonable, they are expressly prohibited under applicable law. Thus, for at least those reasons stated herein, Plaintiff hereby respectfully requests this Court deny Defendant's Motion in its entirety.

## II. ARGUMENT AND AUTHORITIES

### A. Legal Principles

#### 1. Federal Bond Requirements

"Nothing in the FEDERAL RULES OF CIVIL PROCEDURE requires a plaintiff to post security for a defendant's costs or attorneys' fees." *Metal Jeans, Inc. v. Lululemon USA, Inc.*, No. 2:15-cv-00738-CAS(JCx), 2015 U.S. Dist. LEXIS 72667, *3 (C.D. Cal. June 3, 2015); *see also Simulnet E. Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994) ("There is no specific provision in the FEDERAL RULES OF CIVIL PROCEDURE relating to security for costs."). "Nonetheless, district courts have inherent authority to impose such a bond requirement, and federal courts often look to the forum state's procedural rules when determining whether to require an undertaking" either by rule or case-to-case determination. *Lululemon*, 2015 U.S. Dist. LEXIS 72667 at *3 (*citing Simulnet*, 37 F.3d at 574 (*citing* 10 Wright & Miller, et al., *Federal Practice & Procedure*, Civil § 2671)); *see also In re Merrill Lynch Relocation Management, Inc.*, 812 F.2d 1116, 1121 (9th Cir. 1987). Here, "[a]lthough district courts often look to state practice to determine whether it is appropriate to require plaintiff to post a security, there is no requirement for federal courts to do so." *Susilo v. Wells Fargo Bank, N.A.*, No. CV 11-1814, *1 (C.D. Cal Nov. 19, 2012); *see Lululemon*, 2015 U.S. Dist. LEXIS 72667 at *3-*4 (*citing Wilson & Haubert, PLLC v. Yahoo! Inc.*, No. C-13-5879 EMC, 2014 U.S. Dist. LEXIS 47157, *2 (N.D. Cal. Apr. 4, 2014) (noting that the application of state law in this area is within the Court's discretion); Wright & Miller § 2671 ("Even though

the district court may look to state practice, it is under no compulsion to do so.") (*citing Jefferson v. Stockholders Publ'g Co.*, 194 F.2d 281 (9th Cir. 1952)). Such authority is provided in this district in a similar manner to California state law (discussed below) under "LOCAL RULE 83-8.2, [which states] the district court 'may, at any time, order a party to give security in such amount as the Court determines to be appropriate to secure the payment of any costs, sanctions or other amounts which may be awarded against a vexatious litigant.'" *Mankaruse v. Raytheon Co.*, 855 F. App'x 728, 733-734 (Fed. Cir. 2021) (*quoting* C.D. CAL. R. 83-8.2).

### 2. CALIFORNIA CODE OF CIVIL PROCEDURE § 1030

"Here, the relevant state statute is CALIFORNIA CODE OF CIVIL PROCEDURE § 1030, which provides:

> (a) When the plaintiff in an action or special proceeding resides out of the state, or is a foreign corporation, the defendant may at any time apply to the court by noticed motion for an order requiring the plaintiff to file an undertaking to secure an award of costs and attorney's fees which may be awarded in the action or special proceeding. For the purposes of this section, "attorney's fees" means reasonable attorney's fees a party may be authorized to recover by a statute apart from this section or by contract.

> (b) The motion shall be made on the grounds that the plaintiff resides out of the state or is a foreign corporation and that there is a reasonable possibility that the moving defendant will obtain judgment in the action or special proceeding.

*Lululemon*, 2015 U.S. Dist. LEXIS 72667 at *4 (*citing* CAL. CODE CIV. PROC. § 1030). "California state courts describe the purpose of [S]ection 1030 as a way to assist California defendants to 'secure costs in light of the difficulty of enforcing a judgment for costs against a person who is not within the court's jurisdiction.'" *Gabriel Technologies Corp. v. Qualcomm Inc.*, No. 08 CV 1992 MMA (POR), 2010 U.S. Dist. LEXIS 98229, *7 (S.D. Cal. Sep. 20, 2010) (*quoting Shannon v. Sims Serv. Center*, 164 Cal. App. 3d 907, 913, 210 Cal. Rptr. 861 (1985)). However, to be clear, § 1030 does not provide for costs or fees on its own and requires an additional showing that, should the reasonable possibility of success come to fruition, a defendant would specifically be entitled to an award of same. *See, e.g.*, *IPVX Patent Holdings, Inc. v. Voxernet, Ltd. Liab. Co.*, No. 5:13-cv-01708 HRL, 2014 U.S. Dist. LEXIS 83860, *4 (N.D. Cal. June 17, 2014) ("court declines to order [plaintiff] to post security for attorney's fees. As noted above, § 1030 ***requires a separate basis for fees***.") (emphasis added); *Foundton*

*v. Naschem Co., Ltd*, No. LA CV14-09829 JAK (MRWx), 2015 U.S. Dist. LEXIS 188361, *4 (C.D. Cal. Dec. 17, 2015) (movant "must show a 'reasonable possibility' that this case is 'exceptional,' such that if it were to prevail on the merits, it would be entitled to an award of attorney's fees"); *Code Rebel, LLC v. Aqua Connect, Inc.*, No. CV 13-4539 RSWL (MANx), 2014 U.S. Dist. LEXIS 87315, *17 (C.D. Cal. June 24, 2014) (denying bond request for costs under Rule 37 "because it is unclear to the Court whether Defendant would be entitled to such fees under FED. R. CIV. P. 37.").

"To satisfy the requirements of [S]ection 1030, the [d]efendant must demonstrate a reasonable possibility of success on each of [the p]laintiff's claims." *Rosales v. Cty. of San Diego*, No. 19-CV-2303-JLS(LL), 2020 U.S. Dist. LEXIS 164436, *5-*6 (S.D. Cal. Sep. 9, 2020) (*quoting Johnson v. Altamirano*, 418 F. Supp. 3d 530, 564 (S.D. Cal. 2019) (*citing Brightwell v. McMillan Law Firm*, No. 16-CV-1696 W (NLS), 2017 U.S. Dist. LEXIS 228249 (S.D. Cal. May 12, 2017))). "Section 1030(b)'s 'reasonable possibility' standard 'is relatively low[,' but ']not so low as to be non-existent.'" *Id.* (*quoting Wilson*, 2014 WL 1351210 at *3). However, "if [d]efendants do not show a reasonable possibility of defeating even one of [p]laintiff's claims, the Court must deny the motion." *Johnson*, 418 F. Supp. 3d at 564.

Nevertheless, "[d]istrict courts should not 'read [S]ection 1030 so broadly as to require every out-of-state litigant who brings a non-frivolous suit in California to post a bond simply because there is a reasonable chance the defendant <u>may</u> prevail.'" *Id.* (*citing BladeRoom Grp. Ltd. V. Facebook, Inc.*, No. 5:15-CV-01370-EJD, 2018 U.S. Dist. LEXIS 1794, *1 (N.D. Cal. Jan. 4, 2018)) (emphasis in original); *see also Lululemon*, 2015 U.S. Dist. LEXIS 72667 at *5. The Ninth Circuit has cautioned that, "'[i]n requiring a security bond for defendants' costs, care must be taken not to deprive a plaintiff of access to the federal courts.'" *Id.* (*quoting Simulnet*, 37 F.3d at 575-576). "While it is neither unjust nor unreasonable to expect a suitor to put his money where his mouth is, toll-booths cannot be placed across the courthouse doors in a haphazard fashion." *Id.* (internal quotation marks omitted).

Additionally, once the requirements of § 1030 are met, the court should then consider "the propriety of requiring plaintiff to post security for costs." *A. Farber & Partners, Inc. v.*

*Garber*, 417 F. Supp. 2d 1143, 1146 (C.D. Cal. 2006)). Indeed, the Ninth Circuit has cautioned that, in making a determination as to whether to require a plaintiff post a bond for a defendant's costs, "care must be taken not to deprive a plaintiff of access to the federal courts. To do so has serious constitutional implications. Our statutes and case law make it evident that we studiously avoid limitation of access to the courts because of a party's impecunious circumstance." *McKnight v. Nobu Hosp. Grp.*, No. 2:16-cv-02643-APG-BNW, 2020 U.S. Dist. LEXIS 24037, *5 (D. Nev. Feb. 12, 2020) (*quoting Simulnet*, 37 F.3d at 575-576); *see also Lululemon*, 2015 U.S. Dist. LEXIS 72667 at *5. "Consequently, the Ninth Circuit has explained that a court considering whether to require a plaintiff to post an undertaking should balance '(i) the degree of probability/improbability of success on the merits, and the background and purpose of the lawsuit (*e.g.*, whether it is frivolous or vexatious); (ii) the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective (*e.g.*, a defendant's legitimate need for prophylaxis of a bond); and (iii) the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective (*e.g.*, a plaintiff's ability to post the bond).'" *Batts v. Adams*, No. CV 10-8123-JFW (RZx), 2011 U.S. Dist. LEXIS 163311, *4-*5 (C.D. Cal. Aug. 31, 2011) (*quoting Simulnet*, 37 F.3d at 576 (*citing Aggarwal v. Ponce School of Medicine*, 745 F.2d 723, 727-728 (1st Cir. 1984))); *see also Lululemon*, 2015 U.S. Dist. LEXIS 72667 at *5; *McKnight*, 2020 U.S. Dist. LEXIS 24037 at *5. Thus, "[a]ny bond required must be 'fair in the light not only of the case itself and of the exigencies faced by the defendant, but also fair when illuminated by the actual financial situation of the plaintiff,'" including whether the litigation has appearance of vexatiousness, the conduct of the parties in the action, and plaintiff's ability to post any bond ordered. *Lululemon*, 2015 U.S. Dist. LEXIS 72667 at *5-*6; *McKnight*, 2020 U.S. Dist. LEXIS 24037 at *5; *A. Farber*, 417 F. Supp. 2d at 1146 (*quoting Simulnet*, 37 F.3d at 575-576).

Additionally, courts should consider the fact that, although a requirement for bond does not operate as a dismissal, it imposes a potential financial barrier that may have the same dispositive effect. *See Thomas v. Gerber Prods.*, 703 F.2d 353, 356 (9th Cir. 1983); *Schmidt v. Hermann*, 614 F.2d 1221, 1223-1224 (9th Cir. 1980); *United States v. National Medical*

*Enterprises, Inc.*, 792 F.2d 906, 912 (9th Cir. 1986); *United States v. King*, 200 F.3d 1207, 1214 (9th Cir. 1999). Moreover, there is a strong preference in the law, especially the Ninth Circuit, to resolve cases on the merits rather than disposition on technicalities. *See Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) ("Cases should be decided upon their merits whenever reasonably possible."); *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994).

In proving the above, a defendant must provide more than a "thin factual record." *See Lululemon*, 2015 U.S. Dist. LEXIS 72667 at *6. Defendant's "burden requires [d]efendant[] to do more than simply raise possible defenses." *Gabriel Techs.*, 2010 U.S. Dist. LEXIS 98229 at *17. The defendant must also show a bond is necessary and the defendant has a legitimate need for, and "will suffer prejudice absent," the bond. *See Hammett v. Sherman*, No. 19-CV-605 JLS (AHG), 2020 U.S. Dist. LEXIS 49793, *72-*73 (S.D. Cal. Mar. 23, 2020) (collecting cases). Further, any court's requirement of a security bond must also not be "illogical, implausible, or without support in the record." *Pittman ex rel. L.P. v. Avish P'ship*, 525 F. App'x 591, 593 (9th Cir. 2013).

### 3. Bond Requirements in Patent Litigation

While the liberal standard of § 1030 provides a "relatively low" bar for a defendant in a diversity case, courts generally disfavor requiring bonds in patent and other intellectual property litigation due to their intensely factual nature. *See id.* (*citing Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002)) (describing the "intensely factual nature of trademark disputes"); *see also GeoTag, Inc. v. Zoosk, Inc.*, No. C-13-0217 EMC, 2014 U.S. Dist. LEXIS 24782, *9-*10 (N.D. Cal. Feb. 26, 2014) (denying motion for bond in case where disputed claims were for patent infringement); *Foundton*, 2015 U.S. Dist. LEXIS 188361 (same); *Voxernet*, 2014 U.S. Dist. LEXIS 83860 (same). Moreover, in patent cases, the standard a defendant must meet to satisfy § 1030 regarding attorneys' fees is not a showing of whether defendant has a reasonable possibility of success on the merits of the underlying dispute, but, rather, whether defendant has a reasonable possibility of success on the issues which would entitle defendant to the costs and/or fees to be covered by any bond. *See GeoTag*, 2014 U.S. Dist. LEXIS 24782 at *9-*10 ("The Court agrees with the district court's analysis,

and concludes that [defendant] must show a 'reasonable possibility' that this case is 'exceptional,' such that if it were to prevail, it would be entitled to attorneys fees.") (*citing Pittman*, 525 F.App'x at 593).

"In patent infringement cases, the authorization for an award of attorney's fees to a prevailing party is set forth in 35 U.S.C. § 285[, which] provides that a court may award 'reasonable attorney fees to the prevailing party' where the case 'exceptional'" as proven by clear and convincing evidence. *Foundton*, 2015 U.S. Dist. LEXIS 188361 at *4 (*citing* 35 U.S.C. § 285); *see also GeoTag*, 2014 U.S. Dist. LEXIS 24782 at *10-*11 (*quoting Avocet Sports Tech. Inc. v. Polar Electro Inc.*, No. C12-2234 EDL, *1 (N.D. Cal. Aug. 1, 2013)). Thus, while the § 1030 standard is "relatively low," "the 'exceptional' case standard under § 285" which a defendant must meet, <u>*is not*</u>. *Id* (emphasis added); *see also Lululemon*, 2015 U.S. Dist. LEXIS 72667 at *7-*8 (noting the limited circumstances of "exceptional" cases wherein a prevailing party may obtain attorneys' fees, and holding "the degree of probability of obtaining a substantial fee award and the purpose of plaintiff's suit do not militate strongly in favor of requiring a bond") (*citing Simulnet*, 37 F.3d at 574-575).

"[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 134 S.Ct. 1749, 1756, 188 L. Ed. 2d 816 (2014). District courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*. Thus, "[u]nder these standards, the moving party seeking a bond for fees under § 285 must show a 'reasonable possibility' that the case is 'exceptional,' such that, if it were to prevail on the merits, it would be entitled to an award of attorney's fees." *Foundton*, 2015 U.S. Dist. LEXIS 188361 at *4. "It is significant that § 285 addresses fee-shifting that occurs ***at the conclusion of a case***." *Id*. (emphasis added).

## B.  No Security Bond is Warranted and Defendant's Motion Must be Denied.

As an initial matter, Defendant's purported "formulation" of the second prong of § 1030

(D.I. 14 at 7, fn. 2) is wholly incorrect and improperly attempts to shift the burden from Defendant to Plaintiff. Further, under either of the proper standard for § 1030 or Defendant's erroneous reformulation, Defendant has failed to satisfy the requirements. Thus, Defendant's Motion must be denied.

### 1. *Plaintiff does not contest that it is a corporation residing outside of California.*

As set forth in Plaintiff's Original Complaint, Plaintiff is a Texas limited liability company. D.I. 1 at 1, ¶ 3. Thus, Plaintiff does not contest that it is considered an out-of-state plaintiff for purposes of § 1030.

### 2. *Defendant has failed to show a reasonable possibility that it will obtain a judgment in this action entitling it to costs or fees.*

Contrary to Defendant's assertions the onus lay with Plaintiff to show a reasonable possibility Plaintiff can meet a burden to demonstrate infringement, the applicable law requires Defendant show a reasonable possibility of success in some manner permitting it to recover costs or fees for which a bond could even be required. *C.f.*, Motion at 7, fn. 2 ("Prong two is usually formulated as, 'there is a reasonable possibility that the moving defendant will obtain judgment in the action or special proceeding'. But DVS bears the burden of demonstrating infringement. As such, Defendant formulates prong two as 'there is a reasonable possibility that Plaintiff cannot meet its burden to demonstrate infringement.'"); *Gabriel Techs.*, 2010 U.S. Dist. LEXIS 98229 at \*17 (§ 1030's "***burden requires [d]efendant[] to do*** more than simply raise possible defenses.") (emphasis added); *Hammett*, 2020 U.S. Dist. LEXIS 49793 at \*72-\*73 (holding a ***defendant must show*** they "will suffer prejudice absent" a bond). Under this correct burden, Defendant was required to "demonstrate a reasonable possibility of success [***by Defendant***] on each of Plaintiff's claims," yet Defendant has not provided any evidence of a "reasonable possibility" of success on infringement, including at this earlier stage of the action.[6] *Rosales*, 2020 U.S. Dist. LEXIS 164436 at \*5-\*6 (emphasis added). Indeed,

---

[6] Plaintiff, again, notes Defendant's Motion appears more like an improper motion to dismiss or motion for summary judgment on Plaintiff's claims. However, in addition to Defendant's failure to properly bring either of such motions, the scant facts and arguments presented in Defendant's Motion would be further insufficient under those standards.

Defendant's weak, incorrect arguments (which are easily disproven) regarding infringement entirely fail to meet this burden. Thus, Defendant's Motion must be denied.

> i. *Defendant's arguments regarding infringement and non-infringement fail to show a reasonable possibility of success in this action.*

Regarding the merits of this case, Defendant's first arguments relate to Defendant's infringement of the '860 Patent. Plaintiff has brought suit for patent infringement (including for direct infringement and indirect infringement) against Defendant based on Defendant's infringing E-Sign product and service (the "Infringing Instrumentality"). *See, e.g.*, D.I. 1. Thus, at least with respect to infringement, for Defendant to meet its ***true*** burden under § 1030, Defendant must show a reasonable possibility of defeating Plaintiff's infringement claims. *See* cases, *supra*. In other words, Defendant must show either Defendant has a reasonable possibility of succeeding on its counterclaim of non-infringement or a reasonable possibility of succeeding in showing Plaintiff's infringement claims would fail.

Here, Defendant has done neither. Rather, Defendant merely provides unsupported attorney argument and twisted recitations of fact and law in an inappropriate, improper attempt to justify its request. This is simply insufficient to meet even the "relatively low" bar required.

> a. *Defendant's has no reasonable possibility of success on direct infringement.*

While Defendant states "DVS doesn't even try" (Motion at 8) to demonstrate infringement, the factual record, *including as provided by Defendant with its Motion*, clearly shows how Defendant directly infringes the '860 Patent. Interestingly, while Defendant's Motion does correctly state that "[t]o directly infringe a system claim, you must make, sell, or use the entire system, 'each and every element' of the claim" (Motion at 9 (internal citations omitted)), many of its arguments incorrectly state only that it does not ***sell*** hardware (Motion at 11 ("Defendant does not sell hardware") & 13 ("Encyro does not sell hardware")). Indeed, even Defendant's supporting Declaration of Rachael D. Lamkin (D.I. 22-1; the "Lamkin Declaration") states only that "Encyro does not make or sell hardware." Lamkin Declaration at 2, ¶ 4. Additionally, Defendant appears to misunderstand or misstate the legal analysis required for determinaing infringement, contending the Court should look to whether

Defendant makes, uses, offers for sale, or sells **each component** of the system, rather than whether Defendant makes, uses, offers for sale, or sells **the claimed system** which may comprise components Defendant does not make, use, offer for sale, or sell. However, the Federal Circuit has already specifically addressed this issue, rejecting Defendant's arguments. *See Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279 (Fed. Cir. 2011). Regardless, including as shown in Plaintiff's Infringement Contentions (*see* Exhibit A),[7] even accepting that "Defendant does not sell hardware" (*id.*), Defendant indisputably has, *at the very minimum*, made or used an infringing system comprising both hardware and software. Thus, the entirety of Defendant's arguments it does not infringe the asserted system claims because it does not "make[], use[], offer[] to sell, or sell[]" any hardware fail on their face.

Defendant's own Exhibit E, which is only a small portion of Plaintiff's lengthy, detailed contentions, undercuts Defendant's already weak arguments. For example, Plaintiff's contentions – in multiple places – note that, *inter alia*, there is code running on Defendant's servers.[8] *See* Motion at Exhibit E, pp. 1, 3, 7-9, 11, & 14. Specifically, Plaintiff's contentions include a chart which thoroughly details, in step-by-step manner, the process of operating the Infringing Instrumentality, including, *inter alia*, how the Infringing Instrumentality permits the sending of a request for a recipient to input a signature on a document via interaction with Defendant's website, including via "the dashboard and/or inbox of the sender's Encyro account." *See* Motion at Exhibit E, p. 1; *see also, e.g.*, Exhibit A. Defendant's website is necessarily hosted on, and accessed via, Defendant's server computer comprising hardware.

---

[7] Plaintiff, again, notes that Defendant's Motion appears to contest the sufficiency of Plaintiff's infringement contentions via this request for a bond rather than a proper motion on the infringement contentions. Further, Defendant's citations to various Northern District of California cases as controlling in this Court for Plaintiff's infringement contentions (Motion at 12-13) is *precisely the concern* Plaintiff raised in its contest to the application of Northern District Patent Local Rules. *See* D.I. 11-12.

[8] As this Court is well-aware, as should Defendant be, a server is (or, at a minimum, may be) a computer which, by definition, comprises hardware or software which necessarily must be running on some hardware. *See, e.g., BlackBerry Ltd. v. Facebook, Inc.*, 487 F. Supp. 3d 870, 885 (C.D. Cal. 2019) (discussing that a server is hardware); *Ameranth, Inc. v. Genesis Gaming Sols., Inc.*, No. SACV 11-0189 AG (RNBx), 2014 U.S. Dist. LEXIS 197518, at *23 (C.D. Cal. Dec. 30, 2014) (same); *see also* Exhibit B, Definition of Server, *Mozilla MDN Web Docs*, located at https://developer.mozilla.org/en-US/docs/Glossary/Server ("A server is a software or hardware offering a service to a user, usually referred to as client. A hardware server is a shared computer on a network, usually powerful and housed in a data center.").

More specifically, the *second* page Plaintiff's infringement contention chart (which Defendant, notably, failed to present the Court) clearly states "[t]he software application may be hosted by Encyro (*e.g.*, stored and run from ***Encyro's hardware***, firmware, and/or software, including ***Encyro's servers***) and is accessed by a user's computing device in communication with ***Encyro's hardware and/or servers*** including software, including ***Encyro's web servers***." Exhibit A at 2. Plaintiff's contentions further state that, via visiting "the Encyro website," the user may access "the user's home page, dashboard, and/or inbox and/or any created, sent, and/or accessed secure message, and any associated document or file." Again, Defendant's website is necessarily hosted on, and accessed via, its server computer comprising hardware.

This is further supported by the images provided in Plaintiff's infringement contentions which clarify that the actions and information presented to the user are hosted on, and provided from, Defendant's website, https://www.encyro.com. *See, e.g.*, Exhibit A at 18 (*citing* Encyro user dashboard page located at https://www.encyro.com/my?id=0). Notably, Defendant undercuts its own arguments regarding the prosecution history, and the patentee's arguments there is necessarily hardware, wherein the Patent Trial and Appeal Board (the "PTAB") agreed "software that performs the function must be coupled to hardware" and held the claims comprised "hardware or the combination of hardware and software because the claim is a system claim." Motion at Exhibit D, p. 4. That is precisely what Plaintiff has shown – namely that Defendant makes and provides an infringing system via the Infringing Instrumentality.

Aside from arguing non-infringement because there is no hardware, Defendant further argues non-infringement because the Infringing Instrumentality does not comprise two specific limitations: (1) a module generating assembly "[i] structured to receive at least one verification data element corresponding to the at least one entity and [ii] create[s] said at least one digital identification module"; and (2) "said at least one digital identification module is cooperatively structured to be embedded within only a single electronic file." Motion at 10-13. However, these arguments fail for many of the same reasons, including because Defendant's arguments essentially relate back to its prior failed arguments regarding a lack of hardware – *i.e.*, Defendant argues there is no hardware meeting these limitations.

Thus, at least for these reasons, Defendant has failed to show that it has a reasonable possibility of prevailing on the issue of direct infringement.

        *b.  Defendant's has no reasonable possibility of success on indirect infringement.*

Likewise, Defendant's motion fails to meet the "reasonable possibility" of success standard regarding indirect infringement. Defendant's arguments essentially break down to the same contentions of no infringement because there is no "hardware that meets the limitations '[i] structured to receive at least one verification data element corresponding to the at least one entity and [ii] create[s] said at least one digital identification module,' used by a customer or any other entity." Motion at 13. Accordingly, Defendant's arguments on indirect infringement fail for the same reasons its arguments above regarding direct infringement similarly fail.

Thus, at least for these reasons, Defendant has failed to show that it has a reasonable possibility of prevailing on the issue of indirect infringement.

        *c.  Defendant's arguments regarding its "many more non-infringement positions" fail to show reasonable possibility of success.*

Defendant further argues Plaintiff cannot prove infringement because it "refuses to answer Requests for Admission that get to the heart of [Plaintiff's []ability to demonstrate infringement" of certain limitations. Motion at 13. However, as with many statements in the Motion, this is an incorrect recitation of the facts. Rather, what Defendant fails to show, is that Plaintiff *did* respond to Defendant's "RFA No. 12, 'Admit that a user can sign multiple documents with the same digital signature using the accused product,'" including, *inter alia*, by objecting to the request as requesting expert opinion and by stating that "Plaintiff presently possess insufficient information to admit or deny this request, including because Plaintiff requires additional discovery, including information from Defendant regarding the full and true functionality of the accused product and/or potential expert analysis regarding at least the subject matter of this request and the foregoing" and concluding with a denial, including based on Plaintiff's "limited, non-expert preliminary, non-binding understanding of the technology and the infringing instrumentalities at this early stage in this case." *See* Exhibit C at 6-7.

Moreover, as with many other issues Defendant has noted, Defendant seeks to complain,

for the first time, about these issues in its bond motion. However, nowhere has Defendant shown that it was unable to meet and confer with Plaintiff on any of these issues (nor has Defendant attempted to do so), nor has Defendant brought these issues to the attention of this Court in a proper motion beyond this Motion. Again, this is nothing more than Defendant's attempted end-run around procedural and evidentiary requirements for properly addressing issues and permitting Plaintiff to address these issues properly, rather than in the limited space of this response in addition to the other issues discussed herein. Defendant should not be permitted to do so, and Defendant's Motion should be denied at least for this reason.

Thus, at least for these reasons, Defendant has failed to show that it has a reasonable possibility of prevailing on the issue of infringement.

    ii. _Defendant's arguments regarding claim construction fail to show a reasonable possibility it will be successful in obtaining a judgment in this action._

       a. _Defendant's arguments regarding construction of "module generating assembly" fail to show a reasonable possibility of success._

Amongst Defendant's erroneous arguments regarding infringement, Defendant includes an argument regarding claim construction. This argument boils down to Defendant's contention that "[t]he actual structure of the claimed 'module generating assembly' is unknown." Motion at 11. However, this is simply not correct. Rather, this represents nothing more than a mere difference of opinion regarding claim construction – which the parties, and the Court, are presently undertaking pursuant to the Court's Schedule (_see_ D.I.). Such a mere difference of opinion is precisely the type of justification for denying Defendant's request. _See, e.g._, _Foundton_, 2015 U.S. Dist. LEXIS 188361 at *5-*6; _Voxernet_, 2014 U.S. Dist. LEXIS 83860 at *7. Defendant's Motion should be denied for this same reason.

Even assuming, _arguendo_, that Defendant's claim construction arguments are proper in this matter, Defendant's argument still fail. Contrary to Defendant's contention that "the '860 Patent does not tell us what a 'module generating assembly['] actually is" (Motion at 11), as set forth in Plaintiff's proposed claim construction for this term (which the Court will see as part of claim construction proceedings in this action), this term is not a means-plus-function

term and, even if it was construed to be such, there is structure provided in the specification. *See* Exhibit D at 3-4. On the other hand, Defendant's reliance on the statements in the PTAB's denial of rehearing in IPR2018-00745 regarding the alleged "lack" of structure for this element is misplaced. *See, e.g.*, Motion at 12-16. What the PTAB stated was only that, in determining whether to institute the review, they construed this term as being means-plus-function and noted "that because Petitioner did not identify corresponding structure in the specification, Petitioner did not show a reasonable likelihood it would prevail in establishing unpatentability of any challenged claim." Motion at Exhibit F, pp. 2-3. Notably, even Petitioner (who sought to invalidate the claims) argued this is not a means-plus-function claim. *Id*.

Moreover, if Defendant's interpretation of the PTAB's ruling was correct, why would the PTAB have determined the term (as Defendant suggests) invalid for failure to provide a structure, yet neither institute a petition to declare the claim invalid nor declare the claim invalid for this reason. Additionally, and importantly, "[t]he court is not bound by a preliminary claim construction used by the PTAB for the limited purpose of denying an IPR request." *Adidas AG v. Under Armour, Inc.*, No. 14-130-GMS, 2015 U.S. Dist. LEXIS 192937, *3 n.1 (D. Del. Dec. 15, 2015). Here, as in *Voxernet*, at best, there is nothing more than divergent views on claim construction which, while representing a degree of persuasiveness by each party regarding the proper construction, relate to issues more suitable for claim construction, not arguments in a bond motion. *Voxernet*, 2014 U.S. Dist. LEXIS 83860 at *7.

Thus, at least for these reasons, Defendant has failed to show that it has a reasonable possibility of prevailing on the issue of claim construction.

### iii. *Defendant's arguments regarding invalidity fail to show a reasonable possibility it will be successful in obtaining a judgment in this action.*

#### a. *Defendant's arguments regarding the definiteness of "module generating assembly" fail to show a reasonable possibility of success.*

Defendant's arguments regarding invalidity of the "module generating assembly" term entirely overlap with its arguments regarding claim construction of this term. Accordingly, Defendant's arguments on invalidity of this term fail for the same reasons Defendant's

arguments above regarding direct infringement likewise fail.

Further, Defendant's contentions that "named inventor Rothschild could not identify a module generating assembly that performed the claimed operations" are unfounded and a misrepresentation of Mr. Rothschild's actual testimony at his deposition. Contrary to Defendant's assertions, Mr. Rothschild testified that, while he was involved in the prosecution of the '860 Patent, the prosecution "was many, many years ago, I believe 2008" (*see* Exhibit E at 18:13-25) and that "draft[s were] done by patent prosecution counsel," not himself (*see id*.), and that, because of this, he would "explain to the jury that [this term] is what it says in the specification as published in the ['860 Patent]" (*see id*. at 19:8-20:14). In other words, Mr. Rothschild's testimony was that, after the lengthy period since the '860 Patent was prosecuted, he would need more time than given by Defendant's counsel during the deposition to review the specification if Defendant wished him to provide his understanding of disclosures in the specification for this term. In view of this, Mr. Rothschild put forth his best efforts under the limited time given him to review the specification during a break in the deposition to find all of the instances of this term in the specification. *See, e.g.*, *id*. at 28:22-32:18.

Thus, at least for these reasons, Defendant has failed to show that it has a reasonable possibility of prevailing on the issue of invalidity.

### 3. The background and purpose of this action is proper, and Defendant has failed to show that this action has the appearance of vexatiousness.

Not only are the merits of Plaintiff's claims proper and not shown insufficient, Plaintiff's bringing of this suit, and the parties' actions therein, are not such that this case has any appearance of vexatiousness or otherwise show that this action is improperly brought. As with many of Defendant's assertions in its Motion, Defendant has presented nothing more than unsupported attorney arguments on this issue. Indeed, Defendant's argument regarding the allegedly vexatious nature of this suit almost entirely relies on allegations relating to non-parties, not Plaintiff, and, thus, fails to support a finding that Plaintiff's bringing of this suit, or any actions herein, are, or have been, vexatious or frivolous.

Defendant's first contention of vexatiousness is that "this case reflects the 'indicia of

extortion'" merely because Plaintiff "has asserted the '860 Patent fifty-eight (58) times in district court and none of those cases have ever made it to the merits [or] claim construction." Motion at 17. However, allegations a plaintiff is a serial litigator "do[] not mean (or even imply) that its claims are inherently brought in bad faith or without merit." *Geotag*, 2014 U.S. Dist. LEXIS 24782 at *11 (*citing Digitech Image Techs., LLC v. Newegg, Inc.*, No. 8:12-cv-01688-ODW (MRWx), 2013 U.S. Dist. LEXIS 147633, *5 (C.D. Cal. Oct. 11, 2013) ("The Court is not persuaded by [defendant's] rote attempt to shift the burden of paying legal fees by hurling [plaintiff] into the crusade against 'Patent Trolls.' A party seeking protection of constitutionally granted patent rights is not automatically the villain simply because it brings infringement allegations against multiple defendants.")). Here, Defendant provides only unsupported attorney argument that Plaintiff brought its claims in bad faith or without merit.

Again, as with many of Defendant's legal and factual recitations, those in support of its arguments on this issue are equally incorrect and inapplicable. A majority of Defendant's arguments rely on misapplication of *Eon-Net*, which is factually distinguishable from this case. *See* Motion at 16-20. Contrary to Defendant's suggestion the holding in *Eon-Net* was based on merely the court's finding of "indicia of extortion," this is only one of many factors the court considered in determining whether fees should be awarded under § 285,[9] not whether a bond should be required under § 1030. In *Eon-Net*, the court found that, *inter alia*, in addition to the number of suits and bad actions in settling, (a) the plaintiff's filings were objectively baseless, including because, despite the claims being construed so that any legitimate finding of infringement was precluded, the plaintiff continued filing lawsuits; (b) "Eon-Net failed to engage [in] the claim construction process in good faith"; (c) Eon-Net conducted discovery in bad faith; and (d) "Eon-Net and its counsel destroyed relevant documents prior to [filing]…and intentionally did not implement a document retention plan". *See Eon-Net*, 653 F.3d at 1326.

Regardless, the facts ***in this case*** are nothing like those in *Eon-Net* and do not suggest such indicia. Here, ***Plaintiff*** has no history of merely filing suits with "a demand for a quick settlement at a price far lower than the cost to defend the litigation" (Motion at 17-18), nor has

---

[9] Having an entirely separate burden Defendant has failed to even attempt to meet.

Plaintiff (a) filed an "objectively baseless claim" like that in *Eon-Net*, including as discussed above; (b) failed to engage in claim construction in good faith, including because Plaintiff has provided relevant, supportable claim constructions for disputed terms (*see* Exhibit D); (c) has not conducted discovery in bad faith, including as discussed herein with respect to Plaintiff's responses to discovery (*see* Exhibit C); and (d) has not destroyed any documents, including that Plaintiff undertook the efforts of providing all documents from prior cases, including prior licenses, in Plaintiff's possession, custody, or control which have been requested by Defendant, even where such documents[10] may be publicly available to Defendant in equal fashion (*see* Exhibit F). Thus, in considering "background and purpose of *the present* lawsuit (*e.g.*, whether it is frivolous or vexatious)" (*see* cases, *supra* (emphasis added)), Defendant has pointed to nothing that would support a finding of frivolity or vexatiousness for **this** case.

Here, contrary to what is required, Defendant improperly looks outside of both the parties **_and_** facts involved in **this** case in an attempt to cobble together some semblance of an argument. In doing so, including as noted herein, Defendant continually and improperly refers to Plaintiff and non-party Mr. Rothschild interchangeably, alleging, without support, that they are one-in-the-same and should be treated as a single entity merely because Mr. Rothschild has potential to control the acts of Plaintiff. Not only has Defendant failed to even attempt to plead such a claim,[11] it wholly failed to provide any evidence supporting such a finding here, let alone a finding Defendant would have a reasonable possibility of succeeding on such a claim (i.e., a discussion of the various factors for piercing the veil – *see, e.g.*, *Black*, 2006 U.S. Dist. LEXIS 114779) sufficient to satisfy its burdens under § 1030. Defendant goes on to, even more egregiously and with even less support, argue that multiple other non-party entities (*e.g.*, Rothschild Dig. Confirmation, LLC, Rothschild Connected Devices Innovations, LLC, and

---

[10] Such documents were produced to Defendant, including on November 8, 2022 and November 18, 2022, in response to Requests for Production Nos. 7 and 8. *See* Exhibit F.
[11] Indeed, to the extent Defendant seeks to "pierce the veil" to hold Mr. Rothschild in place of Plaintiff, Defendant is required to, at a minimum, have pled facts in support of such claim, yet "no veil-piercing has been pled and no evidence which would warrant a veil-piercing is before the Court." *Black v. Del Webb Cmtys.*, No. CV 05-8743 SJO (JWJx), 2006 U.S. Dist. LEXIS 114779, *16 (C.D. Cal. Dec. 5, 2006).

Display Technologies[12]) are the same as Mr. Rothschild. Again, Defendant fails to both plead such claims and attempt to show a reasonable possibility of success thereon under § 1030.

These are notable issues, as Defendant uses its unsupported, incorrect decisions to treat Mr. Rothschild as one-in-the-same as Plaintiff, and these non-parties, in then improperly arguing the actions of each are merely the actions of all others (for ease of reference, Plaintiff shall refer to this created entity as the "Omnibus Entity"). Defendant does so in order to further improperly include actions taken by wholly different parties in wholly different cases with wholly different facts and wholly different asserted patents as the acts of Plaintiff to be considered in *this* case. This is beyond acceptable behavior, or arguments before the Court, and should not be permitted. For this reason alone, the Court should deny Defendant's Motion.

Further, even considering, *arguendo*, Defendant's improper, incorrect arguments regarding this Omnibus Entity are equally unsupported. First, the amounts for which *true Plaintiff* settled any case are not mere "extortion-level sums" (Motion at 5), but, rather, simply represent an amount the parties negotiated in good faith, considering the interests of both parties. The mere filing and dismissal or settling of cases, on its own, is insufficient to support a finding of vexatiousness under § 1030. *See, e.g.*, *Brooke v. Hyatt Corp.*, No. 19-cv-07658-TSH, 2020 U.S. Dist. LEXIS 109980, *20-*21 (N.D. Cal. June 23, 2020) ("*Brooke II*") (*citing Brooke v. Hyatt Corp.*, 2020 U.S. Dist. LEXIS 84492, *5 (N.D. Cal. May 13, 2020) ("*Brooke I*") ("insufficient to support a vexatious litigant order because none of the recent cases filed by plaintiff in this District have been resolved on its merits and, *although some have been dismissed, no finding of frivolousness or harassment was made in connection with any such dismissal*")) (emphasis added); *Geotag*, 2014 U.S. Dist. LEXIS 24782 at *11; *Digitech*, 2013 U.S. Dist. LEXIS 147633 at *5. Likewise, for the same reasons, the amount filings by either Plaintiff or the Omnibus Entity, alone, do not evidence any vexatiousness or frivolity. *See ids.*

Not only is *Eon-Net* inapplicable to the instant facts, nothing about Plaintiff's, nor the Omnibus Entity's, actions represent "*in terrorem*" tactics (Motion at 5), including because Defendant has not shown any "threat[] of litigation in hopes of a quick settlement with no

---

[12] An entity which Defendant inexplicably adds Mr. Rothschild's name to. *See* Motion at 18.

intention of ever testing the strength of its patent allegations of infringement." *See Elec. Commun. Techs., LLC v. ShoppersChoice.com, LLC*, 963 F.3d 1371, 1377 (Fed. Cir. 2020). Rather, as abundantly clear here, Plaintiff is more than willing to take its case to trial. Indeed, including by filing its wholly baseless Motion rather than a motion on the merits, Defendant, not Plaintiff, is the one attempting to leverage the Court against the other party and causing its own increased costs and fees that Plaintiff should not now be ordered to pay. Here, Defendant merely seeks to punish Plaintiff for what Defendant considers the sins of its alleged father.

Notably, many cases where a bond was denied have additionally considered the fact a prior motion on the merits was filed and denied, yet, here, despite numerous complaints raised by Defendant regarding Plaintiff's claims Defendant argues are "clear" and Plaintiff should "surely know[]" (Motion at 22), including as noted herein, no such motion has been filed by Defendant. *See, e.g.*, *Brooke v. Hyatt Corp.*, No. 19-cv-07658-TSH, 2020 U.S. Dist. LEXIS 109980 at *20-*21 ("Given that the Court has denied [defendant's] motion to dismiss, it is not prepared to find at this time that [plaintiff's] claims are frivolous or that [defendant] will prevail on the merits."); *Gabriel Techs.*, 2010 U.S. Dist. LEXIS 98229 at *15 (*quoting A. Farber*, 417 F. Supp. 2d at 1146) ("plaintiff survived a motion to dismiss which suggests 'plaintiff has not acted vexatiously in bringing this litigation,'"). Thus, to the extent Plaintiff's claims are so weak, Defendant should have dealt with them much earlier on. The same is true regarding Defendant's allegations of discovery and other misconduct.

Further, under similar facts as the present case, in *Geotag* the court denied a bond request where the court found the defendant "only point[ed] to three facts in support of its argument": the plaintiff is a "serial litigator"; asserted a rejected construction; and had licensed the patent to multiple companies. *See Geotag*, 2014 U.S. Dist. LEXIS 24782 at *11. These accusations sound strikingly similar to the very arguments now made by Defendant: Plaintiff is a serial litigator because it "has asserted the '860 Patent fifty-eight (58) times" (Motion at 18); Plaintiff is asserting a patent whose claims have been construed by another tribunal, the PTAB (Motion at 12-16); and Plaintiff "has produced fourteen (14) settlement agreements" from companies to which Plaintiff has licensed the '860 Patent (Motion at 22).

Regarding Defendant's references to orders in other courts in other cases involving other plaintiffs, such references are entirely misplaced and seek only to distract from the facts in *this* case. Indeed, while Defendant alleges "[the Omnibus Entity] has already been sanctioned, twice, for the exact same conduct" (Motion at 17), it fails to show how Plaintiff's conduct here is the same as in these other cases – opting, instead, to have Plaintiff and the Court weed through these cases to make such a finding. However, under § 1030, the burden lie with Defendant, not Plaintiff or the Court. Thus, at a minimum, Defendant's arguments are irrelevant and cannot be considered. Moreover, Defendant incorrectly argues that, in these other cases, "[the Omnibus Entity] refuse[d] to honor the court orders against [it]." Motion at 19. However, that is incorrect; nor has Defendant even attempted to show this is true beyond attorney argument and vague citations to the Mr. Rothschild deposition transcript. *Id*. Contrary to Defendant's allegations, Mr. Rothschild made clear, multiple times, that *the entity the court actually awarded fees against* never refused to pay any amounts ordered to be paid. *See, e.g.*, Exhibit E at 84:25-86:25; 88:15-24; 90:8-91:7; 95:9-97:22; 100:21-101:18. In other words, the orders were not simply ignored as Defendant alleges, but, rather, the matters of payment were handled between the parties in settlement negotiations – something courts highly encourage.

Lastly, despite Defendant's attempts to paint the Omnibus Entity as some evil extortionist ignoring court orders, such cherry-picked examples of orders against the Omnibus Entity fail to provide a full picture. Indeed, in addition to these, there have been numerous instances in which courts have denied requests for attorneys' fees and refused to find evidence of vexatiousness based on what Defendant – based on its Motion – would likely allege is the "same conduct" by Mr. Rothschild and/or the Omnibus Entity in those cases.[13]

Thus, at least for these reasons, Defendant has failed to show that this case has any appearance of vexatiousness or frivolity or that the case has been brought in bad faith.

---

[13] *See, e.g.*, *Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys.*, No. 14-617-GMS, 2018 U.S. Dist. LEXIS 125627, *4 (D. Del. July 27, 2018); *Location Based Servs., LLC v. Niantic, Inc.*, No. 17-cv-04413 NC, 2018 U.S. Dist. LEXIS 232062, *1 (N.D. Cal. Feb. 16, 2018); *Rothschild Connected Devices Innovations, LLC v. Garmin Int'l, Inc.*, No. 2:17-CV-00158-JRG-RSP, 2017 U.S. Dist. LEXIS 198132, *1 (E.D. Tex. Dec. 1, 2017); *Prod. Ass'n Techs. LLC v. Clique Media Grp.*, No. CV 17-5463-GW (PJWx), 2017 U.S. Dist. LEXIS 217133, D.I. 50 (C.D. Cal. Nov. 30, 2017).

### 4. *Defendant's requested amount is unreasonable from both parties' perspectives.*

Defendant has also failed to show that the amounts requested for costs and fees are reasonable in view of the perspective of both parties, including because the amounts requested are either purely speculative, not permitted, or require additional showing by Defendant, which it failed to make. To be clear, despite Defendant's conflation of requirements under the law, should the Court find Defendant has successfully shown a reasonable possibility of success (which, as discussed herein, Defendant has failed to do), only those costs and fees allowed for under 28 U.S.C. § 1920 would be permissible unless Defendant successfully shows entitlement under some other statute or rule by independently showing a reasonable possibility of success under such statute or rule. *See* cases, *supra*. Further, the amounts requested are beyond reasonable in this case and should not be permitted. Thus, Defendant's Motion must be denied.

#### i. *Defendant has failed to meet its burden on any award of costs.*

Here, Defendant insists the Court order Plaintiff post a bond for an undue fishing expedition comprising potential service of ***forty-four (44) subpoenas*** on the improper, speculative basis of the potentiality of documents from other cases, including those dating back over five (5) years. As discussed above, Defendant has not shown entitlement to these costs. Defendant's attempts to shift costs for its own improper fishing expedition without providing support therefor are precisely the improper use of § 1030 warned of by California courts. *See* cases, *supra*. Further, as noted above, Defendant has yet to show the claims in the present suit are frivolous, unreasonable, or without foundation. Notably, Defendant improperly conflates costs with attorneys' fees under FEDERAL RULE OF CIVIL PROCEDURE 37(c)(2). Regardless, Defendant is entitled to neither in this case, including because Defendant has wholly failed to show, as required, that there is a reasonable possibility that it will be entitled to such costs or fees. *See Code Rebel*, 2014 U.S. Dist. LEXIS 87315 at *17.

At best, Defendant merely alleges the speculative probability of a potential award of costs under Rule 37 for alleged, for the first time in the Motion, discovery misconduct by Plaintiff. However, including as noted above, a bond request is not the proper vehicle to handle alleged discovery disputes, and Defendant has never brought these issues before Plaintiff via

a meet and confer or the Court via motion to compel. Nor is it sufficient to speculate as to the potential of an award of costs without providing any evidence that would show a reasonable possibility that Defendant would be entitled to same. Regardless of Defendant's improper request for costs under Rule 37, as discussed above, Plaintiff properly and fully responded to Defendant's discovery to the best ability that it could. *See* above; Exhibit C at 6-7. Nor is Defendant's unsupported and erroneous statement Plaintiff "surely knows" Defendant does not infringe (stated without any evidence in support thereof – beyond passing references to the file history) sufficient support, including because Defendant failed to show non-infringement.

Thus, **none** of Defendant's requested costs, under any rule or statute, should be included in the bond. Specifically, Defendant's request for any ordered security bond to include $9,000 in expected costs related to a speculative, potential Rule 37 motion must be denied.

### ii. *Defendant has failed to meet its burden on any award of attorneys' fees.*

Likewise, despite requesting the Court order **Plaintiff**[14] to post a bond for Defendant's attorneys' fees, Defendant has failed to properly meet its burden under § 1030. While Defendant's efforts to shoehorn in attorneys' fees as a default under § 1030, Defendant fails to provide any precedent for its recitation of the law. To the contrary, as admitted by Defendant, at least one court in the Northern District of California has found that, for a defendant in a patent case to include attorneys' fees as part of a § 1030 bond, the defendant must satisfy **both** the § 1030 standard **and** the standard for any statutory grant of an award for attorney's fees (here, Rule 37 and § 285) which are requested to be part of any requested bond. *See GeoTag*, 2014 U.S. Dist. LEXIS 24782 at *9. However, what Defendant notably *fails to mention*[15] to the Court is that the law **in this Court** is Defendant must meet *both* standards and show a reasonable possibility this case is "exceptional" *and* an entitlement to attorneys' fees as a result – the very law Defendant erroneously argues "is inconsistent with the plain meaning of § 1030" (Motion at 24). *See Voxernet*, 2014 U.S. Dist. LEXIS 83860 at *4; *Foundton*, 2015 U.S. Dist. LEXIS 188361 at *4; *Code Rebel*, 2014 U.S. Dist. LEXIS 87315 at *17; *see also*

---

[14] Again, despite requesting a bond against Plaintiff, Defendant continues to improperly conflate non-party Mr. Rothschild with Plaintiff.
[15] *See* CALIFORNIA RULES OF PROFESSIONAL CONDUCT 3.3(a)(2).

*Lululemon*, 2015 U.S. Dist. LEXIS 72667 at *7-*8; *Pittman*, 525 F. App'x at 593.

Here, not only is Defendant's interpretation of the law wholly incorrect and *directly contrary* to controlling law, Defendant has simply failed to meet its required burden to be entitled to any attorneys' fees under neither of Rule 37 nor § 285. As noted above, Defendant fails to show reasonable possibility of entitlement under Rule 37, nor provided any evidence to show the present case is "exceptional" under § 285. Simply put, the **mere possibility** Defendant could *potentially* win a *future* motion on attorneys' fees does not warrant a bond.

Thus, **no** attorneys' fees, under any rule or statute, should be included in the bond. Specifically, Defendant's request for any ordered security bond to include $139,860 in accrued and/or expected attorneys' fees must be denied.

### iii. *Defendant's requested bond amount is unreasonable from Defendant's perspective.*

Turning to the only possible amounts Defendant could potentially be awarded under 28 U.S.C. § 1920, Defendant requests amounts of $7,407.89 for alleged accrued costs and $24,245.85 for alleged expected costs. Defendant's alleged accrued costs comprise costs for Mr. Rothschild's deposition transcript ($2,818.95), this Motion ($713.99) and courtesy copies ($434.95), and its expert used for claim construction ($3,440.00). Defendant's alleged expected costs comprise costs for additional, unspecified depositions ($8,456.85) and a fishing expedition of forty-four subpoenas to prior defendants ($15,789.00).

However, in addition to failing to show entitlement to these costs, these costs are entirely unreasonable – especially the listed expected costs. As an initial matter, neither the additional depositions nor subpoenas have been shown by Defendant to be necessary in this case. Nor has Defendant shown they would actually occur – mere speculation is insufficient. *See* cases, *supra*. Again, Defendant seeks to make Plaintiff pay for Defendant's fishing expedition, without any evidence of potential relevance, and despite Plaintiff providing the documents requested pursuant to Defendant's discovery requests. To permit Defendant to do so would create the exact chilling effect warned of by California courts. *See* cases, *supra*. Further, Defendant has not shown any legitimate need for the prophylaxis of a bond. Indeed, Defendant provides nothing in terms of justification for a bond beyond mere attorney argument that other

*non-parties* allegedly did not pay ordered awards – which, as detailed above, is untrue. Defendant could have, but did not, assert absence of attachable property or that it otherwise fears Plaintiff's inability to pay due to financial situation or extremis so as to be judgment-proof. *See Lululemon*, 2015 U.S. Dist. LEXIS 72667 at *7-*8 (collecting cases); *Simulnet*, 37 F.3d at 576; *Wilson*, 2014 U.S. Dist. LEXIS 47157 at *4. "Because there is no evidence suggesting that [P]laintiff is in dire financial straits or lacks attachable assets in California,…a security bond is not necessary." *Lululemon*, 2015 U.S. Dist. LEXIS 72667 at *7-*8.

Thus, ***none*** of Defendant's requested costs, potentially awardable under § 1920, should be included. Specifically, Defendant's request for any ordered bond to include $7,407.89 for alleged accrued costs and $24,245.85 for alleged expected costs must be denied.

### iv. *Defendant's requested bond amount is unreasonable from Plaintiff's perspective.*

Regarding reasonableness from Plaintiff's perspective, Defendant's Motion is, again, no more than speculation. The entirety of Defendant's argument is simply "money go in bank, money stay in bank forever" – *i.e.*, merely because Plaintiff has received monies from prior cases, it is expected to keep them indefinitely. However, Defendant provides no actual justification for this suggestion beyond the assumption stated in Mr. Rothschild's testimony that "[t]o the best of [his] knowledge," in a hypothetical case, if Plaintiff "receive[s], hypothetically, $100,000 in settlement money, that $100,000 would be in a bank account owned by" it. Motion at Exhibit E, 63:18-24. However, at no point was any timeline provided, nor did Defendant seek to understand the timeframe in which Mr. Rothschild was discussing.

Further, Defendant's arguments undercut themselves. If, as Defendant asserts, Plaintiff this money just sitting in a bank, then that is further reason no bond is necessary – as Defendant should have no reason to fear Plaintiff could pay. Nor has Defendant provided any reason to believe Plaintiff would otherwise be intentionally underfunded. The remainder of Defendant's arguments again attempt to merge together Plaintiff with non-parties as the Omnibus Entity, arguing that, because Mr. Rothschild made money separately from Plaintiff's settlements, Plaintiff has access thereto. If true, corporations would operate vastly different – imagine each time the CEO changed, the company's capital vastly changed along with their wealth.

### III. CONCLUSION AND PRAYER FOR RELIEF

Including in view of the above, and Defendant's wholly deficient Motion lacking any real substance and consisting almost entirely of unsupported attorney argument and incorrect recitations of law and fact, Defendant's Motion should be denied. Therefore, Plaintiff hereby respectfully requests this Honorable Court deny Defendant's Motion in its entirety.

Dated: November 18, 2022

Respectfully submitted,

PALAVAN & MOORE, PLLC

*/s/ Shea N. Palavan*
Shea N. Palavan (State Bar No. 339543)
4590 MacArthur Boulevard, Suite 500
Newport Beach, California 92660
Telephone: (832) 303-0704
Facsimile: (855) PALAVAN (725-2826)
    shea@houstonip.com

Jay Johnson
    jay@kjpllc.com
KIZZIA JOHNSON, PLLC
1910 Pacific Avenue, Suite 13000
Dallas, Texas 75201
Telephone: (214) 451-0164
Facsimile: (214) 451-0165

Stephen Lobbin (State Bar No. 181195)
    sml@smlavvocati.com
SML AVVOCATI P.C.
888 Prospect Street, Suite 200
La Jolla, California 92037
Telephone: (949) 636-1391
Facsimile: (214) 451-0165

*Attorneys for Plaintiff,*
DIGITAL VERIFICATION SYSTEMS, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that, per FEDERAL RULE OF CIVIL PROCEDURE 4 and 5 and this Court's Procedures, Orders, Schedule, and Rules, including CIVIL LOCAL RULE 5-3 and 5-4, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail and/or the Court's CM/ECF system. Any other counsel of record will be served by electronic mail, facsimile transmission, and/or first-class mail on this same date.

Dated: November 18, 2022                    /s/ *Shea N. Palavan*
                                             Shea N. Palavan