# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA


DIGITAL VERIFICATION

SYSTEMS, LLC,

        Plaintiff,

   v.                    No. 5:22-cv-00686-JWH-SP

ENCYRO, INC.,

        Defendant.



ZOOM DEPOSITION OF LEIGH ROTHSCHILD

VOLUME 1 - PAGES 1-130

WEDNESDAY, OCTOBER 12, 2022

NORTH MIAMI, FLORIDA

Reported by:   Marilynn Hoover, RPR

California CSR No. 8841

1

1     BE IT REMEMBERED THAT, pursuant to the Federal

2  Rules of Civil Procedure, the Zoom video deposition of

3  LEIGH ROTHSCHILD was taken before Marilynn Hoover,

4  California CSR No. 8841; on Wednesday, October 12,

5  2022, commencing at the hour of 1:06 p.m.; the witness

6  testifying from North Miami, Florida.

7

8                      APPEARANCES

9  PALAVAN & MOORE, PLLC

10     BY MR. SHEA PALAVAN

11     5353 West Alabama Street, Suite 303

12     Houston, Texas 77056

13     Telephone:  832-800-4133

14     E-mail:  Shea@palavan.com

15     On behalf of Plaintiff

16

17  LAMKIN IP DEFENSE

18     BY MS. RACHAEL D. LAMKIN

19     One Harbor Drive, Suite 300

20     Sausalito, California 94965

21     Telephone:  916-747-6091

22     E-mail:  RDL@lamkinipdefense.com

23     On behalf of Defendant

24

25  ALSO PRESENT:  Sugouri Batra, in-house counsel

2

```
                     EXAMINATION INDEX

                                                      PAGE

    Examination by Ms. Lamkin                            5


                         *   *   *



                       EXHIBIT INDEX
    EXHIBIT NO.   DESCRIPTION                          PAGE
```

Exhibit 1    U.S. Patent No. 9,054,860                15

Exhibit 2    USPTO patent assignments                 34

Exhibit 3    Patent assignments                       36

Exhibit 4    2009 LLC annual report                   36

Exhibit 5    Patent assignment                        39

Exhibit 6    Patent assignment                        40

Exhibit 7    Texas franchise tax public
             information report                        43

Exhibit 8    Patent Asset Management team             45

Exhibit 11   2021 Florida limited liability
             company annual report for Patent
             Asset Management                          67

Exhibit 12   2021 Florida limited liability
             company annual report for Matthew
             Inventions                                70

Exhibit 13   Appeal brief                              74

Exhibit 14   Excel file:  Rothschild cases            73

3

```
1                    EXHIBIT INDEX (CONT.)

2     EXHIBIT NO.   DESCRIPTION                       PAGE

3     Exhibit 18    Certificate of formation of

4                   Rothschild Connected Devices

5                   Innovations LLC                    80

6     Exhibit 19    Texas secretary of state document

7                   in re Rothschild Connected Devices

8                   Innovations LLC                    82

9     Exhibit 20    Declaration of Leigh Rothschild    83

10    Exhibit 21    Motion for order to show cause     87

11    Exhibit 22    Report and recommendation          87

12    Exhibit 23    Complaint for patent infringement  98

13    Exhibit 24    Texas secretary of state document

14                  in re Rothschild Digital

15                  Confirmation LLC                   100

16    Exhibit 25    11/01/2021 letter                  102

17    Exhibit 26    11/01/2021 letter                  104

18    Exhibit 27    2021 Florida limited liability

19                  company annual report for LMR

20                  Inventions LLC                     41

21    Exhibit 28    Plaintiff's objections and responses

22                  to defendant's first set of written

23                  discovery                          120

24    Exhibit 29    Affidavit of Leigh Rothschild      121

25    Exhibit 30    Initial infringement chart         124
```

4

1    WEDNESDAY, OCTOBER 12, 2022; NORTH MIAMI, FLORIDA

2                        LEIGH ROTHSCHILD,

3    called as a witness, being duly sworn on oath, was

4    examined and did testify as follows:

5                   THE STENOGRAPHIC REPORTER:  Thank you.  You      13:06

6    may begin.                                                      13:06

7                            EXAMINATION                            13:06

8    BY MS. LAMKIN:                                                  13:06

9        Q.    Good morning, and afternoon, Mr. Rothschild.        13:06

10       A.    Thank you.                                            13:06

11       Q.    My name is Rachael Lamkin and I represent           13:06

12   the defendant in this action.                                   13:06

13             I see you have two attorneys with you here          13:06

14   today; is that correct?                                         13:06

15       A.    Yes.                                                  13:06

16       Q.    Okay.  Mr. Palavan is your outside counsel;         13:06

17   correct?                                                        13:06

18       A.    That is correct.                                     13:06

19       Q.    Okay.  And Ms. Batra, can you please state          13:06

20   her role for the record.                                        13:06

21       A.    Yes.  She is general counsel to the company.        13:06

22       Q.    "The company" being plaintiff, what I will          13:06

23   call DVS for your deposition.  Is that okay?                    13:06

24       A.    Yes.  She's general counsel to the                  13:06

25   plaintiff.                                                      13:06

                                                                            5

```
 1        A.   It is.                                      13:24

 2        Q.   Is this the patent that you reviewed on your  13:24

 3   Zoom call with your counsel, Mr. Palavan and         13:24

 4   Ms. Batra?                                            13:24

 5        A.   It is.                                      13:24

 6        Q.   If you could please turn to the column 1 of  13:24

 7   the '860 patent, Mr. Rothschild.                     13:24

 8             Mr. Rothschild, who drafted --             13:25

 9        A.   Excuse me, Ms. Lamkin.  I need time to get  13:25

10   there.  I'm not quite there.  Thank you.             13:25

11        Q.   Um-hum.                                     13:25

12        A.   I'm there now, Ms. Lamkin.                  13:25

13        Q.   Mr. Rothschild, who drafted column 1 of the  13:25

14   '860 patent?                                          13:25

15        A.   The draft was done by patent prosecution   13:25

16   counsel.                                              13:25

17        Q.   Did you review column 1 of the '860 patent  13:25

18   during prosecution?                                   13:25

19        A.   I do not recall with specificity.          13:25

20             I would point out, I would add to that     13:25

21   answer, if I may, Ms. Lamkin:  That was many, many   13:25

22   years ago, I believe 2008, so -- I believe, so many  13:25

23   years ago.  More than ten?  Yes, 2008.  I'm looking at  13:25

24   the patent to get that date.  So that is, by my      13:25

25   calculations, approximately 14 years ago.            13:26
```

18

```
 1        Q.   You did review this patent with your counsel    13:26
 2   and last night; correct?                                  13:26
 3        A.   We looked at the patent last night,             13:26
 4   Ms. Lamkin.  We -- We reviewed the patent last night.     13:26
 5        Q.   And you also reviewed the patent on your own    13:26
 6   last night?                                               13:26
 7        A.   Yes.                                            13:26
 8        Q.   Okay.  Mr. Rothschild, how would you explain    13:26
 9   what a module generating assembly in the '860 patent      13:26
10   is to a jury?                                             13:26
11        A.   I would have to look, Ms. Lamkin -- Well, I     13:26
12   would answer by telling you that -- I'm sorry.  Could     13:26
13   you repeat the term again, Ms. Lamkin.  I'd appreciate    13:26
14   that.                                                     13:26
15        Q.   Module generating assembly.                     13:26
16        A.   I would say that a module generating            13:26
17   assembly is what it says in the specification of the      13:26
18   9,054,860 patent.                                         13:26
19        Q.   Yes, sir.  I'm asking, in your words, how       13:27
20   you would explain that term to a jury.                    13:27
21        A.   I would explain it to the jury that it is       13:27
22   what it says in the specification as published in the     13:27
23   9,054,860 patent.                                         13:27
24        Q.   So you have -- Other than how a module          13:27
25   generating assembly is in the patent, you have no         13:27
```

19

```
 1   other -- Strike that.                              13:27
 2          You will solely rely upon the patent's      13:27
 3   description for module generating assembly in this 13:27
 4   litigation?                                         13:27
 5       A.   Could you rephrase the question, please, or 13:27
 6   repeat the question.                                13:27
 7       Q.   You will solely rely on the '860 patent's  13:27
 8   description of a module generating assembly in this 13:27
 9   litigation?                                         13:28
10       A.   I will answer your question by saying:  What 13:28
11   is -- What is that module?  That the module is what it 13:28
12   says it is in the patent specification of the       13:28
13   9,054,860 patent, the asserted patent, the patent used 13:28
14   in the complaint, filed in the complaint.           13:28
15       Q.   Sir, my question is this:  My client is    13:28
16   entitled to know how you, as the named inventor, would 13:28
17   describe a module generating assembly to the jury.  13:28
18          You understand that?                         13:28
19       A.   I'm not an attorney, Ms. Lamkin, so I don't 13:28
20   know what your client is entitled to or not.  I     13:28
21   honestly don't.  So my counsel may know, you may know, 13:28
22   but I don't have any idea what your client is entitled 13:28
23   to.                                                 13:28
24          I will tell you that the specification       13:28
25   speaks to all kinds of terminology, and I would tell 13:28
```

20

|     |                                                             |       |
| --- | ----------------------------------------------------------- | ----- |
| 1   | line 46.                                                    | 14:00 |
| 2   | Q.   I want to be perfectly clear that what I'm             | 14:00 |
| 3   | asking for is not where in the specification the term       | 14:00 |
| 4   | "module generating assembly" is mentioned.                  | 14:00 |
| 5   | What I'm asking for specifically is:  Where                 | 14:00 |
| 6   | in the specification is the teaching or the                 | 14:00 |
| 7   | description that corresponds to the claim limitation        | 14:00 |
| 8   | I've read into the record at column 9, lines 9              | 14:00 |
| 9   | through 11?                                                 | 14:01 |
| 10  | That's the only thing I want, is:  Where in                 | 14:01 |
| 11  | the specification is the teaching that corresponds to       | 14:01 |
| 12  | the limitation at column 9, lines 9 through 11?             | 14:01 |
| 13  | A.   Great.  Great.  I would tell you, in answer            | 14:01 |
| 14  | to your question, that I find information -- I don't        | 14:01 |
| 15  | know whether -- what the term -- not being an attorney      | 14:01 |
| 16  | or a patent attorney, what the term "teaching" means;       | 14:01 |
| 17  | but I find information on module generating assembly        | 14:01 |
| 18  | in column 1, line 46, where it says -- and I will read      | 14:01 |
| 19  | slowly.                                                     | 14:01 |
| 20  | Q.   It's okay, Mr. Rothschild.  It's okay.  You            | 14:01 |
| 21  | don't have to read into the record.                         | 14:01 |
| 22  | If you'll just give me the citations.                       | 14:01 |
| 23  | Column 1, starting at which line?                           | 14:01 |
| 24  | A.   Line 45 to 48 -- to 49.                                 | 14:01 |
| 25  | Q.   Okay.  And can you please provide any other            | 14:02 |

28

| | | |
|---|---|---|
| 1 | citations to the specification that describe the | 14:02 |
| 2 | limitation disclosed at column 9, lines 9 through 11? | 14:02 |
| 3 | A.   Yes.  I find the term "module generating | 14:02 |
| 4 | assembly" in line -- approximately line column 2, | 14:02 |
| 5 | line 17 through 24. | 14:02 |
| 6 | Q.   Great.  Others? | 14:02 |
| 7 | A.   I find the term "module generating assembly" | 14:02 |
| 8 | in column 3, line 46 to 55. | 14:02 |
| 9 | Q.   Thank you.  Any others? | 14:03 |
| 10 | A.   I find the term "module generating assembly" | 14:03 |
| 11 | in the specification of the '860 patent in column 5, | 14:03 |
| 12 | line -- approximately line 5 through line 15 -- I'm | 14:03 |
| 13 | sorry -- line 14. | 14:03 |
| 14 | Q.   Thank you, sir.  Any others? | 14:03 |
| 15 | A.   I find the term "module generating assembly" | 14:03 |
| 16 | in column 5 of the '860 patent, in line 22 -- | 14:03 |
| 17 | approximately line 22 to line 26. | 14:03 |
| 18 | Q.   Thank you.  Others? | 14:03 |
| 19 | A.   I find the term "module generating assembly" | 14:03 |
| 20 | in the '860 patent -- asserted patent, in column 5, | 14:04 |
| 21 | line 30 through line 35. | 14:04 |
| 22 | Q.   Thank you.  Any others? | 14:04 |
| 23 | A.   I find the term "module generating assembly" | 14:04 |
| 24 | in the '860 patent in line, approximately, 53 -- | 14:04 |
| 25 | column 5, line 53 through line approximately 60 -- | 14:04 |

29

| | | |
|---|---|---|
| 1 | fifty -- correcting that to line 59. | 14:04 |
| 2 | Q.   Thank you, Mr. Rothschild. | 14:04 |
| 3 | And any other discussions of citation -- | 14:04 |
| 4 | Sorry.   Strike that. | 14:04 |
| 5 | Any other discussions in the specification | 14:04 |
| 6 | of the '860 patent for the limitation disclosed at | 14:04 |
| 7 | column 9, lines 9 through 11? | 14:04 |
| 8 | A.   Ms. Lamkin, I can't say with specificity if | 14:05 |
| 9 | there's any others; but those are ones that I noted | 14:05 |
| 10 | when I reviewed the patent a few minutes ago during | 14:05 |
| 11 | our break, that are contained within the | 14:05 |
| 12 | specifications.   To be clear, there may be others. | 14:05 |
| 13 | Q.   Okay.   Please take your time, sir.   I need | 14:05 |
| 14 | you to highlight all of them.   Take it -- This is why | 14:05 |
| 15 | we're here:   You're the named inventor on this patent | 14:05 |
| 16 | and we need to understand it. | 14:05 |
| 17 | So I need to know, in your opinion, all | 14:05 |
| 18 | discussions in the specification for the limitation at | 14:05 |
| 19 | column 9, lines 9 through 11. | 14:05 |
| 20 | A.   Those are the ones, Ms. Lamkin, that I've -- | 14:05 |
| 21 | that I have found. | 14:05 |
| 22 | Q.   Okay.   Thank you.   And in the citations that | 14:05 |
| 23 | you have just provided, can you find any discussion of | 14:05 |
| 24 | the specific language -- not just the term "module | 14:05 |
| 25 | generating assembly," but the specific language -- | 14:05 |

30

1   appearing in the limitation at column 9, lines 9        14:05

2   through 11?                                             14:06

3        A.   I would believe the answer -- Strike that.    14:06

4        The answer would be that the teaching or           14:06

5   that the wording is as contained in the specification.  14:06

6        Q.   I'm sorry.  I don't understand.  I don't      14:06

7   understand that.                                        14:06

8        MR. PALAVAN:  One second.  One second.             14:06

9        Leigh, can you just move your camera to your       14:06

10  right.  You keep leaning to the right, so if you could  14:06

11  just move it to the right.                              14:06

12       THE WITNESS:  I'm leaning to the right,            14:06

13  Mr. Palavan, because I'm looking at the patent.         14:06

14       MR. PALAVAN:  Yeah, that's what I'm saying.         14:06

15  So can you just shift your thing to the right?  Yeah,    14:06

16  there you go.  Perfect.                                 14:06

17       THE WITNESS:  Does that help?                      14:06

18       MR. PALAVAN:  Yeah.  That way, Ms. Hoover is        14:06

19  not having to go like this in following you.            14:06

20       THE WITNESS:  Perfect.  Happy to                   14:06

21  accommodate.                                            14:06

22       Could you rephrase the question.  Could you        14:06

23  restate the question, Ms. Lamkin.                       14:06

24       Q.   BY MS. LAMKIN:  I'm asking you to explain      14:06

25  your response to the question.                          14:06

31

```
 1              Ms. Hoover, can you reread his response.        14:06

 2                   (Record read.)                            14:06

 3              THE WITNESS:  I'm asking Ms. Lamkin to          14:07

 4    repeat the question, not my answer, Ms. Hoover and       14:07

 5    Ms. Lamkin.                                              14:07

 6              MS. LAMKIN:  Okay.  I'll do it.                 14:07

 7         Q.   BY MS. LAMKIN:  In the citations that you       14:07

 8    just provided, please point out any discussion of the    14:07

 9    specific language in column 9, lines 9 through 11.        14:07

10         A.   My answer would be that the wording in the      14:07

11    specifications speaks for itself.  I have no             14:07

12    interpretation to provide.                               14:07

13         Q.   I'm not asking for interpretation, sir.  I'm    14:07

14    asking you to point to a specific discussion of the      14:07

15    language in column 9, lines 9 through 11, in the         14:07

16    citations you've provided.                               14:07

17         A.   My answer would be that the wording in the      14:07

18    specification speaks for itself.                         14:07

19         Q.   And can you point to any language in the        14:07

20    specification that discusses "a module generating         14:08

21    assembly structured to receive at least one              14:08

22    verification data element corresponding to the at        14:08

23    least one entity"?                                       14:08

24         A.   My answer would be, as I repeat it again,       14:08

25    Ms. Lamkin -- I'll repeat it again -- that the wording    14:08
```

                                                                    32

1    Q.   Is that an accurate statement in your          16:26

2    declaration?                                         16:26

3    A.   Yes.                                            16:26

4    Q.   Just read it into the record:  "I have more    16:26

5    than 20 years of experience involving claim         16:26

6    construction and claim charts in connection with    16:26

7    patent litigation.  I also personally analyzed the  16:27

8    claims and the claim constructions in this case prior 16:27

9    to the filing of the lawsuit," unquote.             16:27

10        That statement's accurate, Mr. Rothschild?     16:27

11   A.   I believe it's accurate as to this case, as    16:27

12   to the --                                            16:27

13   Q.   Do you -- Please, sir.                          16:27

14   A.   I believe it's accurate -- Thank you.  I       16:27

15   believe it's accurate as to this case, in the case of 16:27

16   -- and accurate as to this patent, 8,788,090.       16:27

17   Q.   Okay.  And then the next page, let me know     16:27

18   when you've read that.                               16:27

19   A.   I've completed reading it, Ms. Lamkin.         16:28

20   Q.   Okay.  Is there anything in this declaration   16:28

21   that you -- that is inaccurate, to the best of your 16:28

22   recollection?                                        16:28

23   A.   There is not, to the best of my               16:28

24   recollection.                                        16:28

25   Q.   Okay.  Do you recall in the RCDI matter that   16:28

84

1    the District Court ultimately awarded attorneys' fees      16:28

2    against RCDI?                                              16:28

3         A.   I recall that in the -- in this matter, the     16:28

4    District Court did not award attorneys' fees against      16:28

5    RCDI.  Your statement is not correct.                     16:29

6         What happened, to the best of my                     16:29

7    recollection, is the court denied attorneys' fees.        16:29

8    The other side appealed, to the best of my knowledge,     16:29

9    to the federal circuit.  The circuit came back and        16:29

10   contradicted or disagreed with the federal district       16:29

11   judge and told the district judge -- told the district    16:29

12   judge to award attorneys' fees.  And, at that point,      16:29

13   the attorneys -- I'm sorry -- the federal district        16:29

14   judge followed the circuit's recommendation and           16:29

15   awarded attorneys' fees against the plaintiff,            16:29

16   Rothschild Connected Device Innovation.                   16:29

17        Q.   And then when the District Court awarded         16:29

18   attorneys' fees against RCDI, did RCDI pay the            16:29

19   attorneys' fees?                                          16:29

20        A.   RCDI attempted to negotiate to pay the          16:29

21   attorneys' fees with the plaintiff.  The plaintiff did    16:30

22   not accept, to the best of my knowledge -- I'm sorry.     16:30

23   The defendant.  Excuse me.  The defendant did not         16:30

24   accept our offer to pay.                                  16:30

25        RCDI was prepared to pay attorneys' fees in          16:30

85

```
 1    some amount, and was negotiating back and forth for      16:30
 2    lower amounts, which was agreed to at some point by       16:30
 3    the defendant.  But a solution -- We were in              16:30
 4    negotiations, continual negotiations.  A settlement       16:30
 5    was never reached.  RCDI never refused to pay             16:30
 6    attorneys' fees at any point, to the best of my           16:30
 7    knowledge.  That was done by my general counsel, at       16:30
 8    the time, in the negotiation process.                     16:30
 9          So your statement about refusing to pay             16:31
10    attorneys' fees, or didn't pay them, is not correct,     16:31
11    Ms. Lamkin.                                               16:31
12          MS. LAMKIN:  I'm going mark as Exhibits 21          16:31
13    and 22 --                                                 16:31
14          THE WITNESS:  I'd also point out for the            16:31
15    record, for your further knowledge, Ms. Lamkin, that a   16:31
16    judgment was never obtained, to the best of my           16:31
17    knowledge, against the company.                           16:31
18          The court was in fact inquiring, the federal        16:31
19    district court, why the -- why the defendant did not     16:31
20    go for a judgment in this matter, and the defendant      16:31
21    said at this point they didn't want a judgment.  It      16:31
22    might have been because there was negotiations ongoing   16:31
23    and that the matter was supposed to be settled between   16:31
24    the parties -- which is what the court, I believe,       16:32
25    from my point of view, was hoping for.                    16:32
```

86

```
 1        A.   Correct.                                16:33

 2        Q.   Okay.  Exhibit 21 goes on to say at     16:34

 3   paragraph 2:  "As part of the fee submission, ADS  16:34

 4   requested that this court hold Mr. Rothschild jointly  16:34

 5   and severally liable with RCDI."                  16:34

 6        Quote:  "So as not to require further        16:34

 7   unnecessary litigation, ADS seeks the award of fees  16:34

 8   and expenses to be entered jointly and severally   16:34

 9   against the entity RCDI and its sole member, Leigh M.  16:34

10   Rothschild, as the two are one in the same."      16:34

11        Does that refresh your recollection that ADS  16:34

12   tried to name you as a party in this matter,      16:34

13   Mr. Rothschild?                                   16:34

14        A.   That's correct.                         16:34

15        Q.   And then in paragraph 3 of Exhibit 21, it  16:34

16   says:  "On November 8th, 2017, the court ordered the  16:34

17   fee order."                                       16:35

18        Quote:  "It is ordered that Rothschild       16:35

19   Connected Devices Innovations ('Rothschild') shall pay  16:35

20   ADS attorneys' fees and costs."                   16:35

21        Again, is that consistent with your          16:35

22   recollection that ADS -- that RCDI was ordered to pay  16:35

23   attorneys' fees and costs in this matter?         16:35

24        A.   That's correct.                         16:35

25        Q.   In paragraph 4, it says:  "This court   16:35
```

88

```
 1   and five dollars as its assets?                    16:36

 2        A.   I do not recall that.  I do not know if   16:37

 3   that's correct.                                     16:37

 4        Q.   Okay.  Do you have any reason to doubt that  16:37

 5   representation by RCDI at the time?                 16:37

 6        A.   I have every reason to doubt it, because I  16:37

 7   don't have any knowledge of it.                     16:37

 8        Q.   Okay.  "As of the date of this motion, RCDI  16:37

 9   has failed to comply with the fee order, as RCDI has  16:37

10   neither paid the amount directed to be paid ... nor  16:37

11   has RCDI made any notification to this court."       16:37

12        Is that consistent with your recollection of   16:37

13   the matter, sir?                                    16:37

14        A.   It is not consistent, in the fact that I  16:37

15   testified earlier that negotiations were ongoing,   16:37

16   where we made several offers to pay from our general  16:37

17   counsel at the time to the company.  Numerous       16:37

18   discussions, in my memory, were held and negotiations  16:37

19   went back and forth in terms of payment, right until  16:38

20   the case ended.                                     16:38

21        Q.   Do you have any recollection of RCDI ever  16:38

22   paying to ADS the ordered fee award?                16:38

23        A.   I do not.                                 16:38

24        Q.   Turn to Exhibit 22.                       16:38

25        A.   But I would add to the statement that a   16:38
```

                                                                90

1    judgment was never entered in this matter, as I          16:38

2    testified to earlier, that the court was asking why       16:38

3    the plaintiff was -- why the defendant, excuse me, was    16:38

4    not seeking a judgment.  No answer, to my knowledge,      16:38

5    was given.  And I again repeat for the record that        16:38

6    negotiations were ongoing, where offers were made to      16:38

7    pay this amount from RCDI to the defendant.               16:38

8        Q.  Mr. Rothschild, I've personally reviewed the      16:38

9    docket.  I don't see any evidence of that.                16:38

10       Do you think you can produce that evidence,           16:38

11   sometime after this deposition, for my review?           16:38

12       A.  Many years ago.  I have no knowledge whether     16:38

13   it would be evidence or not.  The person that was the    16:38

14   general counsel at the time no longer works for us and   16:39

15   hasn't for many, many years.  He would hold those        16:39

16   records, if there were any records.  What happened to    16:39

17   them, I don't know.  I've never seen anything in that    16:39

18   regard.  But I am testifying hereto that there were      16:39

19   numerous conversations that were held, as reported to    16:39

20   me by counsel, to pay.                                   16:39

21       Q.  Looking now at Exhibit 22, an order dated        16:39

22   August 13th, 2019.                                       16:39

23       Do you understand, sir, that a report and           16:39

24   recommendation is an order from the court?               16:39

25       A.  I'm sorry.  Say again.                           16:39

                                                              91

1    I do know that the court specifically told,    16:43

2    as I previously testified, that I would not be brought    16:43

3    into the case until service was effectuated and a    16:43

4    hearing would be held on the matter to determine the    16:43

5    merits of bringing me in.  And --    16:43

6    Q.    And --    16:43

7    A.    Excuse me.  And I believe the record    16:44

8    supports that.    16:44

9    Q.    Did either RCDI or you personally ever pay    16:44

10    any portion of the court order awarding attorneys'    16:44

11    fees in this matter?    16:44

12    A.    I repeat my testimony that no payment was    16:44

13    made for RCDI, and that ongoing negotiations were    16:44

14    being held to effectuate payment, but a judgment was    16:44

15    never filed by the court, even though the court was    16:44

16    wondering if they were going to seek a judgment.    16:44

17    I also repeat my testimony -- I also state    16:44

18    for the record that I was never asked by the court to    16:44

19    pay anything; that the court was -- the court was    16:44

20    asking for me to be served, to decide whether they    16:44

21    were to bring me into the case.    16:44

22    Q.    Mr. Rothschild, you have a right, and I'm --    16:44

23    I'm perfectly happy to let you explain your answer,    16:44

24    but I first need an answer.    16:44

25    So it's a yes-or-no question, and then,    16:44

95

```
 1    please, you have a right to explain yourself.              16:45

 2          Did RCDI ever pay any attorneys' fees               16:45

 3    pursuant to the order ordering attorneys' fees to be      16:45

 4    paid?                                                     16:45

 5          A.   No, we did not.                                16:45

 6          Q.   Okay.  And did you personally ever pay any     16:45

 7    attorneys' fees based on the order from the court         16:45

 8    ordering that attorneys' fees be paid?                    16:45

 9          A.   No.  And to explain, as you said you would     16:45

10    currently allow me to explain:  I was never ordered by    16:45

11    the court to pay anything to RC -- from RCDI or pay       16:45

12    anything to -- I'm sorry.  I was never ordered by the     16:45

13    court, me personally, to pay any sum of money to the      16:45

14    defendant.                                                16:45

15          Q.   And your recollection is that's because you    16:45

16    were not properly served; right?                         16:45

17          A.   My recollection would be that I was not        16:45

18    properly served, and the court had stated that I would    16:45

19    need to be properly served and that the court would       16:45

20    have a hearing to determine the merit of bringing me      16:45

21    into the case.                                            16:46

22          Q.   You could have paid the money; right?  You     16:46

23    knew the court ordered attorneys' fees paid, and          16:46

24    either you or RCDI could have paid the money; right?      16:46

25          A.   Absolutely incorrect.                          16:46
```

96

1    Q.   Why not?                                          16:46

2    A.   As far as me paying the money, I had no           16:46

3    obligation, as I just said, to pay any money.  It      16:46

4    would be absolutely not the case that I had any        16:46

5    obligation, any legal obligation, at that point, to    16:46

6    pay.  And as I've testified -- So that's the answer to 16:46

7    the second question, as to why I didn't pay.  I had no 16:46

8    legal obligation to pay.                               16:46

9         Your first question, I believe, Ms. Lamkin,       16:46

10   is why RCDI did not pay.  As I've testified to now     16:46

11   numerous times today, RCDI was in negotiation with the 16:46

12   defendant as to effectuate a payment settlement.       16:46

13   Q.   The court issued an order ordering RCDI to        16:46

14   pay attorneys' fees; correct?                          16:46

15   A.   I believe so.                                     16:46

16   Q.   And RCDI did not honor that order; correct?       16:47

17   A.   I don't know if the order was not honored.        16:47

18   That would be a legal determination.  But I will tell  16:47

19   you, and I've testified and I will testify again, that 16:47

20   the company RCDI was in negotiation to pay to the      16:47

21   defendant an amount of money that would satisfy them   16:47

22   in this matter.                                        16:47

23        MS. LAMKIN:  I'm going to mark Exhibit 23         16:47

24   the complaint from case number 1:19-cv-01109,          16:47

25   Rothschild Digital Confirmation v. CompanyCam.         16:48

97

| | | |
|---|---|---|
| 1 | (Exhibit 23 marked.) | 16:48 |
| 2 | Q.   BY MS. LAMKIN:  Have you ever seen | 16:48 |
| 3 | Exhibit 23 before, Mr. Rothschild?  And I'm happy to | 16:48 |
| 4 | flip through it if that would help you. | 16:48 |
| 5 | A.   Well, Ms. Lamkin, for the record, I'm only | 16:48 |
| 6 | seeing the first two sentences after the title page, | 16:48 |
| 7 | "plaintiff ... through its undersigned attorneys" -- | 16:48 |
| 8 | and now you're scrolling. | 16:48 |
| 9 | Q.   Correct.  Would you like me to scroll | 16:48 |
| 10 | through the document for you, sir? | 16:48 |
| 11 | A.   Yes, I would.  Yep. | 16:48 |
| 12 | Q.   Okay.  I'll just do it page by page, and you | 16:48 |
| 13 | tell me when you're ready for the next page. | 16:48 |
| 14 | A.   Ms. Lamkin, are you asking me to read each | 16:48 |
| 15 | page, or you just want me to kind of quickly scroll | 16:48 |
| 16 | through it? | 16:48 |
| 17 | Q.   I'm sure not, sir.  I'm just -- Whatever you | 16:48 |
| 18 | need to tell -- to ascertain whether or not you've | 16:48 |
| 19 | seen this document before. | 16:48 |
| 20 | A.   I don't recollect with specificity whether | 16:48 |
| 21 | I've seen the document before. | 16:48 |
| 22 | Q.   Okay.  In general, do you review the | 16:49 |
| 23 | complaints before they're filed? | 16:49 |
| 24 | Let me ask that a better way, sir.  That's a | 16:49 |
| 25 | terrible question. | 16:49 |

98

| | |
|---|---|
| 1 | A.  Sometimes I do, sometimes I don't.  I will | 16:49 |
| 2 | tell you that I rely upon my attorneys to file a | 16:49 |
| 3 | correct complaint. | 16:49 |
| 4 | Q.  Do you recall this case, RDC v. CompanyCam? | 16:49 |
| 5 | A.  There is a recollection but not with | 16:49 |
| 6 | specificity. | 16:49 |
| 7 | Q.  What do you remember about this case? | 16:49 |
| 8 | A.  I remember that you were counsel, I believe, | 16:49 |
| 9 | for the defendant. | 16:49 |
| 10 | Q.  Do you remember anything else? | 16:49 |
| 11 | A.  I remember that a settlement was achieved, | 16:49 |
| 12 | no money was paid by either side; that counsel -- my | 16:49 |
| 13 | counsel negotiated with you, Ms. Lamkin, and I guess | 16:49 |
| 14 | on behalf of the client -- | 16:49 |
| 15 | Q.  Wait, wait.  Don't -- If you're about to -- | 16:49 |
| 16 | Don't say any of the terms on the record, because it's | 16:49 |
| 17 | a separate matter. | 16:49 |
| 18 | A.  Hmm.  Settlement was achieved -- | 16:49 |
| 19 | Q.  Okay.  Fine. | 16:50 |
| 20 | A.  -- to the full satisfaction of all action. | 16:50 |
| 21 | Q.  I'm going to move to strike that.  It's a | 16:50 |
| 22 | confidential, unrelated matter; so let's just not have | 16:50 |
| 23 | that on the record, please, sir. | 16:50 |
| 24 | Do you recall which entity or persons are | 16:50 |
| 25 | the manager, or were the manager, of RDC? | 16:50 |

99