Rachael D. Lamkin
LAMKIN IP DEFENSE
One Harbor Drive, Suite 300
Sausalito, CA 95965
RDL@LamkinIPDefense.com
916.747.6091
*Counsel for Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DIGITAL VERIFICATION SYSTEMS, LLC**<br><br>Plaintiff,<br><br>v.<br><br>**ENCYRO, INC.**<br><br>Defendant. | Case No. 5:22−cv−00686−JWH−SP<br><br>**DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>January 19, 2023, at 10:00 a.m.<br>Courtroom 9D |

**DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**

Def's OCCB

0

# TABLE OF CONTENTS

I.     CLAIM CONSTRUCTION ISSUES PRESENTED ……………………3

II.    MATERIAL BACKGROUND…………………………………..…………3

    A.    The '860 Patent & Asserted Claim 1 ……………………………..3

    B.    The Relevant Prosecution History…………………………………6

III.   LEGAL PRINCIPLES …………………………………………………...…9

IV.    DEFENDANT'S PROPOSED CONSTRUCTIONS AND SUPPORTING

    EVIDENCE……………………………………………………………..11

    A.    The Parties Have Stipulated that the Claimed System Contains

        Hardware and Software…………………………………………..11

    B.    The Module Generating Assembly is Comprised of Hardware.…12

    C.    The "Module Generating Assembly" Term is Indefinite…………14

    D.    Claim 1—and thus all Asserted Claims—Are Invalid as the

        "Partially Associate" Term is Indefinite…………………………20

    E.    Claim 1—and All Asserted Claims—Are Invalid as Failing to be

        Supported by a "Written Description" in the Specification…......22

V.     CONCLUSION………………………………………………………27

# TABLE OF AUTHORITIES

*Abbott Labs. v. Novopharm Ltd.,* 323 F.3d 1324 (Fed. Cir. 2003)................................27

*Ariad Pharms., Inc. v. Eli Lilly & Co.,* 598 F.3d 1336 (Fed. Cir. 2010)......................24

*Aristocrat Techs. Australia Pty. Ltd. v. Int'l Game Tech.,* 521 F.3d 1328 (Fed. Cir. 2008) ...................................................................................................................17

*Biomedino, LLC v. Waters Techs. Corp.,* 490 F.3d 946 (Fed. Cir. 2007). ...................18

*Data Engine Techs. LLC v. Google LLC,* 10 F.4th 1375 (Fed. Cir. 2021)...................13

*DealerTrack, Inc. v. Huber,* 674 F.3d 1315 (Fed. Cir. 2012).......................................18

*E2Interactive, Inc. v. Blackhawk Network, Inc.,* 561 F. App'x 895 (Fed. Cir. 2014)....14

*Gart v. Logitech, Inc.,* 254 F.3d 1334 (Fed. Cir. 2001)................................................10

*Holmberg v. Stealth Cam, LLC,* No. 11-248 (DWF/LIB), 2013 U.S. Dist. LEXIS 98094 (D. Minn. July 15, 2013).............................................................................22

*In re Downing,* 754 F. App'x 988 (Fed. Cir. 2018) ...............................................24-26

*Interval Licensing LLC v. AOL, Inc.,* 766 F.3d 1364 (Fed. Cir. 2014) .......................22

*Lufthansa Technik AG v. Astronics Advanced Elec. Sys. Corp.,* 711 F. App'x 638 (Fed. Cir. 2017) .....................................................................................................18

*Markman v. Westview Instr., Inc.,* 517 U.S. 370 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996). .................................................................................................................10

*MTD Prods. Inc. v. Iancu,* 933 F.3d 1336 (Fed. Cir. 2019) .........................................15

*Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 134 S. Ct. 2120 (2014)........21

*O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.,* 521 F.3d 1351 (Fed. Cir. 2008). ...................................................................................................................10

*Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314 (Fed. Cir. 2003). ........................13

*OpenTV, Inc. v. Apple, Inc.,* No. 14-cv-1622-HSG, 2015 U.S. Dist. LEXIS 73281, 2015 WL 3544845  (N.D. Cal. June 5, 2015) .........................................................27

*Pelican Int'l Inc. v. Hobie Cat Co.,* No. 20-cv-2390-BAS-MSB, 2022 U.S. Dist. LEXIS 18400 (S.D. Cal. Feb. 1, 2022) ....................................................................27

*Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) ........................................10-12

*Rillito River Ltd. Liab. Co. v. Bamboo Indus. Ltd. Liab. Co.,* No. 2:17-cv-00181-TLN-CKD, 2018 U.S. Dist. LEXIS 154933 (E.D. Cal. Sep. 10, 2018).......................21-23

*Standard Oil Co. v. Am. Cyanamid Co.,* 585 F. Supp. 1481 (E.D. La. 1984)...............22

*Straight Path IP Group v. Sipnet EU S.R.O.,* 806 F.3d 1356 (Fed. Cir. 2015) ............11

*Team Worldwide Corp. v. Intex Rec. Corp.,* No. 2020-1975, 2021 U.S. App. LEXIS 27284 (Fed. Cir. Sep. 9, 2021). ......................................................................16-17

*Teva Pharm. USA, Inc. v. Sandoz, Inc.,* 789 F.3d 1335, 1344 (Fed. Cir. 2015)...........14

*Williamson v. Citrix Online, LLC,* 792 F.3d 1339, 1350 (Fed. Cir. 2015)............. 15-16

*Wonderland Nurserygoods Co. v. Baby Trend, Inc.,* No. 5:14-cv-01153-JWH-SPx, 2020 U.S. Dist. LEXIS 245480 (C.D. Cal. Dec. 30, 2020)........................................10

## I.   CLAIM CONSTRUCTION ISSUES PRESENTED

The Parties have asked the Court to resolve at least four (4) and possibly five (5) claim construction disputes, all pertaining to Claim 1, the only asserted independent claim. Those issues are:

(1)   Whether—as the patentee told the USPTO in order to obtain an issued patent—the "module generating assembly" is hardware;

(2)   Whether Claim 1 is invalid as indefinite because limitation [b] is a means-plus-function limitation and the patent's specification fails to disclose a corresponding structure;

(3)   Whether Claim 1 is invalid as indefinite because the "partially associate" term in limitation [b] fails to inform a person of skill in the art ("POSITA") about the scope of the invention with reasonable certainty;

(4)   Whether Claim 1 is invalid because the patentee was not in possession of the ideas in limitation [e] when he filed the application for said patent; and

(5)   If needed to adjudicate issue (4), whether limitation [e] should be construed, "said at least one digital identification module is modified together with a single electronic file such that it can only be embedded within said single electronic file".

## II.   MATERIAL BACKGROUND

### A.   The '860 Patent & Asserted Claim 1

The '860 Patent is drawn toward a digital signature verification system (a system that can be used to prove who signed a document).  As stated by the United States Patent and Trademark Office ("USPTO") Examiner during prosecution, digital verification was old technology when the patent was filed, in 2008.  The only reason the USPTO issued the '860 Patent was because (i) the patentee told the USPTO that the module generating assembly comprised hardware, and (ii) because the patentee added limitation [e], "said at least one digital identification module is cooperatively structured to be embedded within only a single electronic file."

Claim 1 is the only asserted independent claim. As such, infringement and invalidity of all asserted claims rise and fall with Claim 1.

Claim 1 is a system claim. '860 Patent, Claim 1, 9:6.   Claim 1 reads:

1. A digital verified identification system, comprising:

[a[1]] at least one **digital identification module** structured to be associated with at least one entity,

[b] a **module generating assembly**
    [i] structured to receive at least one verification data element corresponding to the at least one entity and
    [ii] create said at least one digital identification module,

[c] said at least one **digital identification module** being disposable within at least one electronic file, and

---

[1] Against convention, the patentee did not use numeration (letters and numbers) to identify the claim limitations.  For clarity, numeration signifying distinct limitations have been added here in brackets.

Def's OCCB

4

[d] said at least one **digital identification module** comprising at least one primary component structured to at least **partially associate** said digital identification module with said at least one entity, wherein

[e] said at least one **digital identification module** is cooperatively structured to be embedded within only a single electronic file.

'860 Patent, 9:6-22 (terms at-issue in red).

As such, Claim 1 covers a system that has **a digital identification module** that performs functions and a **module generating assembly** that performs functions, including generating the **digital identification module**.

Figure 1 in the '860 Patent depicts the invention as follows:



FIG. 1

An entity (a person, 30) sends the verification data elements (52, e.g., a social security number) to the module generating assembly (50). The module generating

assembly creates the digital identification module (20). Said digital identification module (with all those claimed properties) (20) gets embedded in an electronic file (40). Said digital identification module (20) is "cooperatively structured" such that it can only be embedded in that single file, e.g., a word document. '860, 3:23-52, 9:6-22.

Materially, the '860 Patent contains zero explanation for how any of this might happen or work. The '860 Patent discloses nothing but generic data and generic black boxes, in violation of the fundamental principles of the patent system.

**B.     The Relevant Prosecution History**

When the patentee filed its original application, Claim 1 was identical to the issued claim, except that it did not have limitation [e]:

```
 1   What is claimed is:
 2   1.   A digital verified identification system, comprising:
 3        at least one digital identification module structured to be
 4   associated with at least one entity,
 5        a module generating assembly structured to receive at least
 6   one verification data element corresponding to the at least one
 7   entity and create said at least one digital identification module,
 8        said at least one digital identification module being
 9   disposable within at least one electronic file, and
10        said at least one digital identification module comprising at
11   least one primary component structured to at least partially
12   associate said digital identification module with said at least one
13   entity.
```

'860 Prosecution History ("PxHx"), 1/2/2008 Transmittal of New Patent Application,

original Claim 1 as filed.

The Examiner rejected all claims, including Claim 1, based on invalidating prior art. *Id.*, at 2/1/2011.  Lamkin Decl., Exh. A, at pps.7-8.  The Examiner also rejected the claims under 35 U.S.C. § 101 as they were drawn to nonpatentable subject matter (abstract ideas). *Id.*, at 5.

In response, the patentee added limitation [e] and represented to the USPTO that Claim 1 was not drawn to abstract subject matter because the "module generating assembly must include hardware":

> A software module/component, *per se*, is <u>incapable</u> of creating a digital identification module. In fact, a software, *per se*, is incapable of performing any function. Only when software is coupled to hardware is software capable of performing a particular function. Therefore, properly construed, the claimed "module generating assembly" must include hardware, and thus, independent claims 1 and 24 are directed to statutory subject matter within the meaning of 35 U.S.C. § 101.

*Id.*, at 4/5/2011 Amendment, at 14 (emphasis in the original); *Id.*, Appeal Brief, Dkt. No. 22-4, at 2-3.

It would take years for the claims of the '860 Patent to issue.  The Examiner continued to reject the claims until the patentee appealed to the Patent Trial and Appeal Board (the "PTAB"). Ultimately, in 2015, the claims issued over the Examiner's rejections because, *inter alia*, the PTAB agreed that the claims were comprised of hardware: "Claims 1-16, 18-25, and 27 are limited to hardware or the combination of hardware and software because the claim is a system claim that must have

corresponding structure to perform the functional limitation of the software." Decision on Appeal, Dkt. No. 22-5, at 2.[2]

In 2018, an entity called Askeladden filed a petition for *inter partes review* ("IPR") alleging that the claims of the '860 were invalid over prior art. Ultimately, the PTAB declined to institute the IPR because the PTAB determined the claims were means-plus-function and the petitioner had failed to identify a corresponding structure in the '860 specification. PTAB Decision, Dkt. No. 22-7, at 2.

Petitioner moved for reconsideration, arguing that Claim 1 was not a means-plus-function claim and, in the alternative, that the specification had disclosed corresponding structure. PTAB Decision, Dkt. No. 22-7, at 2-3. The PTAB denied petitioner's motion. *Id*. In a thoroughly reasoned decision, the PTAB reviewed the intrinsic record, including the '860 Patent and the patent's prosecution history and concluded—again—that Claim 1 was a means-plus-function claim and that nothing in the patent disclosed a corresponding structure. *See* Dkt. No. 22-7, discussed below.

///

///

---

[2] The law relied on by the PTAB to save the claims of the '860 Patent is no longer good law. The ability to save abstract claims by adding the word "hardware" or "computer" was eliminated by the Supreme Court in 2014 in a now-famous case, *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347 (2014). Yet another reason DVS should not have asserted its patent against Encyro; *i.e.*, the claims are abstract under well-established law.

## I.     LEGAL PRINCIPLES[3]

The task of claim construction involves determining the meaning of a word or a group of words—which is known as a "limitation"—in a patent claim. Claim construction "is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Gart v. Logitech, Inc.,* 254 F.3d 1334, 1339 (Fed. Cir. 2001) (*quoting Embrex, Inc. v. Serv. Eng'g Corp.,* 216 F.3d 1343, 1347 (Fed. Cir. 2000)). Construing the meaning of patent claims is an issue for the Court to decide as a matter of law. *Markman v. Westview Instr., Inc.,* 517 U.S. 370, 387-91, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996). "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.,* 521 F.3d 1351, 1362 (Fed. Cir. 2008).

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The task of claim construction always begins with the claim language. *Innova,* 381 F.3d at 1116.

---

[3] These principles are well-known to this Honorable Court. This section is quoted directly from *Wonderland Nurserygoods Co. v. Baby Trend, Inc.*, No. 5:14-cv-01153-JWH-SPx, 2020 U.S. Dist. LEXIS 245480 (C.D. Cal. Dec. 30, 2020) (Holcomb, J.)

Indeed, "the proper construction of any claim language must, among other things, 'stay[] true to the claim language.'" *Straight Path IP Group v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1361 (Fed. Cir. 2015) (*quoting Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998)). Claim terms "are generally given their ordinary and customary meaning," *Phillips*, 415 F.3d at 1312 (*quoting Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996)), which is "the meaning that the term would have to a person of ordinary skill in the art," *Phillips*, 415 F.3d at 1313. The terms must be read in the context of the entire patent, however. *Id*. at 1314. In interpreting a claim, the Court must focus primarily on the intrinsic evidence of record, including the claims themselves, the specification, and, if in evidence, the prosecution history. *See id*. at 1312-20; *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005).

Among the intrinsic evidence, the "specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. "The specification is, thus, the primary basis for construing the claims." *Standard Oil Co. v. Am. Cyanamid Co*., 774 F.2d 448, 452 (Fed. Cir. 1985). It is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Phillips*, 415 F.3d at 1317. The Federal Circuit has recognized that an inventor may invoke a particular definition of a term in her specification or may

otherwise use a term in the specification in a manner that differs from the term's ordinary usage. *Id*. at 1316. "In such cases, the inventor's lexicography governs." *Id*.

In addition to the specification, the Court should also consider the prosecution history (if it is in evidence), consisting of "the complete record" of the patent. *Id*. If, within the prosecution history, a patentee clearly and unmistakably disavowed a claim construction, then the patentee disclaimed that construction. *See SanDisk Corp. v. Memorex Prods., Inc*., 415 F.3d 1278, 1287 (Fed. Cir. 2005); *Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1324 (Fed. Cir. 2003). Because the prosecution history often lacks the clarity of the specification, however, it is less useful for claim interpretation purposes. *See Phillips*, 415 F.3d at 1317.

Although the Court may also consider extrinsic evidence, including expert testimony, dictionaries, and learned treatises, such evidence is generally viewed as less reliable than intrinsic evidence. *See id*. at 1317-18. Therefore, the Court must use its discretion in admitting and weighing extrinsic evidence, keeping in mind the inherent flaws in that type of evidence. *See id*. at 1319.

## II.   DEFENDANT'S PROPOSED CONSTRUCTIONS AND SUPPORTING EVIDENCE

### A.   The Parties Have Stipulated that the Claimed System Contains Hardware and Software

After the Parties filed their Joint Claim Construction Statement, Dkt. No. 28, the

Parties continued to attempt to amicably resolve claim construction disputes. Specifically here, the Parties stipulate that the claimed system contains hardware and software. As such, the Parties withdraw the request to construe the preamble of Claim 1 as moot. *See* Dkt. No. 28, at 2.

### B.     The Module Generating Assembly is Comprised of Hardware

However, DVS continues to dispute that the module generating assembly is comprised of hardware, and declines to explain where the hardware might reside if not in the module generating assembly. As such, the issue before the Court is whether the module generating assembly is comprised of hardware and—if not—which element of the claims comprise hardware.

Defendant contends that the patentee made clear during prosecution that the module generating assembly is comprised of hardware. The patentee may not make one representation to obtain a patent and another when asserting its patent. *Data Engine Techs. LLC v. Google LLC*, 10 F.4th 1375, 1381 (Fed. Cir. 2021) ("We have repeatedly rejected efforts to twist claims, like a nose of wax, in one way to avoid invalidity and another to find infringement.") (collecting cases; internal notations omitted); *Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1323 (Fed. Cir. 2003). ("The doctrine of prosecution disclaimer is well established in Supreme Court precedent, precluding patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution.").

In order to obtain an issued patent, the patentee told the USPTO that the module generating assembly "must" included hardware. '860 PxHx, Reply Brief at 4, Dkt. No. 22-3, at 2 ("Since only hardware is capable of creating the digital identification module, the claimed module generating assembly (e.g., a computer processor) is hardware."); *Id*., Appeal Brief, at 8, Dkt. No. 22-4, at 3 ("the claimed 'module generating assembly' must include hardware"). The public is entitled to rely upon the patentee's representations to the USPTO. *Teva Pharm. USA, Inc. v. Sandoz, Inc*., 789 F.3d 1335, 1344 (Fed. Cir. 2015). Indeed, the USPTO expressly relied upon patentee's representation in issuing the patent. *Id*., Decision on Appeal, at 4, Dkt. No. 22-5, at 2. As such, the patentee has made a clear and unambiguous disclaimer of claim scope that must be enforced. *Omega,* 334 F.3d, at 1324; *E2Interactive, Inc. v. Blackhawk Network, Inc.,* 561 F. App'x 895, 897 (Fed. Cir. 2014).[4]

"The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent." *Teva,* 789 F.3d, at 1344. The patentee represented to the PTAB that the module generating assembly "must be" comprised of hardware. The Court must hold the patentee to this

---

[4] Indeed, this case is indistinguishable from *Uniloc 2017 LLC v. Google LLC,* No. 2:18-CV-00503-JRG-RSP, 2020 U.S. Dist. LEXIS 16314 (E.D. Tex. Jan. 30, 2020) wherein the patentee represented that the claims contain hardware to overcome a Section 101 rejection. *Id*., at *14. And while the opinion is not binding on this Court, the reasoning is sound, and the cases cited therein controlling.

representation.

### C.     The "Module Generating Assembly" Term is Indefinite

Indefiniteness is a matter of claim constriction.  *Noah Sys. Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012).

The issue before the Court is two-fold, (1) whether the "module generating assembly" is a means-plus-function ("MPF") term, and, if so, (2) whether the specification discloses a corresponding structure covering the full scope of limitation [b].   Defendant contends that the term is an MPF term, and that the specification fails to disclose the full scope of limitation [b].   As such, Claim 1, and all asserted claims, are indefinite.

Terms such as "assembly" and "module" are "nonce words".  *MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, 13, 41 1344 (Fed. Cir. 2019); *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015).   A "nonce" word is a term used to describe a generic word that does not convey sufficient structure to someone of skill in the art. *Id*.

Here, limitation [b] discloses an "assembly".  A term with no definite meaning, as the PTAB already found.  IPR Decision, Dkt. No 22-7.  Put another way, the claimed "assembly" is a "black box".  Data goes in and data goes out, but no specific structure is disclosed. *See Williamson*, 792 F.3d, at 1350; '860 Patent, IPR Decision Denying Request for Rehearing, Dkt. No. 22-7, at 6 ("Some data go in, and some data come out.

That does not identify any algorithm used to process the input to produce the output.").

Consistent with the PTAB's specific finding as to the claims here, the Federal Circuit has repeatedly found the term "assembly" to signify a means-plus-function term. *See, e.g., MTD Prods.,* 933 F.3d, at 1343 ("we agree with the Board that the term 'mechanical control ***assembly***' is similar to other generic, black-box words that this court has held to be nonce terms similar to 'mean' and subject to § 112, ¶ 6.") (emphasis added); *Team Worldwide Corp. v. Intex Rec. Corp.*, No. 2020-1975, 2021 U.S. App. LEXIS 27284, at *18 (Fed. Cir. Sep. 9, 2021).

Because the term "module generating assembly" is generic, a black box, the module generating assembly is a means-plus-function term and the patent must "clearly link" a corresponding structure in the specification that discloses ***the full scope*** of limitation [b]. *Williamson,* 792 F.3d, at 1352. The '860 Patent's specification fails to meet these requirements.

The claimed "assembly" must be hardware that is "[1] structured to receive at least one verification data element corresponding to the at least one entity and [2] create said at least one digital identification module".  Claim 1, lim[b], '860 Patent, 9:9-13.

Plaintiff DVS alleges that the corresponding structure is disclosed, as follows: "module generating assembly 50, including as outlined in Fig. 7 and its corresponding description, namely '860/7:48-8:62."  JCCS, Dkt. No. 28, at 4.

But DVS' cited portions of the specification fail to include any description of a

concrete structure or algorithm that performs the claimed functions in limitation [b]. As the '860 Patent explains, "as illustrated in FIG. 7, the present specification relates to a method of digital identification verification, ***generally indicated*** as 100." '860 Patent, 7:48-50 (emphasis added).  Figure 7 is a generalized flow chart; nothing in Figure 7 identifies specific hardware that performs the claimed limitations. *See Aristocrat Techs. Australia Pty. Ltd. v. Int'l Game Tech*., 521 F.3d 1328, at 1333 (Fed. Cir. 2008) ("Because general purpose computers can be programmed to perform very different tasks in very different ways, simply disclosing a computer as the structure designated to perform a particular function does not limit the scope of the claim to 'the corresponding structure, material, or acts' that perform the function, as required by section 112 paragraph 6"); '860 IPR Decision, Dkt. No. 22-7, at 4 ("merely disclosing software per se or software *per se* plus generic hardware to execute the software fails to set forth sufficient structure[.]").

As for the passages DVS cites from the specification (7:48-8:62), at-best, those passages merely list out the functional language of the claims; they do not contain a description of the specific structure that performs the claimed functions (hardware that is "[1] structured to receive at least one verification data element corresponding to the at least one entity and [2] create said at least one digital identification module").  Claim 1, lim[b], '860 Patent, 9:9-13.  *See Team Worldwide,* 2021 U.S. App. LEXIS 27284, at *18 (finding the "assembly" term to be a nonce term, and thus a means-plus-function

term, and that the specification fails to disclose a specific structure that performs the claimed functions).

Section 112, paragraph 6 of the Patent Code incorporates a deliberate quid pro quo: the patentee is allowed to claim a limitation in broad functional language, "provided that the specification indicates what structure constitutes the means for performing the claimed function." *Biomedino, LLC v. Waters Techs. Corp.,* 490 F.3d 946, 948 n.1 (Fed. Cir. 2007). The indicated structure must limit the claim so as not to allow pure functional claiming. Here, the "module generating assembly" "places no limits on the functional language of the claim." *DealerTrack, Inc. v. Huber*, 674 F.3d 1315, 1328-29 (Fed. Cir. 2012). "Without specifying a program, a computer alone does not limit the scope of the claim to the corresponding structure, material, or acts that perform the function, as required by section 112 paragraph 6." *Id*. (*quoting Aristocrat*, 521 F.3d at 1333.)

The '860 Patent "does not call out a specific, well-known component to perform the claimed function. Instead, the ["module generating assembly"] refers to a nebulous set of logic functions within a black box that also performs other functions." *Lufthansa Technik AG v. Astronics Advanced Elec. Sys. Corp*., 711 F. App'x 638, 641 (Fed. Cir. 2017) ("the '016 patent does not call out a specific, well-known component to perform the claimed function. Instead, the 'control means' refers to a nebulous set of logic functions within a black box that also performs other functions.")

When asked in deposition, even the named inventor could not identify a corresponding structure for the module generating assembly term.  Rothschild Depo Tr., Dkt. No. 22-8, at 26:25-34:6.

Fatally, the PTAB carefully analyzed the '860 Patent's intrinsic and extrinsic record, and could find no disclosure of the requisite corresponding structure. As the PTAB explained:

- "We considered the specification of the '860 patent (see Dec. 9–12)[.]" p. 3;

- "none of the cited testimony goes beyond recognizing the module generating assembly as a computer program or software performing the recited function." *Id.*;

- "merely disclosing software per se or software per se plus generic hardware to execute the software fails to set forth sufficient structure[.]" p.4;

- "The claims here do not specify the algorithm by which the computer program operates to perform the recited function. The prosecution history cited by Petitioner is not contrary to our determination. None of the Examiner, the Applicant, or the Board identified during prosecution any algorithm required by the claims for the module generating assembly." *Id.*;

- "the reference to 'a computer program' is too generic to identify any specific structure. The same is true for 'a computer program' plus 'hardware to run the computer program.'" p.5;

- "We acknowledged that the specification refers to the module generating assembly as a "computer program" and explained that a computer program does not set forth sufficient structure. Decision 10–11. As we discuss above in Section II.1, the algorithm by which the module generating assembly performs its recited function is not specified in the claims. That is true notwithstanding that the claims recite, for the module generating assembly, an input and an output, and a function to be performed, e.g., creating the output. Some data go in, and some data come out. That does not identify any algorithm used to process the input to produce the output." p.6;

IPR Decision Denying Request for Rehearing, Dkt. No. 22-7.

Upon careful analysis, twice, the PTAB concluded the claims were invalid for failing to disclose a structure corresponding to limitation [b]. Numerous courts consider such decisions by the PTAB to be persuasive evidence at claim construction. *See Clearlamp, LLC v. LKQ Corp.,* No. 12 C 2533, 2016 U.S. Dist. LEXIS 186028, at *12 (N.D. Ill. Mar. 18, 2016) ("the PTAB's *inter partes review* decision can be used as persuasive evidence before this court."); *id.*, at n7 (collecting cases stating the PTAB's decisions are persuasive and "the Federal Circuit has even stated that district courts must consider the U.S. PTO's decision").

Finally, Defendant proffered the expert testimony of Professor James Hughes, an expert in digital signature verification, who has worked and taught in the field for more

than fifty (50) years.  Lamkin Decl., Exhs B-C.   Professor Hughes opined, "I carefully reviewed the '860 Patent and I am unable to find any teaching, much less any structure that discusses or teaches limitation (b)."   Hughes Decl., ¶14; *see also id*., at ¶¶12-17, Lamkin Decl., Exh C.  DVS offered no expert testimony in support of its construction and no testimony in rebuttal.

### D.    Claim 1—and thus all Asserted Claims—Are Invalid as the "Partially Associate" Term is Indefinite

Again, indefiniteness is a matter of claim construction.  *Noah Sys. Inc. v. Intuit Inc*., 675 F.3d 1302, 1311 (Fed. Cir. 2012).

The issue before the Court is whether Claim 1 is invalid as indefinite because the "partially associate" term in limitation [b] fails to inform POSITA about the scope of the invention with reasonable certainty. *See Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 901, 134 S. Ct. 2120, 2124 (2014) ("The Patent Act requires that a patent specification "conclude with one or more claims ***particularly pointing out and distinctly claiming*** the subject matter which the applicant regards as [the] invention.") (emphasis in the original; *quoting* 35 U. S. C. §112, ¶2 (2006 ed.).)

"Partially" in the term "partially associate" is a term of degree.  *Rillito River Ltd. Liab. Co. v. Bamboo Indus. Ltd. Liab. Co*., No. 2:17-cv-00181-TLN-CKD, 2018 U.S. Dist. LEXIS 154933, at *26 (E.D. Cal. Sep. 10, 2018).  As such, the "partially associate" term "when read in light of the specification and the prosecution history, must provide

***objective boundaries*** for those of skill in the art.  *Interval Licensing LLC v. AOL, Inc*., 766 F.3d 1364, 1371 (Fed. Cir. 2014) (emphasis added; *quoting Nautilus*, 134 S. Ct. at 2130).  "The Supreme Court explained that a patent does not satisfy the definiteness requirement of § 112 merely because 'a court can ascribe some meaning to a patent's claims." *Id*.

Here, the intrinsic record fails to provide objective boundaries to the meaning of "partially associate" in limitation [d], "digital identification module comprising at least one primary component structured to at least partially associate said digital identification module with said at least one entity".

Indeed, there is zero description of the limitation and term at-issue in the specification.  The term "partially associate" appears but twice in the specification: (1) in the Abstract; and at (2) 6:23-25.   The abstract contains a mere parroting of the claim language and 6:23-25 states, "or other element structured to at least partially associate the electronic file 40 with the entity".  "Or other element" does not provide objective boundaries.  *See Standard Oil Co. v. Am. Cyanamid Co*., 585 F. Supp. 1481, 1490 (E.D. La. 1984) ("At the risk of repetition, the Court emphasizes, again, that the term 'partially soluble' is vague and indefinite with no established meaning perceptible to those skilled in the art at the relevant time."); *Holmberg v. Stealth Cam, LLC*, No. 11-248 (DWF/LIB), 2013 U.S. Dist. LEXIS 98094, at *37 (D. Minn. July 15, 2013) ("There is no objective basis for which to allow a person of ordinary skill in the art to determine

what degree of attachment would satisfy the requirement of being 'partially detachable.' Accordingly, the term is indefinite."); *Rillito River Ltd. Liab. Co. v. Bamboo Indus. Ltd. Liab. Co.*, No. 2:17-cv-00181-TLN-CKD, 2018 U.S. Dist. LEXIS 154933, at *30 (E.D. Cal. Sep. 10, 2018) ("The Court finds the term 'partially surround' is indefinite as used in the '853 patent.").

DVS offers no construction for the term at-issue.  JCCS, Dkt. No. 28, at 5.   And, here, it does not matter whether DVS or the Court might conceive of some world where the term makes sense. *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 906, 134 S. Ct. 2120, 2127 (2014). What matters is whether the patent itself teaches some objective boundaries for the term "partially associate".  *Id*., at 911-910.  But the '860 Patent fails to contain any teachings as to the objective boundaries of the "partially associate" term.

Finally, Professor Hughes offered unrebutted testimony, finding the term without meaning in the art or the patent.  Hughes Decl., ¶¶27-32.

The "partially associate" term of limitation [d] is invalid under well-established law.

### E.    Claim 1—and All Asserted Claims—Are Invalid as Failing to be Supported by the "Written Description" in the Specification

Lack of written description, 35 U.S.C. §112(1), is an issue that generally arises with respect to the subject matter of a claim.  If a patentee amends or attempts to amend

his claims, an issue of new matter will arise if the content of the amendment is not described in the patent application specification as initially filed.  Stated another way, an applicant cannot put stuff in the claims to overcome an Examiner's rejection that was not in the application when initially filed; you can't add new stuff as you go because the patent's priority date is its initial filing date.  *In re Downing*, 754 F. App'x 988, 994 (Fed. Cir. 2018); *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en banc*) ("The written description must clearly allow [POSITA] to recognize that the inventor invented what is claimed, such that the disclosure of the application relied upon reasonably conveys to [POSITA] that the inventor had possession of the claimed subject matter as of the filing date.")

As discussed above, to overcome an Examiner's rejection, the patentee added limitation [e] during prosecution.  If the ideas in limitation [e] were not in the patent when filed, the claims are invalid for failing to meet the "written description" requirement of 35 U.S.C. ¶112(1).  Thus, the issue before the Court is whether Claim 1 is invalid because the patentee was not in possession of the ideas in limitation [e] when the '860 Patent application was initially filed.

Under § 112, "[t]he specification shall contain a written description of the invention . . . ."  35 U.S.C. § 112 ¶ 1.  To satisfy the written description requirement, a patent specification must describe the claimed invention in sufficient detail so that it "reasonably conveys to those skilled in the art that the inventor had possession of the

claimed subject matter as of the filing date." *In re Downing*, 754 F. App'x, at 994 (*quoting Ariad*, 598 F.3d at 1351 (internal citations omitted).). "Because the adequacy of the written description is judged as of the filing date each claim limitation must be supported by the originally filed specification." *Id*.

Limitation [e], which was added to overcome the Examiner's rejections three years after the original application was filed, states, "said at least one digital identification module is ***cooperatively structured*** to be embedded within ***only*** a single electronic file". There is zero discussion of "cooperatively structured" in the specification and zero discussion of any technology that would limit the embedding of the digital identification module to "only a single electronic file" (e.g., one word document). The patentee was not "in possession" of these ideas when he filed his patent. As such, the claims are invalid; you can't grab new stuff as you go.

Both Parties take the position that limitation [e] does not need to be construed to determine whether the patentee was in possession of the ideas in limitation [e] when he filed his patent application. None-the-less, DVS' proposed construction is telling. DVS proposes the following construction for limitation [e], "having a ***clearly defined structure or organization*** to permit incorporation or placement within only a single electronic file at a time". JCCS, Dkt. No. 28, at 7 (emphasis added).  It's not clear how DVS can equate "cooperatively" and "clearly defined".  And none of DVS' proposed citations to the intrinsic record support its construction.  Indeed, as with most of DVS'

citations to the intrinsic record in the Joint Claim Construction Statement, Dkt. No. 28, DVS' citations seem not relevant to the term at issue.  For example, DVS cites "860/1:7-10" which states, "The present specification is generally directed to a digital verified identification system and method having at least one digital identification module structured to be embedded or otherwise disposed within *one or more* electronic files." The citation is irrelevant to the issue of whether the original specification disclosed "cooperatively structured" and exactly contra to being embedded in only a single file, stating, "disposed within one or more electronic files".

Again, neither Party believes limitation [e] needs to be construed in order to adjudicate this issue.  But should this Honorable Court disagree, Encyro proposes the following construction, "said at least one digital identification module is modified together with a single electronic file such that it can only be embedded within said single electronic file".  Encyro's proposed construction is based on the patentee's representation to the UPSTO:

> 5    As claimed, the "at least one digital identification module is cooperatively structured to
> 6    correspond to a pre-selected electronic file."   Properly construed, this requires that a
> 7    characteristic of the digital identification module be structured (i.e., modified/changed/adapted)
> 8    to a pre-selected electronic file.  Also, the digital identification file cannot correspond to any

'860 PxHx, Patentee's Appeal Brief, at 21, Lamkin Decl., Exh. D; see also id., Appeal Brief, at 17, Lamkin Decl., Exh D (discussing the term cooperatively structured

meaning the digital identification module and single file are "matched").

Conversely, Encyro's proposed construction is expressly supported by the intrinsic record.  The patentee's use of *i.e.* during prosecution indicates that the patentee is defining "cooperatively structured" as "modified/changed/adapted".  *See, e.g., Pelican Int'l Inc. v. Hobie Cat Co.*, No. 20-cv-2390-BAS-MSB, 2022 U.S. Dist. LEXIS 18400, at *41 (S.D. Cal. Feb. 1, 2022) (the specification's use of "*i.e.* signal[s] an intent to define the word to which it refers."); *Abbott Labs. v. Novopharm Ltd.,* 323 F.3d 1324, 1327-1330 (Fed. Cir. 2003) (finding patentee acted as own lexicographer when it "explicitly defined" claim term through use of "*i.e.*"); *OpenTV, Inc. v. Apple, Inc*., No. 14-cv-1622-HSG, 2015 U.S. Dist. LEXIS 73281, 2015 WL 3544845, at *11-12 (N.D. Cal. June 5, 2015) (holding use of "*i.e.*" in the specification shows that the applicant was acting as his own lexicographer).[5]  And the patentee made clear that the digital identification module and the single electronic document are "matched" when cooperatively structured.  '860 PxHx, Appeal Brief, Exh D, at 17-18.  As such, Encyro's proposed construction, "said at least one digital identification module is modified together with a single electronic file such that it can only be embedded within said single electronic file," most closely follows the teachings of the instrinsic record.

Regardless, the '860 Patent did not contain a written description of limitation [e]

---

[5] The citation to the prosecution history pertains to Claim 16, but its directly referencing the "cooperatively structured" term in Claim 1 and 16).

when filed (indeed still does not outside the claims). There is no discussion in the intrinsic record of "cooperatively structured" and no discussion of any technology that would limit the embedding of the digital identification module to "only a single electronic file" (e.g., one word document). The patentee was not "in possession" of these ideas when he filed his patent. As such, Claim 1 (and all claims containing limitation [e]) are invalid pursuant to Section 112 ¶1.

## III.    CONCLUSION

Defendant Encyro respectfully asks that its proposed terms be construed as detailed above.

*Rachael D. Lamkin*
_____
Rachael D. Lamkin

*Attorney for Defendant*

## __CERTIFICATE OF SERVICE__

I hereby certify that on this 9th day of December, 2022, a true and accurate copy of the above and foregoing:

### DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF

### LAMKIN DECL ISO

### SUPPORTING EXHIBITS

Was served upon counsel via the Court's ECF system.

*Rachael D. Lamkin*
_____
Rachael D. Lamkin