Shea N. Palavan (State Bar No. 339543)
shea@palavan.com
PALAVAN MOORE
**PALAVAN & MOORE, PLLC**
4590 MacArthur Boulevard, Suite 500
Newport Beach, California 92660
Telephone: (832) 800-4133
Facsimile: (855) PALAVAN (725-2826)

Attorneys for Plaintiff,
DIGITAL VERIFICATION SYSTEMS, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DIGITAL VERIFICATION SYSTEMS, LLC,<br><br>            *Plaintiff,*<br><br>V.<br><br>ENCYRO, INC.,<br><br>            *Defendant.* | Case No. 5:22-CV-00686-JWH-SP<br><br>**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>**JURY TRIAL DEMANDED**<br><br>Judge:           Hon. John W. Holcomb<br>Courtroom:    9D |

COMES NOW, Plaintiff, Digital Verification Systems, LLC (hereinafter, "Plaintiff"), and, including pursuant to the Court's Rules, Orders, and Procedures, by and through their respective undersigned counsel, hereby respectfully files, and serves upon Defendant, Encyro, Inc. (hereinafter, "Defendant"), this *Plaintiff's Opening Claim Construction Brief*, and hereby respectfully make the following disclosures:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................. II

TABLE OF AUTHORITIES ...........................................................................III

    A.    Cases...................................................................................................iii

    B.    Statutes ................................................................................................ v

    C.    Other Authorities ................................................................................ v

I.    INTRODUCTION ............................................................................... 1

    A.    Asserted '860 Patent........................................................................... 1

    B.    '860 Patent Litigation History ............................................................ 2

II.    LEGAL FRAMEWORK ....................................................................... 2

    A.    Claim Construction, Generally........................................................... 2

    B.    Evidence Considered .......................................................................... 4

    C.    Indefiniteness During Claim Construction.......................................... 6

    D.    Construction of Means-Plus-Function ("MPF") Terms...................... 6

III.    HIGH LEVEL INTRODUCTION TO THE GENERAL TECHNOLOGY AT ISSUE .............................................................................................. 7

    A.    Patented Technologies........................................................................ 7

    B.    Person of Ordinary Skill in the Art .................................................. 10

IV.    CONSTRUCTION OF THE CLAIM TERMS ................................... 10

    A.    Disputed Claim Terms...................................................................... 10

            1.    "module generating assembly structured to receive at least one verification data element corresponding to the at least one entity and create said at least one digital identification module" ................ 10

            2.    "at least one primary component structured to at least partially associate said digital identification module with said at least one entity"............................................................................................. 15

            3.    "cooperatively structured to be embedded within only a single electronic file"................................................................................ 16

    B.    Agreed-Upon Claim Terms ............................................................. 22

            1.    "digital verified identification system"............................................ 22

V.    CONCLUSION AND PRAYER FOR RELIEF.................................. 24

1
2

## TABLE OF AUTHORITIES

A. **Cases**

3

*Adidas AG v. Under Armour, Inc.*,
   No. 14-130-GMS, 2015 U.S. Dist. LEXIS 192937 (D. Del. Dec. 15, 2015) ............... 13

4

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
   299 F.3d 1336 (Fed. Cir. 2002) ...................................................................................... 23

5

*B. Braun Med., Inc. v. Abbott Labs.*,
   124 F.3d 1419 (Fed. Cir. 1997) ...................................................................................... 12

6

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
   388 F.3d 858 (Fed. Cir. 2004) .......................................................................................... 5

7

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*,
   224 F.3d 1308 (Fed. Cir. 2000) ........................................................................................ 3

8

*Comark Commc'ns, Inc. v. Harris Corp.*,
   156 F.3d 1182 (Fed. Cir. 1998) ........................................................................................ 5

9
10
11

*Constant v. Advanced Micro-Devices, Inc.*,
   848 F.2d 1560 (Fed. Cir. 1988) ........................................................................................ 5

12

*Diagnostics Corp. v. Elekta AB*,
   344 F.3d 1205 (Fed. Cir. 2003) ........................................................................................ 7

13
14

*Durasystems Barriers v. Van Packer Co.*,
   No. 1:19-cv-01388-SLD-JEH, 2021 U.S. Dist. LEXIS 167770 (C.D. Ill. Sep.
   3, 2021) ............................................................................................................................. 2

15
16

*Eli Lilly & Co. v. Hospira, Inc.*,
   933 F.3d 1320 (Fed. Cir. 2019) ................................................................................. 2, 21

17

*Entegris, Inc. v. Pall Corp.*,
   No. 06-10601-GAO, 2008 U.S. Dist. LEXIS 25352 (D. Mass. Mar. 31,
   2008) ............................................................................................................................... 23

18
19

*E-Pass Techs., Inc. v. 3Com Corp.*,
   473 F.3d 1213 (Fed. Cir. 2007) ........................................................................................ 3

20
21

*Ergo Licensing, LLC v. CareFusion 303, Inc.*,
   673 F.3d 1361 (Fed. Cir. 2012) ...................................................................................... 13

22

*Freyburger LLC v. Microsoft Corp.*,
   No. 09-cv-104-bbc, 2009 U.S. Dist. LEXIS 86344 (W.D. Wis. Sep. 21,
   2009) ........................................................................................................................... 3, 17

23
24

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
   607 F.3d 776 (Fed. Cir. 2010) .......................................................................................... 6

25
26

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
   527 F.3d 1379 (Fed. Cir. 2008) ........................................................................................ 3

27
28

[PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF]

*In re Translogic Tech., Inc.*,
   504 F.3d 1249 (Fed. Cir. 2007) .......................................................................... 4

*Key Pharms. v. Hercon Labs. Corp.*,
   161 F.3d 709 (Fed. Cir. 1998) ............................................................................ 6

*Kropa v. Robie*,
   187 F.2d 150, 38 C.C.P.A. 858, 1951 Dec. Comm'r Pat. 177 (CCPA 1951)............... 23

*Markman v. Westview Instruments*,
   517 U.S. 370 (1996)........................................................................... 1, 2, 21

*Markman v. Westview Instruments*,
   52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)................................. 2, 3, 21

*Merrill v. Yeomans*,
   94 U.S. 568 (1876) ........................................................................................... 4

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
   370 F.3d 1354, 71 22 USPQ2d 1081 (Fed. Cir. 2004) ...................................... 6

*Midwest Ath. & Sports All. LLC v. Xerox Corp.*,
   No. 6:19-CV-06036 EAW, 2020 U.S. Dist. LEXIS 242830 (W.D.N.Y. Dec.
   28, 2020) ........................................................................................................ 21

*MTD Prods. Inc. v. Iancu*,
   933 F.3d 1336 (Fed. Cir. 2019) ..................................................................... 6, 12

*Multiform Desiccants v. Medzam Ltd.*,
   133 F.3d 1473 (Fed. Cir. 1998) ........................................................................ 5

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898, 134 S. Ct. 2120, 189 L. Ed. 2d 37 (2014)........................ 6, 14, 16, 22, 23

*Noah Systems, Inc. v. Intuit Inc.*,
   675 F.3d 1302 (Fed. Cir. 2012) ....................................................................... 12

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) ................................................................... 3, 21

*Phillips v. AWH*,
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ................................................ 3, 4, 5, 6, 14

*Saffran v. Johnson & Johnson*,
   712 F.3d 549 (Fed. Cir. 2013) ....................................................................... 12

*T.M. Patents, L.P. v. Sun Microsystems*,
   2010 U.S. Dist. LEXIS 160589 (S.D.N.Y. Sep. 16, 2010)........................... 4, 5, 6, 14

*Teleflex, Inc. v. Ficosa North America Corp., et al.*,
   299 F.3d 1313 (Fed. Cir. 2002) ....................................................................... 21

*Thorner v. Sony Comp. Entm't Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) ........................................................................ 4

*Vanderlande Indus. Nederland BV v. I.T.C.*,
 366 F.3d 1311 (Fed. Cir. 2004) ...................................................................... 5

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
 200 F.3d 795 (Fed. Cir. 1999) ................................................................. 3, 21

*Wellman, Inc. v. Eastman Chem. Co.*,
 642 F.3d 1355 (Fed. Cir. 2011) ...................................................................... 3

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*,
 239 F.3d 1225 (Fed. Cir. 2001) ...................................................................... 7

*Williamson v. Citrix Online, LLC*,
 792 F.3d 1339 (Fed. Cir. 2015) (*en banc*) ................................................. 11

B. <u>**Statutes**</u>

35 U.S.C. § 101 ...................................................................................... 1, 23

35 U.S.C. § 103 ............................................................................................ 1

35 U.S.C. § 112 ......................................................................... 1, 6, 7, 10

C. <u>**Other Authorities**</u>

Cambridge Dictionary Online definition for "cooperative",
 located at https://dictionary.cambridge.org/us/dictionary/english/cooperative............ 18

Cambridge Dictionary Online definition for "embedded",
 located at https://dictionary.cambridge.org/us/dictionary/english/embedded.............. 18

Cambridge Dictionary Online definition for "structured",
 located at https://dictionary.cambridge.org/us/dictionary/english/structured .............. 18

Dictionary.com definition for "cooperative",
 located at https://www.dictionary.com/browse/cooperatively ...................................... 18

Dictionary.com definition for "embedded",
 located at https://www.dictionary.com/browse/embedded........................................... 18

Dictionary.com definition for "structured",
 located at https://www.dictionary.com/browse/structured ........................................... 18

Merriam-Webster Dictionary Online definition for "cooperative",
 located at https://www.merriam-webster.com/dictionary/cooperative........................ 18

Merriam-Webster Dictionary Online definition for "embedded",
 located at https://www.merriam-webster.com/dictionary/embedded........................... 18

# I. INTRODUCTION

Plaintiff hereby respectfully files its Opening *Markman* Brief. The disputed claim terms at issue here weigh heavily in favor of Plaintiff, as Plaintiff has faithfully applied the framework set forth by the Federal Circuit, and the Court, for claim construction, including specific citations to the specification, prosecution history, figures, and claim language. By contrast, Defendant advocates for overly narrow, contorted constructions with vague and expansive language to try and exclude obviously covered features of Defendant's accused products that the claims, as properly construed, otherwise properly reach. The Federal Circuit has repeatedly criticized this type of tactical approach to claim construction, and it should be rejected here as well. Plaintiff's proposed constructions should be adopted.

## A. Asserted '860 Patent

The Patent-in-Suit is U.S. Patent No. 9,054,860, entitled "Digital Verified Identification System and Method" (the "'860 Patent" or the "Patent-in-Suit"; attached hereto as Exhibit A), which was filed on January 2, 2008, published as U.S. Patent Application No. 12/006,457, and issued on June 9, 2015. Ex. C at ¶ 5. During the '860 Patent prosecution, Applicant overcame rejections by Examiner under 35 U.S.C. §§ 101, 103, and 112, including following an appeal of the Examiner's June 15, 2011 Final Rejection and the U.S. Patent and Trademark Office's ("PTO") November 28, 2014 Decision allowing the then-existing claims. *Id*. Moreover, the Asserted Claims were challenged in an IPR, but the IPR was not instituted. *Id*.

At a high level, the Patent-in-Suit generally relates to various novel systems and methods for digitally authenticating the identity of a signatory to an electronic file. *Id*. at ¶ 6; *see also* Ex. A. Leigh M. Rothschild is the sole listed inventor on the '860 Patent. Ex. C at ¶ 6. Plaintiff is presently the exclusive assignee of the Patent-in-Suit. *Id*. In this proceeding, Plaintiff contends that Defendant infringes multiple claims of the Patent-in-Suit. *Id*. at ¶ 7. The claims at issue in this proceeding are claims 1-9, 12, 16-17, and 22 of the '860 Patent (individually and collectively, the "Asserted Claims"). *Id*. The '860 Patent, and claimed technologies, are discussed further hereinbelow. *Id*.

B. **'860 Patent Litigation History**

On April 21, 2022, Plaintiff filed suit in this District asserting the '860 Patent in the above-styled and numbered cause. *Id*. at ¶ 8; *see* D.I. 1. Prior to the instant suit, Plaintiff has asserted the '860 Patent in numerous cases, including as far back as May 12, 2016. Ex. C at ¶ 8. Many of these cases were resolved early in the litigation proceedings, with some resulting in settlement between the parties. *Id*. Notably, in none of these prior cases has there been any prior construction of any of the terms of the '860 Patent. *Id*.

In this case, Defendant's Answer, Affirmative Defense, and Counterclaims was filed on June 17, 2022. *Id*. at ¶ 9; *see* D.I. 14. Following the Court's Scheduling Conference on August 5, 2022 (*see* D.I. 18), the Court issued a Scheduling Order for all deadlines through claim construction via a Minute Order that same day (*see* D.I. 21).[1] Ex. C at ¶ 9. Specifically, under the Court's Schedule (*see id*.), no dates have been set for either fact or expert discovery, and the date of the claim construction hearing is set for January 19, 2023 at 10:00 a.m. PT (where the Court shall also take up Defendant's bond motion – *see* D.I. 22 & 29). Ex. C at ¶ 9. Further, pursuant to the Court's Schedule (*see* D.I. 21), Plaintiff hereby respectfully files this Opening Claim Construction Brief. Ex. C at ¶ 9.

## II. LEGAL FRAMEWORK

A. **Claim Construction, Generally**

This Court has substantial experience with patent infringement cases and does not need full briefing on the basics of claim construction, wherein the meaning and scope of disputed patent claim terms is ultimately a question of law for the Court to resolve. *Markman v. Westview Instruments*, 52 F.3d 967, 978 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996); *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1328 (Fed. Cir. 2019). Further, "[t]he purpose of claim

---

[1] Notably, while the Court generally adopted the parties' proposed schedule in their Joint Proposed Scheduling Order, the Court has not officially cited the Local Patent Rules for the U.S. District Court for the Northern District of California. *See, e.g.*, *Durasystems Barriers v. Van Packer Co.*, No. 1:19-cv-01388-SLD-JEH, 2021 U.S. Dist. LEXIS 167770, *2 n.1 (C.D. Ill. Sep. 3, 2021). Indeed, the Court has not issued any local rules specific to patent cases, and it should be acknowledged these rules of a sister court may provide helpful guideposts in this case, but are not controlling. *Id*. Thus, "[a]ll deadlines in this case, whether they were set in the discovery plan or have yet to be set, [remain] subject to the Court's discretion." *Id*.

construction is to determine the meaning and scope of the patent claims asserted to be infringed." *O2 Micro*, 521 F.3d at 1360; *see also Markman*, 52 F.3d at 978. In determining that meaning, "different claim terms are presumed to have different meanings." *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008); *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000). However, a court need only construe claim language that is actually in dispute, and only to the extent necessary to resolve any such disputes. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999); *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011). Even where there is such a dispute about claim term meaning, it is not enough to say the term takes its "plain and ordinary meaning" – the Court must decide, as a matter of law, what the term means. *O2 Micro*, 521 F.3d at 1361-1362. Moreover, "courts have no obligation to provide constructions simply because the parties request them; the parties must demonstrate that the construction is both necessary and correct." *Freyburger LLC v. Microsoft Corp.*, No. 09-cv-104-bbc, 2009 U.S. Dist. LEXIS 86344, *2-*3 (W.D. Wis. Sep. 21, 2009) (*citing O2 Micro*, 521 F.3d at 1361-1362; *quoting E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1219 (Fed. Cir. 2007) ("[A]ny articulated definition of a claim term ultimately must relate to the infringement questions that it is intended to answer.").

"[T]here is no magic formula or catechism for conducting claim construction,…[and] the sequence of steps used by the judge in consulting various sources is not important[,]…the court [is required] to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." *Phillips*, 415 F.3d at 1324. However, the Federal Circuit has nevertheless articulated general principles that guide courts, including the cardinal principles espoused in the Federal Circuit's *en banc* decision in *Philips*, which provides the basic legal framework, where, as a general rule, the words and terms of a claim are construed by giving them their "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art – *i.e.*, as of the effective filing date of the patent application…" (a "POSITA") in accordance with their understanding of the claimed invention, at the time of the invention, in view of the intrinsic evidence and any

relevant extrinsic evidence that the term would have to a [POSITA]." *See id.* at 1312-1313 & 1324 (citations omitted); *see also T.M. Patents, L.P. v. Sun Microsystems*, 2010 U.S. Dist. LEXIS 160589, *4 (S.D.N.Y. Sep. 16, 2010) (*citing Phillips*, 415 F.3d at 1313); *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007). There are, however, two exceptions to this general rule: "l) when a patentee sets out a definition and acts as his own lexicographer," and "2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comp. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Additionally, a POSITA "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent" and all of the claim language. *Id.* Further, in some cases, the ordinary meaning of claim language as understood by a POSITA may be readily apparent even to lay judges, and claim construction in such cases involves little more than application of the widely accepted meaning of commonly understood words. *Phillips*, 415 F. 3d at 1314.

B. **Evidence Considered**

"According to the applicable statutes and policies that inform patent law, ***intrinsic evidence***, which includes the language of the disputed claims themselves, other claims, the specification, and the prosecution history, must be given the most weight." *T.M. Patents*, 2010 U.S. Dist. LEXIS 160589 at *4 (*citing Phillips*, 415 F.3d at 1313) (emphasis added). "Indeed, the claims of the patent are '"of primary importance[] in the effort to ascertain precisely what it is that is patented."'" *Id.* (*quoting Phillips*, 415 F.3d at 1313 (*quoting Merrill v. Yeomans*, 94 U.S. 568, 540 (1876))). "In considering the language of the claims, the words of the claims should be given their ordinary and customary meaning; in other words, they are to be given 'the meaning that the term would have to a'" POSITA. *Id.* (*quoting Phillips*, 415 F.3d at 1313).

"Additionally, because 'the [POSITA] is deemed to read the claim…in the context of the entire patent…' the court should do likewise by considering the language of other claims" – wherein "[t]he way a term is used in one claim can provide enlightenment as to its meaning in another claim and differences among claims can indicate differences in their meaning and scope"; the specification – which courts consider '"[t]he best source for understanding a

technical term…"' – provides, per statutory requirement, "a written description of the invention and can serve as a sort of dictionary in which the inventor either explicitly or impliedly defines the terms he or she has used" and may "may also include 'an intentional disclaimer, or disavowal, or claim scope…'"; and the prosecution history – "which 'consists of the complete record of the proceedings before the [Patent Trademark Office (the "PTO")] and includes the prior art cited during the examination of the patent[,]' provides evidence of 'how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it otherwise would be.'" *Id* (*quoting Phillips*, 415 F.3d at 1313-1316 (*quoting Multiform Desiccants v. Medzam Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998))). Notably, "[t]he inventor's use of the specification as a dictionary or a source of disclaimers is dispositive of the construction of the claim." *Id*. (*citing Phillips*, 415 F.3d at 1316). But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (*quoting Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323.

"In addition to intrinsic evidence, the court may further consider **extrinsic evidence** consisting of expert testimony" – which "can assist the court by providing background on the technology at issue and an explanation of how an invention works as well as the technical aspects of the patent"; inventor testimony – which may include the inventor's own interpretation as an inventor and POSITA; and learned treatises and dictionaries – which, although potentially "useful in determining the ordinary meaning of the words of a claim, they were not written or edited to be used for interpreting the meaning of patents and thus '"cannot overcome art-specific evidence of the meaning' of a claim term,"'" but such evidence is "'less significant than the intrinsic record'" in determining the meaning of claim language. *Id*. (*quoting Phillips*, 415 F.3d at 1317-1322 (*quoting C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)); *Vanderlande Indus. Nederland BV v. I.T.C.*, 366 F.3d 1311, 1321 (Fed. Cir. 2004)) (emphasis added). Indeed, including because extrinsic evidence "is

[often] prepared for the purposes of litigation and can[, even inherently,] suffer from bias, the court should 'discount any expert testimony "that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history,"''' and "''conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court''" and should likewise be discounted. *Id.* (*quoting Phillips*, 415 F.3d at 1317-1322 (*quoting Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998))).

## C. <u>Indefiniteness During Claim Construction</u>

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. The ultimate issue is whether someone working in the relevant technical field could understand the bounds of a claim. *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010). Specifically, "[a] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 134 S. Ct. 2120, 2124, 189 L. Ed. 2d 37 (2014). This may be determined by interpretation of the claims either in view of the specification and/or from the viewpoint of the understanding of a POSITA. *See Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1366, 71 USPQ2d 1081, 1089 (Fed. Cir. 2004). However, "[a] claim is not "indefinite" simply because it is hard to understand when viewed without benefit of the specification." *S3 Inc. v. nVIDIA Corp.*, 59 USPQ2d 1745 (Fed. Cir. 2001).

## D. <u>Construction of Means-Plus-Function ("MPF") Terms</u>

"Interpretation of an asserted means-plus-function limitation involves two steps[: 1)f f]irst, [the court must] determine if the claim limitation is drafted in [MPF] format[,]…consider[ing] whether the claim limitation connotes 'sufficiently definite structure' to a [POSITA; and 2) if the court] conclude[s] that the limitation is in [MPF] format, the second step requires [the court] review the specification to identify the structure that performs the claimed function(s) and thus 'corresponds to' the claimed means." *MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, 1344 (Fed. Cir. 2019). As to any alleged means-plus-function ("MPF") claims

at issue in this case (*see* 35 U.S.C. § 112, ¶ f[2]), the MPF elements cover the structure disclosed in the specification that performs and is clearly linked to the claimed function. *See, e.g.*, *Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205 (Fed. Cir. 2003). If a structure is not necessary for performing the claimed function, then it should not be included. *See, e.g.*, *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001).

### III. HIGH LEVEL INTRODUCTION TO THE GENERAL TECHNOLOGY AT ISSUE

A. **Patented Technologies**

The '860 Patent relates, *inter alia*, to "a digital verified identification system structured to facilitate authenticating and/or verifying the identity of an electronic signatory to a file and/or otherwise structured to associate an electronic file with one or more entities" (Ex. A at 1:37-41), including, without limitation, "a digital verified identification system wherein the one or more digital identification modules include at least one primary component and at least one metadata component having, for example, various identifying information and/or reference codes and/or numbers" (*id*. at 1:50-55). Ex. C at ¶ 10. The '860 Patent addresses, *inter alia*, problems in the field of authentication of digital and/or electronic signatures and/or identifiers for verifying the identity of the signatory: as the development of electronic signatures has brought along additional difficulties due to the potential ease of fabrication of these electronic signatures. *Id*. (*citing* Ex. A at 1:12-61). While other systems, methods, and designs existed at the time, few, if any, addressed the specific problems noted or included additional issues the claimed invention does not include. *Id*. Indeed, there is no dispute that encryption and digital signature technology has been around for many years. *Id*. Rather, the Patent-in-Suit at issue provides specific improvements over prior systems and methods, including improved digital signature verification and authentication benefits using, *inter alia*, one or more digital identification modules generated by a module generating assembly, wherein the one or more digital identification modules include at least one primary component, such as an image of a digital signature, and at least one metadata component, such as various identifying information and/or reference codes and/or numbers, which permit a user requesting

---

[2] Pre-AIA, 35 U.S.C. § 112, ¶ 6 was codified as 35 U.S.C. § 112, ¶ f.

[PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF]

a signature on an electronic document to verify and/or authenticate the identity of the signatory as being the person from which the user requested a signature, including via these primary and/or metadata components. *See id.*; Ex. A at Claims 1-22.

Figures 1-7, the claims, themselves, and the accompanying specification disclose a digital verified identification system, which comprises at least one digital identification module 20 and a module generating assembly 50. Ex. C at ¶ 11. More specifically, the at least one digital identification module 20 is structured to be associated with at least one entity 30 (*id.* at 3:25-30); the module generating assembly 50 is structured to both, *inter alia*, create the at least one digital identification module 20 (*id.* at 3:49-53) and receive at least one verification data element 52 corresponding to the at least one entity 30 (*id.* at 4:1-5); the at least one digital identification module 20 is disposable within at least one electronic file 40 (*id.* at 3:30-35); the at least one digital identification module 20 comprises at least one primary component 22 structured to at least partially associate the digital identification module 20 with the at least one entity 30 (*id.* at 6:11-27); and the at least one digital identification module 20 is cooperatively structured to be embedded within only a single electronic file 40 (*id.* at 4:16-39). Ex. C at ¶ 11.

As set forth in the Abstract of the '860 Patent, the claimed invention relates, *inter alia*, to

> [a] digital verified identification system and method are presented for verifying and/or authenticating the identification of an entity associated with an electronic file, such as, for example the digital signatory thereof. In particular, the system and method include a module generating assembly structured to receive at least one verification data element, and at least one digital identification module structured to be associated with at least one entity. The digital identification module is capable of being disposed or embedded within at least one electronic file. Further, the digital identification module includes at least one primary component structured to at least partially associate the digital identification module with the entity, and one or more metadata components.

*Id.* at ¶ 12 (*citing* Ex. A at Abstract). More specifically, Figures 1, 1A, 4, and 5 show the general architectural set ups of various different embodiments of the claimed digital verified identification system. *Id.* at ¶ 13 (*citing* Ex. A at Figs. 1-1A, 4, & 5; 2:53-3:18). Further, Figures 2-2B disclose various claimed embodiments related to the claimed module generating

[PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF]

Case No.: 5:22-CV-00686-JWH-SP

assembly, and Figures 3-3A and 6 disclose various claimed embodiments related to the claimed digital identification module. *Id*. at ¶ 14 (*citing* Ex. A at Figs. 2-2B, 3-3A, & 6; 2:53-3:18). Lastly, Figure 7 disclose a claimed embodiment setting forth one of the claimed methods of digital verification of a signatory. *Id*. at ¶ 15 (*citing* Ex. A at Fig. 7; 2:53-3:18).

Independent Claim 1, the independent claim upon which the remaining Asserted Claims depend, is exemplary and states, in full, as follows (wherein the bolded portions are the disputed terms submitted by the parties for construction):

Claim 1. **A digital verified identification system**, comprising
  at least one digital identification module structured to be associated with at least one entity,
  **a module generating assembly structured to receive at least one verification data element corresponding to the at least one entity and create said at least one digital identification module**,
  said at least one digital identification module being disposable within at least one electronic file, and
  said at least one digital identification module comprising **at least one primary component structured to at least partially associate said digital identification module with said at least one entity**, wherein
  said at least one digital identification module is **cooperatively structured to be embedded within only a single electronic file**.

*Id*. at ¶ 16 (*citing* Ex. A at Claim 1, 9:6-22).

At a high level, and pertinent to the Asserted Claims in this proceeding, the '860 Patent is generally directed to a novel system and method of digital verified identification comprising at least one digital identification module structured to be associated with at least one entity, a module generating assembly structured to receive at least one verification data element corresponding to the at least one entity and create said at least one digital identification module, said at least one digital identification module being disposable within at least one electronic file, and said at least one digital identification module comprising at least one primary component structured to at least partially associate said digital identification module with said at least one entity, wherein said at least one digital identification module is cooperatively structured to be embedded within only a single electronic file. Ex. A at Claim 1, 9:6-22; Ex. C at ¶ 17.

Among other things, a key point of novelty of the claimed inventions of the '860 Patent's relate to, *inter alia*, the claimed inventions' at least one digital identification module

being cooperatively structured to be embedded within only a single electronic file. Ex. C at ¶ 18 (*citing* Ex. B at 151-175; Ex. A at 4:16-27). According to the patent applicant, the claimed inventions provide a more limited use of a digital signature wherein the created signature is generated such that it can be used with only a single electronic file in which it is embedded. *Id.* (*citing* Ex. B at 168 & 261-262). In this way, the person requesting a signature on the file may better trust that the digital signature placed by the signatory into the file was actually placed by the person requested. *Id.*

## B. **Person of Ordinary Skill in the Art**

Plaintiff contends that, at least at the time of the filing and prosecution of the '860 Patent, a POSITA of the subject matter claimed by the Patent-in-Suit is a person having a bachelor's degree in computer science or electrical engineering, or by equivalent education or training, and approximately 0-3 years of experience. *Id.* at ¶¶ 3-4.

## IV. CONSTRUCTION OF THE CLAIM TERMS

### A. **Disputed Claim Terms**

| Claim Limitation 1(b) | |
|---|---|
| **1. "module generating assembly structured to receive at least one verification data element corresponding to the at least one entity and create said at least one digital identification module"** | |
| **Plaintiff's Proposed Construction:** | **Defendant's Proposed Construction:** |
| Not governed by 35 U.S.C. § 112(f), no construction necessary. Alternatively, plain and ordinary meaning. Alternatively, to the extent this limitation is determined to require construction governed under 35 U.S.C. § 112(f) as a means-plus-function term: the corresponding structure is module generating assembly 50, including as outlined in Fig. 7 and its corresponding description, namely '860/7:48-8:62. | 112(6). Indefinite. No corresponding structure disclosed. Comprised of hardware |

The crux of the parties' disputes over this term is whether it is a MPF claim and whether the '860 Patent specification provides sufficient disclosure to satisfy 35 U.S.C. § 112, ¶ f. Plaintiff contends that this term is not governed by § 112 and can be understood by a POSITA without the need for construing the claim term. *See* Ex. C at ¶ 20. Alternatively, should the

Court determine this term is so governed, Plaintiff contends that the corresponding structure is module generating assembly 50, including as outlined in Fig. 7 and its corresponding description, namely '860/7:48-8:62. *See id*. Conversely, Defendant contends this term is a MPF term comprising hardware but lacking sufficient disclosures in the specification. *See id*.

This term is presumptively not a MPF term, including because the term does not use the phrase "means for." *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (*en banc*). Rather, Defendant is likely to argue that this presumption is overcome due to either or all of (a) there being insufficient disclosure of structure for this term; (b) there being a function recited without sufficient structure for performing the function; or (c) the use of the word "assembly," which it will likely argue is a nonce word rebutting the presumption. *See id*. at 1349. However, Defendant would be incorrect on each issue.

Including as stated in Defendant's bond motion (*see* D.I. 22), Defendant's argument boils down to the contention that "[t]he actual structure of the claimed 'module generating assembly' is unknown." *Id*. at 11. This is simply incorrect. Contrary to Defendant's contention that "the '860 Patent does not tell us what a 'module generating assembly['] actually is" (see D.I. 22 at 11), as set forth in Plaintiff's proposed claim construction for this term, this term is not a MPF term and, even if it was construed to be such, there is sufficient structure provided in the specification. As an initial matter, regarding Defendant's contention this term comprises hardware, Plaintiff neither contests nor agrees with such a statement, including because the specification is clear in referring to either and/or both hardware and/or software for this term, including that the module generating assembly may be, *inter alia*, a computer application or a web server running on a device. Ex. C at ¶ 21 (*quoting* Ex. A at 5:1-26 ("module generating assembly 50…is a separate and independent program or service"); 5:53-67 ("module generating assembly 50…may include one or more devices…"); & 8:48-54 ("may communicate…to a third party, for example, the module generating assembly, a web site, or other device, object, or service")). Additionally, the '860 Patent notes that a signatory-user may log into, or communicate or upload information to, the module generating assembly, which necessarily, at least to a POSITA, would require the use of some hardware for

facilitating the communication (*e.g.*, networking, telephone, or similar communication processes). *See id*. Further, as noted above, the PTO has already determined a hardware requirement and sufficient disclosure same, including, at least in part, because of the references to devices. *Id*. (*citing* Ex. B at 355).

Similarly, regarding the proposition that there is function recited without sufficient structure provided, this fails for many of the same reasons noted above. For example, even assuming, *arguendo*, the claim language recites a function, the specification is clear, at least to a POSITA, that this function is performed by some hardware, such as a web server, file server, or other computing device. *Id*. at ¶ 22 (*citing* Ex. A at 5:5-43). Moreover, the module generating assembly is disclosed as being able to receive information, such as verification data elements, including via the use of network or other communication hardware, further indicating the structural nature of this term. *See id*. Indeed, the specification "clearly links or associates [these] structure[s] to the function [allegedly] recited in the claim." *See Saffran v. Johnson & Johnson*, 712 F.3d 549, 562 (Fed. Cir. 2013) (*quoting B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997)); *see also Noah Systems, Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012). Here, at worst, the claim language at issue merely concerns the configuration of the claimed module generating assembly and the claimed configuration is indeed structural. *MTD*, 933 F.3d at 1340-1342.

Notably, the majority of Defendant's argument will likely rely on its characterization of the statements in the PTAB's denial of rehearing in IPR2018-00745 regarding the alleged "lack" of structure for this element is misplaced. *See, e.g.*, D.I. 22 at 12-16. However, what the PTAB stated was only that, in determining whether to institute the review, they construed this term, ***for this limited determination***, as being MPF and noted "that because Petitioner did not identify corresponding structure in the specification, Petitioner did not show a reasonable likelihood it would prevail in establishing unpatentability of any challenged claim." Ex. C at ¶ 23 (*quoting* Ex. B at 2-3). Notably, even Petitioner (who sought to invalidate the claims) argued this is not a means-plus-function claim. *Id*. Moreover, if Defendant's interpretation of the PTAB's ruling was correct, why would the PTAB have determined the term (as Defendant

suggests) invalid for failure to provide a structure, yet neither institute a petition to declare the claim invalid nor declare the claim invalid for this reason. Additionally, and importantly, "[t]he [C]ourt is not bound by a preliminary claim construction used by the PTAB for the limited purpose of denying an IPR request." *Adidas AG v. Under Armour, Inc.*, No. 14-130-GMS, 2015 U.S. Dist. LEXIS 192937, *3 n.1 (D. Del. Dec. 15, 2015). Here, including as noted above, not only is the PTAB incorrect, but Defendant's reliance thereon is unpersuasive – a POSITA would understand that there is sufficient disclosure for this term. Ex. C at ¶ 23.

Even assuming, *arguendo*, that this term is a MPF term lacking sufficient disclosure of structure (which it is not), the specification provides a corresponding structure or algorithm, including at Figure 7 and 7:48-8:62, that the structure or algorithm for performing any alleged claimed function is module generating assembly 50. Ex. C at ¶ 24. Here, the alleged function is "receiv[ing] at least one verification data element corresponding to the at least one entity and creat[ing] said at least one digital identification module." *Id*. Including as set forth in Figure 7, this function may be performed via, *inter alia*, the algorithm disclosed, with the flow chart shown in Figure 7 and described in the specification describing the steps taken for the module generating assembly to receive information (*see, e.g.*, Ex. A at Fig. 7; 7:48-67) and create a digital identification module (*see, e.g.*, *id*. at Fig. 7; 8:1-20). Ex. C at ¶ 24. More specifically, the module generating assembly is disclosed as being able to "create the digital identification module(s), for example, by combining at least one primary component with at least one metadata component." *Id*. (*quoting* Ex. A at 8:8-13). Such a specialized computer with specifically programmed applications, is clearly disclosed in the '860 Patent. *See Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012). Again, a POSITA would understand that there is sufficient disclosure for this term. Ex. C at ¶ 24.

Further, Defendant will likely point to the deposition testimony of "named inventor Rothschild [which Defendant asserts] could not identify a module generating assembly that performed the claimed operations" – such assertions are unfounded and are a misrepresentation of the actual testimony. *See, e.g.*, Ex. M. As an initial matter, the inventor's *present* testimony, for a patent filed in 2008, is only slightly more informative than the paid-

for, biased opinions of Defendant's expert, Dr. Hughes. However, in view of the '860 Patent's actual disclosures, the testimony of both Mr. Rothschild and Dr. Hughes should be heavily discounted, especially where contradictory to the plain language of the specification. *See T.M. Patents*, 2010 U.S. Dist. LEXIS 160589 at *4 (*citing Phillips*, 415 F.3d at 1313).

Regardless, contrary to Defendant's assertions, what Mr. Rothschild actually testified was that, while he was involved in the prosecution of the '860 Patent, the prosecution "was many, many years ago, I believe 2008" (*see* Exhibit M at 18:13-25) and that "draft[s were] done by patent prosecution counsel," not himself (*see id*.), and that, because of this, he would "explain to the jury that [this term] is what it says in the specification as published in the ['860 Patent]" (*see id*. at 19:8-20:14). In other words, Mr. Rothschild's testimony was that, after the lengthy period since the '860 Patent was prosecuted, he would need more time than given by Defendant's counsel during the deposition to review the specification if Defendant wished him to provide his understanding of disclosures in the specification for this term. In view of this, Mr. Rothschild put forth his best efforts under the limited time given him to review the specification during a break in the deposition to find all of the instances of this term in the specification. *See, e.g.*, *id*. at 28:22-32:18. Specifically, Mr. Rothschild testified the same that Plaintiff contends now for this term, namely that "a module generating assembly is what it says in the specification of the ['860 Patent]." *See, e.g.*, *id*. at 19:16-18. Thus, Mr. Rothschild was not "unable" to locate disclosures for this term, but, rather, specifically recited them to Defendant during the limited deposition timeframe. Thus, a POSITA would have no difficulty understanding the scope and meaning of this term, particularly when reasonably interpreted in light of the written description of the specification. *See Nautilus*, 572 U.S. at 901 & 908-909; *Novartis*, 38 F.4th 1013, 1016-1018.

Adopting Defendant's proposed construction here would ignore the plain language of the claim and specification, including as understood by a POSITA, and a POSITA would not agree with Defendant's suggestion to do so. *See* Ex. C at ¶¶ 20-25. Thus, the Court should reject Defendant's proposed construction, and adopt Plaintiff's proposed construction, leaving this term to be understood by a POSITA under its plain and ordinary meaning, or, alternatively,

to the extent this term is construed as a MPF term, construe this term such that "the corresponding structure is module generating assembly 50, including as outlined in Fig. 7 and its corresponding description, namely '860/7:48-8:62."

| **Claim Limitation 1(d)** | |
|---|---|
| **2. "at least one primary component structured to at least partially associate said digital identification module with said at least one entity"** | |
| **Plaintiff's Proposed Construction:** | **Defendant's Proposed Construction:** |
| Plain and ordinary meaning, no construction necessary. | Indefinite. |

Defendant's suggestion that this term needs construction is almost as erroneous as its proposed construction therefor. Simply put, a POSITA would have no issue understanding this term based on its plain and ordinary meaning. Ex. C at ¶ 27. Moreover, despite Defendant's assertion this term is indefinite, there is ample disclosure in the '860 Patent's specification to permit a POSITA to understand the inventor possessed the claimed inventions. *Id.*

As an initial matter, the specification clearly sets forth what a primary component comprises, which may include an image or graphic representation of a signature. *Id.* (*quoting* Ex. A at 1:55-57 ("In particular, the primary component may include the signature or other identifying indicia of the respective signatory."); 2:25-37 ("The primary component may include, for example, a digital representation of a signature and/or one or more reference codes, numbers, or characters, the significance of which will be apparent from the discussion below. The primary component is generally visible or perceptible to a reader, recipient, or other user of the electronic document."); *see also id.* at 6:11-27 ("the primary component 22 may comprise a graphical representation of the digital signature, and as such, may include, for example, a JPEG, BMP, PNG, or GIF file")). Thus, there can be no dispute as to what the primary component is, or how it is related to the digital identification module – the primary component is part of the digital identification module. Ex. C at ¶ 27.

It appears that Defendant's main issue with this term is solely how the primary component is "structured to at least partially associate" the digital identification module with the signing entity. However, any alleged lack of disclosure regarding this is entirely

unfounded. *See* Ex. C at ¶ 28. To the contrary, the '860 Patent makes abundantly clear, and a POSITA would agree, that the primary component is structured in a manner, such as being in the form of an image or graphical representation of a signature, which is both part of the digital identification module and indicates that the signatory entity provided such image or graphic. *Id*. Thus, a POSITA would have no difficulty understanding the scope and meaning of this term, particularly when reasonably interpreted in light of the specification's written description. *Id*.; *see Nautilus*, 572 U.S. at 901 & 908-909; *Novartis*, 38 F.4th 1013, 1016-1018.

Adopting Defendant's proposed construction here would ignore the plain language of the claim and specification, including as understood by a POSITA, and a POSITA would not agree with Defendant's suggestion to do so. *See* Ex. C at ¶¶ 26-28. Thus, the Court should reject Defendant's proposed construction, and adopt Plaintiff's proposed construction, leaving this term to be understood by a POSITA under its plain and ordinary meaning.

| Claim Limitation 1(e) | |
|---|---|
| **3. "cooperatively structured to be embedded within only a single electronic file"** | |
| **Plaintiff's Proposed Construction:** | **Defendant's Proposed Construction:** |
| Plain and ordinary meaning, no construction necessary.<br><br>Alternatively, to the extent this limitation is determined to require construction: "having a clearly defined structure or organization to permit incorporation or placement within only a single electronic file at a time" | "said at least one digital identification module is modified together with a single electronic file such that it can only be embedded within said single electronic file".<br><br>Invalid for failure to provide an adequate written description pursuant to 35 U.S.C. § 112. |

As with the other disputed claim terms, Plaintiff does not contend that this term needs any further construction beyond the plain and ordinary meaning to a POSITA. At a minimum, the specification and claim language, from the perspective of a POSITA, provide more than ample disclosure as to what this claim term means. Ex. C at ¶ 29-30. Alternatively, to the extent the Court finds this term needs further construction, the Court should adopt Plaintiff's alternative construction for this term, wherein, under the ordinary and customary meaning as understood by a POSITA, this term, as it is used in the '860 Patent should be construed as: "having a clearly defined structure or organization to permit incorporation or placement within

only a single electronic file at a time." *Id*. Such a proposed construction is based on and consistent with, *inter alia*, a POSITA's understanding of the term in view of the '860 Patent's specification and prosecution history, and is further supported by the provided dictionary definitions for the words of this claim term. *Id*.

On the other hand, Defendant's proposed construction raises red flags immediately, including because Defendant's proposed construction is such a dramatic departure from the claim language and Defendant's proposed construction require rearranging words, inserting one phrase, and omitting others. *See, e.g., Freyburger*, 2009 U.S. Dist. LEXIS 86344 at *20 (finding dramatic departure and overly complex proposed construction unpersuasive). Defendant proposes the construction of "said at least one digital identification module is modified together with a single electronic file such that it can only be embedded within said single electronic file," with the alternative contention that this claim term is indefinite. Neither of these proposed constructions are correct in view of the record in this case.

As an initial matter, none of the words in this disputed term would be understood by a POSITA as having or requiring any construction beyond their plain and ordinary meanings, including in view of the '860 Patent's specification. Ex. C at ¶ 30. This term appears in claims 1, 22, 26, and 39, and is used consistently therein and intended to have the same meaning in each claim. *Id*. For example, Figures 3-3A and 6 (shown above) disclose various claimed embodiments showing a created digital identification module 20 having a specific structure permitting it to be embedded within a single electronic document 40. *Id*. In other words, digital identification module 20 is created in a manner for embedding it in a specific electronic document 40. *Id*. Thus, this term includes common terminology used in the field which have no meaning beyond their plain and ordinary meaning and requires no construction. *Id*.

To the extent any construction is found necessary for this term, the basic definitions for the words of the term provide more than sufficient basis for Plaintiff's proposed construction. At most, only the sub-terms "cooperative," "structured," and "embedded" in this claim term require any construction, with the remaining phrase "within a single electronic file" holding

its plain and ordinary meaning to a POSITA.[3] *Id*. at ¶ 32. For example, the word "cooperative" is generally defined as referring to two or more items working together or being able to work together.[4] The word "structured" is generally defined as referring to an item that has a clear structure or organization.[5] The word "embedded" is generally defined as referring to an item that has become incorporated into, or linked with, another item for displaying or accessing the two items together.[6]

Using the definitions of the words in this disputed term, the sub-term "cooperatively" is proposed as construed to mean "being permitted to work with"; the sub-term "structured" is proposed as construed to mean "having a clearly defined structure or organization"; and the sub-term "embedded" is proposed as construed to mean "incorporation or placement within." *See ids*. Thus, taking these definitions together, the claim term "cooperatively structured to be embedded within only a single electronic file" becomes (to the extent any construction is even

---

[3] Indeed, based on Defendant's proposed erroneous construction, the only dispute between the parties appears to be regarding only the three noted sub-terms.

[4] *See* Exhibit D (produced as DVSENC_00010794-DVSENC_00010798), Dictionary.com definition for "cooperative", located at https://www.dictionary.com/browse/cooperatively ("working or acting together willingly for a common purpose or benefit"); Exhibit E (produced as DVSENC_00010772-DVSENC_00010781), Cambridge Dictionary Online definition for "cooperative", located at https://dictionary.cambridge.org/us/dictionary/english/cooperative ("showing a willingness to act or work together for a shared purpose"); & Exhibit F (produced as DVSENC_00010782-DVSENC_00010793), Merriam-Webster Dictionary Online definition for "cooperative", located at https://www.merriam-webster.com/dictionary/cooperative ("marked by cooperation cooperative efforts"; "marked by a willingness and ability to work with others").

[5] *See* Exhibit G (produced as DVSENC_00010825-DVSENC_00010828), Dictionary.com definition for "structured", located at https://www.dictionary.com/browse/structured ("having and manifesting a clearly defined structure or organization"); & Exhibit H (produced as DVSENC_00010820-DVSENC_00010824), Cambridge Dictionary Online definition for "structured", located at https://dictionary.cambridge.org/us/dictionary/english/structured ("organized so that the parts relate well to each other; having a clear structure").

[6] *See* Exhibit I (produced as DVSENC_00010816-DVSENC_00010819), Dictionary.com definition for "embedded", located at https://www.dictionary.com/browse/embedded ("incorporated into something as an essential characteristic"; "Digital Technology. (of text, images, sound, or code) placed in a computer file, HTML document, software program, or electronic device"); Exhibit J (produced as DVSENC_00010799-DVSENC_00010804), Cambridge Dictionary Online definition for "embedded", located at https://dictionary.cambridge.org/us/dictionary/english/embedded ("existing or firmly attached within something or under a surface"); & Exhibit K (produced as DVSENC_00010805-DVSENC_00010815), Merriam-Webster Dictionary Online definition for "embedded", located at https://www.merriam-webster.com/dictionary/embedded ("drawn from and linked to an external source but displayed or accessed locally"; "of a device or system: functioning as part of a larger device rather than as an independent unit or system").

necessary, which it is not) "having a clearly defined structure or organization to permit incorporation or placement within only a single electronic file at a time."

This is clearly supported by the specification, wherein the '860 Patent disclosures set forth the digital identification module 20 (including any included primary and/or metadata components thereof) that is created for any given electronic document 40 is necessarily created in a manner which permits it to be incorporated or placed into the specific electronic document 40 for which is was created. Ex. C at ¶ 33. More specifically, including as disclosed in Figures 3-3A and 6 (shown above), digital identification module 20 is embedded within electronic document 40 (comprising some electronic file, such as a pdf or similar file; *see id*. at 4:62-5:5) such that electronic document 40 includes, as an essential part, digital identification module 20. Ex. C at ¶ 33. Indeed, the specification continues, discussing how electronic document 40 may be modified after digital identification module 20 is embedded therein, confirming that digital identification module 20, *inter alia*, becomes part of electronic document 40, including such that "a user or recipient of the file 40 cannot delete or remove the digital identification module 20 therefrom" and that "should an electronic copy of the electronic file 40 be made subsequent to embedding or otherwise disposing a digital identification module 20 therein, the copy of the electronic file 40 may also include a copy of the digital identification module 20 embedded therein" *Id*.

In contrast, Defendant's contorted proposed constructions are supported only by vague recitations to the prosecution history and the biased opinion of its paid-for expert, Dr. James Hughes. As an initial matter, the majority of Dr. Hughes's opinions, and, thus, Defendant's assertions, rely on the patently, demonstrably incorrect proposition that Dr. Hughes could not "find a discussion of limitation (e) in the patent." *See* Ex. L at ¶¶ 19-20. Rather, including as set forth above, this claim term is discussed numerous times throughout the specification, including sufficient for a POSITA to understand the claim term and to understand that Dr. Hughes is incorrect. Ex. C at ¶ 34.

Defendant's erroneous construction somehow attempts to modify the phrasing "cooperatively structured" to mean "cooperatively modified or 'modified together with'"

without providing any real support regarding why a POSITA would make such a drastic modification to the otherwise plain language of this claim term. *Id*.; *see* Ex. L at ¶ 21. Defendant purports to base this proposed construction on statements allegedly made by the patent applicant during prosecution. *Id*. at ¶¶ 21-26. As noted by Dr. Hughes, during prosecution, Applicant asserted that "[p]roperly construed, the digital identification module is matched with the single electronic file (*i.e.*, cooperatively) such [*sic*] the digital identification module is usable only with a single electronic file" (*id*. at ¶ 23 (*quoting* Ex. B at 264-265)), with respect to separate claim 16, when "[p]roperly construed, this [term] requires that a characteristic of the digital identification module be structured (*i.e.*, modified/changed/adapted) to a pre-selected electronic file" (*id*. at ¶ 24 (*quoting* Ex. B at 260-261)), and that, "[b]y failing to recognize that the digital identification module has a particular structure (*i.e.*, corresponding to the pre-selected electronic file), the Examiner" is incorrect (*id*.). Ex. C at ¶ 34.

Thus, at least with respect to sub-terms "cooperative" and "structured," Defendant appears to allege that the patent applicant has acted as their own lexicographer. Specifically, Defendant appears to argue that "cooperative" was defined to mean "is matched with the single electronic file…such [that] the digital identification module is usable only with a single electronic file" and "structured" was defined to mean "modified/changed/adapted". However, neither of these properly support Defendant's proposed constructions for this term. *Id*. at ¶ 35. Regarding the sub-term "cooperative," as an initial matter, the Applicant's alleged lexicography is no different than those definitions already noted above – namely, that the digital identification module is "matched with" (*see* Ex. B at 264-265) or "set to work together with" (*see* Exs. D-F). Ex. C at ¶ 35. However, use of the phrase "matched with" does nothing more than add additional limitations which would beg the question of what a "match" comprises. *Id*. Similarly, regarding the sub-term "structured," the Applicant's alleged lexicography, again, is not much different, if at all, from the definitions already noted above – namely, that the digital identification module is "modified/changed/adapted" or "corresponds to" (*see* Ex. B at 260-261) the electronic file or "have a defined structure such that the parts

relate well together" (*see* Exs. G-H). Ex. C at ¶ 35. In other words, a POSITA would understand that "being adapted to" or "corresponding to" an item is nothing more than a more contorted way of saying what the black and white language of the claims already state. *Id*. Thus, neither of Defendant's proposed modifications to this term would properly resolve the parties' dispute, failing to satisfy the purpose of claim construction. *Id*.; *see Markman*, 517 U.S. 370; *Eli Lilly*, 933 F.3d 1320; *O2 Micro*, 521 F.3d 1351; *see also Markman*, 52 F.3d at 978. At worst, it appears the parties do not have a real dispute regarding this claim, and it should be given its plain and ordinary meaning. *See Vivid Techs*, 200 F.3d at 803. Moreover, the Applicant did not redefine these sub-terms in any manner that would demonstrate manifest exclusion or restriction that would represent a clear disavowal of claim scope, and, accordingly, this term should be interpreted in light of its plain and ordinary meaning to a POSITA. Ex. C at ¶ 35; *see Teleflex, Inc. v. Ficosa North America Corp., et al.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002).

Even considering Defendant's erroneous proposed construction, there is simply no support for the modification of "cooperative structured" as being "is modified together with." Ex. C at ¶ 36. Nor has Dr. Hughes provided any such justification, nor can Defendant even attempt to provide same. *Id*. Rather, Defendant's proposed construction improperly seeks to import words and requirements into the claim term which are otherwise not required. *Id*. Namely, Defendant seeks to improperly require some interrelated, contemporaneous "modification" of both the digital identification module and electronic file, while the specification is clear that these two events can occur separately. *Id*.; *see, e.g.*, Ex. A at 5:36-52. Defendant's proposed construction is unnecessarily confusing and improperly imports additional limitations. Ex. C at ¶ 36; *see, e.g.*, *Midwest Ath. & Sports All. LLC v. Xerox Corp.*, No. 6:19-CV-06036 EAW, 2020 U.S. Dist. LEXIS 242830, *67 (W.D.N.Y. Dec. 28, 2020).

Further, the prosecution history of the '860 Patent, including the PTO's decision on appeal rejecting the Examiner's arguments (*see* Ex. B at 351-358), further supports Plaintiff's proposed constructions over Defendant's proposed constructions. Ex. C at ¶ 37. As set forth by the PTO, the scope of the claims relates to merely the "structuring [of] a digital

identification module (*e.g.*, an electronic signature) to correspond with the…file." *Id*. (*quoting* Ex. B at 354). Thus, at least for the similar terminology in then-numbered claims 16 and 18, the PTO has already determined that, contrary to Defendant's assertion, there is sufficient written description under 35 U.S.C. § 112. *Id*. Additionally, to the extent the PTO's determination on then-numbered claims 16 and 18 are directly applicable to the instant term, at best, the PTO has determined only that a POSITA would understand these similar terms to essentially have their plain and ordinary meaning, including because its determined claim scope merely repeats the words disputed in the instant claim. *Id*. Thus, a POSITA would have no difficulty understanding the scope and meaning of this term, particularly when reasonably interpreted in light of the written description of the specification. *Id*.; *see Nautilus*, 572 U.S. at 901 & 908-909; *Novartis*, 38 F.4th 1013, 1016-1018.

Adopting Defendant's proposed construction here would ignore the plain language of the claim and specification, including as understood by a POSITA, and a POSITA would not agree with Defendant's suggestion to do so. *See* Ex. C at ¶¶ 29-37. Thus, the Court should reject Defendant's proposed construction, and adopt Plaintiff's proposed construction, leaving this term to be understood by a POSITA under its plain and ordinary meaning, or, alternatively, construe this term as "having a clearly defined structure or organization to permit incorporation or placement within only a single electronic file at a time."

B. **Agreed-Upon Claim Terms**

| Claim Limitation 1(pre) | |
|---|---|
| *1. "digital verified identification system"* | |
| **Plaintiff's Proposed Construction:** | **Defendant's Proposed Construction:** |
| Plain and ordinary meaning, no construction necessary. | System comprising hardware and software. |

As an initial matter, it is entirely unnecessary to construe the preamble of claim 1, and Defendant's proposed construction is meaningless and would not provide any assistance to a POSITA beyond the plain language of the claim. "The preamble generally does not limit the claim it precedes." *Entegris, Inc. v. Pall Corp.*, No. 06-10601-GAO, 2008 U.S. Dist. LEXIS

---

7

25352, *9 (D. Mass. Mar. 31, 2008) (*citing Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002)). "The preamble may be limiting, however, if it is '"necessary to give life, meaning and vitality"' to the claim." *See id.* (*quoting Kropa v. Robie*, 187 F.2d 150, 152, 38 C.C.P.A. 858, 1951 Dec. Comm'r Pat. 177 (CCPA 1951)). Here, nothing is gained from any construction of the preamble, nor can Defendant show there is any need to do so, including because the preamble does not provide life, meaning, or vitality to the claim. Rather, Defendant's proposed construction does nothing more than improperly import limitations into the preamble which are otherwise unnecessary.

Defendant's only argument for its proposed construction appears to be simply that a POSITA somehow would not know that a system claim requires some physical hardware or similar medium. Indeed, Defendant's own expert, Dr. James Hughes, notes that (even without any construction), "[t]he '860 Patent is not complicated—it's a simple piece of hardware and software that verifies a digital signature." Ex. L at ¶ 7. Thus, at a minimum, Defendant's own argument contradicts Dr. Hughe's clear understanding without any construction of this term. Further, in proposing its construction, Defendant appears to rely on inapplicable statements made by the Applicant during prosecution to overcome a rejection under 35 U.S.C. § 101 that the term module generating assembly (discussed below) comprises both software and hardware. *See* Ex. B at 251-254. However, these statements do not relate to the preamble, and, more importantly, provide no additional assistance which would require the Court to construe the preamble. Thus, a POSITA would have no difficulty understanding the scope and meaning of this term, particularly when reasonably interpreted in light of the written description of the specification. *See Nautilus*, 572 U.S. at 901 & 908-909; *Novartis*, 38 F.4th 1013, 1016-1018. This same determination has already been made by the PTO, who determined the claims as "limited to hardware or the combination of hardware and software because the claim is a system claim that must have corresponding structure to perform the functional limitation of the software." Ex. B at 355. In making this determination, the PTO further found that "the [s]pecification recites hardware, software, or a combination of both," including, at least in part, due to the references to devices. *Id.*

[PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF]

However, upon discussion with Defendant, Plaintiff is not contesting that the claimed system comprises some combination of hardware and/or software. On the other hand, Plaintiff does not contend any specific element or limitations of the Asserted Claims is or is not a hardware and/or software component. Thus, the parties appear to have at least agreed that this term requires no construction and that, at a minimum, the claimed system comprises some combination of hardware and/or software.

## V.  CONCLUSION AND PRAYER FOR RELIEF

Including for at least the reasons above, Plaintiff hereby respectfully requests the Court adopt each and every of Plaintiff's proposed constructions and reject those proposed by Defendant.

Dated: December 9, 2022

Respectfully submitted,

PALAVAN & MOORE, PLLC

*/s/ Shea N. Palavan*
Shea N. Palavan (State Bar No. 339543)
4590 MacArthur Boulevard, Suite 500
Newport Beach, California 92660
Telephone: (832) 303-0704
Facsimile: (855) PALAVAN (725-2826)
  shea@houstonip.com

Jay Johnson
  jay@kjpllc.com
**KIZZIA JOHNSON, PLLC**
1910 Pacific Avenue, Suite 13000
Dallas, Texas 75201
Telephone: (214) 451-0164
Facsimile: (214) 451-0165

Stephen Lobbin (State Bar No. 181195)
  sml@smlavvocati.com
**SML AVVOCATI P.C.**
888 Prospect Street, Suite 200
La Jolla, California 92037
Telephone: (949) 636-1391
Facsimile: (214) 451-0165

*Attorneys for Plaintiff,*
DIGITAL VERIFICATION SYSTEMS, LLC

## __CERTIFICATE OF SERVICE__

 I hereby certify that, per FEDERAL RULE OF CIVIL PROCEDURE 4 and 5 and this Court's Procedures, Orders, Schedule, and Rules, including CIVIL LOCAL RULE 5-3 and 5-4, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail and/or the Court's CM/ECF system. Any other counsel of record will be served by electronic mail, facsimile transmission, and/or first-class mail on this same date.

Dated: December 9, 2022        _/s/ Shea N. Palavan_____
                   Shea N. Palavan