Shea N. Palavan (State Bar No. 339543)
shea@palavan.com
PALAVAN MOORE
**PALAVAN & MOORE, PLLC**
4590 MacArthur Boulevard, Suite 500
Newport Beach, California 92660
Telephone: (832) 800-4133
Facsimile: (855) PALAVAN (725-2826)

Attorneys for Plaintiff,
DIGITAL VERIFICATION SYSTEMS, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DIGITAL VERIFICATION SYSTEMS, LLC,<br><br>    *Plaintiff*,<br><br>V.<br><br>ENCYRO, INC.,<br><br>    *Defendant*. | Case No. 5:22-CV-00686-JWH-SP<br><br>**DECLARATION OF LEIGH M. ROTHSCHILD IN SUPPORT OF PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>**JURY TRIAL DEMANDED**<br><br>Judge:         Hon. John W. Holcomb<br>Courtroom:  9D |

I, Leigh M. Rothschild, hereby declare as follows:

1.     My name is Leigh M. Rothschild. I am over the age of eighteen (18) years, and I am fully competent to make this declaration and testify to the matters stated herein. I am the inventor of record for the asserted patent in this case, U.S. Patent No. 9,054,860, and an employee of Plaintiff, Digital Verification Systems, LLC ("Plaintiff"), in the above-captioned matter. As such, I make this declaration based on my personal knowledge, and, if called to testify to the truth of the matters set forth herein, could and would do so competently.

2.     I am a resident of Miami Dade County, Florida. I earned an undergraduate degree from the University of Miami, as well as a graduate degree in Business from the same institution. I have worked extensively in a multitude of fields of invention, and am the sole

named inventor on over 125 issued patents with many more filed, pending applications. In addition I have served as a technical advisor to Governor Jeb Bush and as an advisor to President George H W Bush.

3. I understand that Plaintiff contends that, at least at the time of the filing and prosecution of the '860 Patent, a POSITA of the subject matter claimed by the Patent-in-Suit is a person having a bachelor's degree in computer science or electrical engineering, or by equivalent education or training, and approximately 0-3 years of experience. Including as the named inventor of the '860 Patent, I meet that definition of a POSITA and, as the inventor of the Patent-in-Suit, I also meet any definition of a POSITA that could possibly be applicable to the Patent-in-Suit.

4. In considering how a POSITA would understand the terms of the Asserted Claims, I have considered how a POSITA would understand those terms at the time of the invention, including in view of the specification. When I refer to how a POSITA would understand something from the Patent-in-Suit, I am referring to that understanding at the time of the invention, in view of the claims, specification and prosecution history, and in view of the general knowledge of a POSITA. In my opinion, a POSITA's understanding would not materially change during the prosecution of the '860 Patent.

5. The Patent-in-Suit is U.S. Patent No. 9,054,860, entitled "Digital Verified Identification System and Method" (the "'860 Patent" or the "Patent-in-Suit") (Exhibit A), which was filed on January 2, 2008 and published as U.S. Patent Application No. 12/006,457, and was issued on June 9, 2015. During the prosecution of the '860 Patent, the Applicant overcame rejections by the Examiner under 35 U.S.C. §§ 101, 103, and 112, including following an appeal of the Examiner's June 15, 2011 Final Rejection and the U.S. Patent and Trademark Office's ("PTO") November 28, 2014 Decision allowing the then-existing claims.[1]

---

[1] *See, generally*, Ex. B at 75-149 (Examiner's Non-Final Rejection), 150-175 (Applicant's Amendment and Response to Non-Final Rejection), and 183-237 (Examiner's Final Rejection), 238-239 (Applicant's Notice of Appeal), 244-281 (Applicant's Appellate Brief), 286-331 (Examiner's Answer Brief), 332-346 (Applicant's Reply Brief), & 351-358 (PTO's Decision Regarding Patentability).

Moreover, the Asserted Claims were challenged in an IPR, but the IPR was not instituted.[2]

6. At a high level, the Patent-in-Suit generally relates to various novel systems and methods for digitally authenticating the identity of a signatory to an electronic file. *See* Ex. A. I am the sole listed inventor on the '860 Patent. Plaintiff is presently the exclusive assignee of the Patent-in-Suit.

7. I understand that, in this proceeding, Plaintiff contends that Defendant infringes multiple claims of the Patent-in-Suit. I understand that the claims at issue in this proceeding are claims 1-9, 12, 16-17, and 22 of the '860 Patent (individually and collectively, the "Asserted Claims"). The '860 Patent, and claimed technology, are discussed further hereinbelow.

8. I understand that, on April 21, 2022, Plaintiff filed suit in this District asserting the '860 Patent in the above-styled and numbered cause. *See* D.I. 1. I understand that, prior to the instant suit, Plaintiff has asserted the '860 Patent in numerous cases, including as far back as May 12, 2016. I understand that many of these cases were resolved early in the litigation proceedings, with some resulting in settlement between the parties. I understand that, notably, in none of these prior cases has there been any prior construction of any of the terms of the '860 Patent.

9. I understand that, in this case, Defendant's Answer, Affirmative Defense, and Counterclaims was filed on June 17, 2022. *See* D.I. 14. I understand that, following the Court's Scheduling Conference on August 5, 2022 (*see* D.I. 18), the Court issued a Scheduling Order for all deadlines through claim construction via a Minute Order that same day (*see* D.I. 21). I understand that, specifically, under the Court's Schedule (*see id.*), no dates have been set for either fact or expert discovery, and the date of the claim construction hearing is set for January 19, 2023 at 10:00 a.m. PT (where the Court shall also take up Defendant's bond motion – *see* D.I. 22 & 29). Further, I understand that, pursuant to the Court's Schedule (*see* D.I. 21), Plaintiff has hereby respectfully filed this Opening Claim Construction Brief.

---

[2] *See, generally*, Ex. B at 409-426 (PTO Denial of IPR Institution); *Askeladden L.L.C. v. Digital Verification Systems LLC*, No. IPR2018-00745 (PTAB 2018).

Page 3 | 18

[DECLARATION OF LEIGH M. ROTHSCHILD IN SUPPORT OF PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF]     Case No.: 5:22-CV-00686-JWH-SP

10. The '860 Patent relates, *inter alia*, to "a digital verified identification system structured to facilitate authenticating and/or verifying the identity of an electronic signatory to a file and/or otherwise structured to associate an electronic file with one or more entities" (Ex. A at 1:37-41), including, without limitation, "a digital verified identification system wherein the one or more digital identification modules include at least one primary component and at least one metadata component having, for example, various identifying information and/or reference codes and/or numbers" (*id*. at 1:50-55). The '860 Patent addresses, *inter alia*, problems in the field of authentication of digital and/or electronic signatures and/or identifiers for verifying the identity of the signatory: as the development of electronic signatures has brought along additional difficulties due to the potential ease of fabrication of these electronic signatures. *Id*. at 1:12-61. While other systems, methods, and designs existed at the time, few, if any, addressed the specific problems noted or included additional issues the claimed invention does not include. *See Id*. Indeed, there is no dispute that encryption and digital signature technology has been around for many years. *See id*. Rather, the Patent-in-Suit at issue provides specific improvements over prior systems and methods, including improved digital signature verification and authentication benefits using, *inter alia*, one or more digital identification modules generated by a module generating assembly, wherein the one or more digital identification modules include at least one primary component, such as an image of a digital signature, and at least one metadata component, such as various identifying information and/or reference codes and/or numbers, which permit a user requesting a signature on an electronic document to verify and/or authenticate the identity of the signatory as being the person from which the user requested a signature, including via these primary and/or metadata components. *See id*. & Claims 1-22.

11. Figures 1-7, the claims, themselves, and the accompanying specification disclose a digital verified identification system, which comprises at least one digital identification module 20 and a module generating assembly 50. *See, e.g.*, '860 Patent, Figs. 1-7 and Claims 1-22. More specifically, the at least one digital identification module 20 is structured to be associated with at least one entity 30 (id. at 3:25-30); the module generating assembly 50 is

structured to both, *inter alia*, create the at least one digital identification module 20 (*id*. at 3:49-53) and receive at least one verification data element 52 corresponding to the at least one entity 30 (*id*. at 4:1-5); the at least one digital identification module 20 is disposable within at least one electronic file 40 (*id*. at 3:30-35); the at least one digital identification module 20 comprises at least one primary component 22 structured to at least partially associate the digital identification module 20 with the at least one entity 30 (*id*. at 6:11-27); and the at least one digital identification module 20 is cooperatively structured to be embedded within only a single electronic file 40 (*id*. at 4:16-39)

12. As set forth in the Abstract of the '860 Patent, the claimed invention relates, in*ter alia*, to

> [a] digital verified identification system and method are presented for verifying and/or authenticating the identification of an entity associated with an electronic file, such as, for example the digital signatory thereof. In particular, the system and method include a module generating assembly structured to receive at least one verification data element, and at least one digital identification module structured to be associated with at least one entity. The digital identification module is capable of being disposed or embedded within at least one electronic file. Further, the digital identification module includes at least one primary component structured to at least partially associate the digital identification module with the entity, and one or more metadata components.

*Id*. at Abstract.

13. More specifically, Figures 1, 1A, 4, and 5 of the '860 Patent show the general architectural set ups of various different embodiments of the claimed digital verified identification system:





FIG. 4

FIG. 5

*Id.* at Figs. 1-1A, 4, & 5; *see id.* 2:53-3:18.

14. Further, Figures 2-2B disclose various claimed embodiments related to the claimed module generating assembly, and Figures 3-3A and 6 disclose various claimed embodiments related to the claimed digital identification module:




FIG. 2

FIG. 2A

FIG. 2B

FIG. 3

FIG. 3A



FIG. 6

*Id*. at Figs. 2-2B, 3-3A, & 6; *see id*. 2:53-3:18.

15. Lastly, Figure 7 disclose a claimed embodiment setting forth one of the claimed methods of digital verification of a signatory:



FIG. 7

*Id*. at Fig. 7; *see id*. 2:53-3:18.

16. Independent Claim 1, the independent claim upon which the remaining Asserted Claims depend, is exemplary and states, in full, as follows (wherein the bolded portions are the disputed terms submitted by the parties for construction):

> Claim 1. **A digital verified identification system**, comprising
> at least one digital identification module structured to be associated with at least one entity,
> **a module generating assembly structured to receive at least one verification data element corresponding to the at least one entity and create said at least one digital identification module**,
> said at least one digital identification module being disposable within at least one electronic file, and
> said at least one digital identification module comprising **at least one primary component structured to at least partially associate said digital identification module with said at least one entity**, wherein
> said at least one digital identification module is **cooperatively structured to be embedded within only a single electronic file**.

*Id*. at Claim 1, 9:6-22.

17. At a high level, and pertinent to the Asserted Claims in this proceeding, the '860 Patent is generally directed to a novel system and method of digital verified identification comprising at least one digital identification module structured to be associated with at least one entity, a module generating assembly structured to receive at least one verification data element corresponding to the at least one entity and create said at least one digital identification module, said at least one digital identification module being disposable within at least one electronic file, and said at least one digital identification module comprising at least one primary component structured to at least partially associate said digital identification module with said at least one entity, wherein said at least one digital identification module is cooperatively structured to be embedded within only a single electronic file. *Id*.

18. Among other things, a key point of novelty of the claimed inventions of the '860 Patent's relate to, *inter alia*, the claimed inventions' at least one digital identification module being cooperatively structured to be embedded within only a single electronic file. *See, e.g.*, Ex. B at 151-175; Ex. A at 4:16-27. According to the patent applicant, the claimed inventions provide a more limited use of a digital signature wherein the created signature is generated such that it can be used with only a single electronic file in which it is embedded. *See, e.g.*,

1 Ex. B at 168 & 261-262. In this way, the person requesting a signature on the file may better trust that the digital signature placed by the signatory into the file was actually placed by the person requested.

19. I understand that certain claim terms are written in "mean-plus-function" form. I further understand that a "means-plus-function" term is construed by first identifying the function of the term and then by identifying the structures in the specification that perform the function and are clearly linked to that function, and equivalents thereof. I also understand that, while the use of the word "means" gives rise to a presumption that a claim term is a "means-plus-function" term, this presumption can be overcome by the recitation in the claim of the structure needed to perform the recited function. I also understand that, at least in instances of a computer program or application, the structure needed to perform a recited function can be in the form of an algorithm to be performed by a specialized computer.

20. I understand that the parties request the Court construe the term "module generating assembly structured to receive at least one verification data element corresponding to the at least one entity and create said at least one digital identification module." I understand that Plaintiff contends this term is not governed by § 112 and can be understood by a POSITA without the need for construing the claim term. I understand that Plaintiff alternatively contends that, should the Court determine this term is so governed, the corresponding structure is module generating assembly 50, including as outlined in Fig. 7 and its corresponding description, namely '860/7:48-8:62. I understand that Defendant contends this term is a MPF term comprising hardware but lacking sufficient disclosures in the specification.

21. In consideration of the proper construction of this term, including the context of the claim and the specification, this term, including as used in the Asserted Claims, has a plain and ordinary meaning to a POSITA such that further construction of this phrase is unnecessary. That plain and ordinary meaning includes that this is not a MPF term and that there is sufficient disclosure in the specification, including because the specification is clear in referring to either and/or both hardware and/or software for this term, including that the module generating assembly may be, *inter alia*, a computer application or a web server running on a device. *See*

Ex. A at 5:1-26 ("module generating assembly 50…is a separate and independent program or service"); 5:53-67 ("module generating assembly 50…may include one or more devices…"); & 8:48-54 ("may communicate…to a third party, for example, the module generating assembly, a web site, or other device, object, or service"); *see also id*. at Figs. 2-2B & 7; 1:41-49, 1:65-2:6, 2:13-24, 2:65-67, 3:46-4:27, 5:5-44, 5:53-67, 6:62-7:6, 7:33-44, 7:56-8:13, 8:24-37, & 8:45-57. Additionally, the '860 Patent notes that a signatory-user may log into, or communicate or upload information to, the module generating assembly, which necessarily, at least to a POSITA, would require the use of some hardware for facilitating the communication (*e.g.*, networking, telephone, or similar communication processes). *See ids*. Further, as noted above, I understand that the PTO has already determined a hardware requirement and sufficient disclosure of same, including, at least in part, because of the references to devices. *See* Ex. B at 355.

22. The specification is clear, at least to a POSITA, that any alleged function for this term is performed by some hardware, such as a web server, file server, or other computing device. *See* Ex. A at 5:5-43. Moreover, the module generating assembly is disclosed as being able to receive information, such as verification data elements, including via the use of network or other communication hardware, further indicating the structural nature of this term. *See id*. at Claim 4, 9:30-33; 5:36-43; 7:56-67.

23. I understand that the PTAB stated that, in determining whether to institute the review, they construed this term, for this limited determination, as being MPF and noted "that because Petitioner did not identify corresponding structure in the specification, Petitioner did not show a reasonable likelihood it would prevail in establishing unpatentability of any challenged claim." Ex. B at 2-3. Here, including as noted above, not only is the PTAB incorrect, but Defendant's reliance thereon is unpersuasive – a POSITA would understand that there is sufficient disclosure for this term.

24. A POSITA would understand that, to the extent this is determined to be a MPF term, the specification provides a corresponding structure or algorithm, including at Figure 7 and 7:48-8:62, that the structure or algorithm for performing any alleged claimed function is

module generating assembly 50. A POSITA would also understand that the alleged function is "receiv[ing] at least one verification data element corresponding to the at least one entity and creat[ing] said at least one digital identification module." *Id*. at Claim 1, 9:9-13. Including as set forth in Figure 7, a POSITA would understand that this function may be performed via, *inter alia*, the algorithm disclosed, with the flow chart shown in Figure 7 and described in the specification describing the steps taken for the module generating assembly to receive information (*see, e.g., id*. at Fig. 7; 7:48-67) and create a digital identification module (*see, e.g., id*. at Fig. 7; 8:1-20). More specifically, a POSITA would understand that the module generating assembly is disclosed as being able to "create the digital identification module(s), for example, by combining at least one primary component with at least one metadata component." *Id*. at 8:8-13. Again, a POSITA would understand that there is sufficient disclosure for this term.

25. Even if the Court determines that the phrase "module generating assembly structured to receive at least one verification data element corresponding to the at least one entity and create said at least one digital identification module" requires further construction as a MPF term, a POSITA would understand that the corresponding structure for any alleged function is module generating assembly 50, including as outlined in Fig. 7 and its corresponding description, namely '860/7:48-8:62.

26. I understand that the parties request the Court construe the term "at least one primary component structured to at least partially associate said digital identification module with said at least one entity." I understand that Plaintiff contends this term can be understood by a POSITA without the need for construing the claim term. I understand that Defendant contends this term is indefinite under 35 U.S.C. ¶ 112.

27. In consideration of the proper construction of this term, including the context of the claim and the specification, this term, including as used in the Asserted Claims, has a plain and ordinary meaning to a POSITA such that further construction of this phrase is unnecessary. That plain and ordinary meaning includes that there is sufficient disclosure in the specification, including because the specification clearly sets forth what a primary component comprises,

which may include an image or graphic representation of a signature. *See, e.g.*, Ex. A at 1:55-57 ("In particular, the primary component may include the signature or other identifying indicia of the respective signatory."); 2:25-37 ("The primary component may include, for example, a digital representation of a signature and/or one or more reference codes, numbers, or characters, the significance of which will be apparent from the discussion below. The primary component is generally visible or perceptible to a reader, recipient, or other user of the electronic document."); *see also id*. at 6:11-27 ("the primary component 22 may comprise a graphical representation of the digital signature, and as such, may include, for example, a JPEG, BMP, PNG, or GIF file"). A POSITA would understand what the primary component is, or how it is related to the digital identification module – the primary component is part of the digital identification module. *See, e.g.*, *id*. at 6:11-14. Simply put, a POSITA would have no issue understanding this term based on the plain and ordinary meaning of the terms. Moreover, despite Defendant's assertion that this term is indefinite, there is ample disclosure in the '860 Patent's specification to permit a POSITA to understand the inventor possessed the claimed inventions.

28. The '860 Patent makes abundantly clear, and a POSITA would understand and agree, that the primary component is structured in a manner, such as being in the form of an image or graphical representation of a signature, which is both part of the digital identification module and indicates that the signatory entity provided such image or graphic. *See, e.g.*, *id*. at 3:25-41. Thus, a POSITA would have no difficulty understanding the scope and meaning of this term, particularly when reasonably interpreted in light of the written description of the specification.

29. I understand that the parties request the Court construe the term "cooperatively structured to be embedded within only a single electronic file." I understand that Plaintiff contends this term can be understood by a POSITA without the need for construing the claim term. I understand that Plaintiff alternatively contends that, should the Court determine this term requires construction, the term should be construed to mean "having a clearly defined structure or organization to permit incorporation or placement within only a single electronic

file at a time." I understand that Defendant contends this term should be construed to mean "said at least one digital identification module is modified together with a single electronic file such that it can only be embedded within said single electronic file." I understand that Defendant alternatively contends this term is indefinite under 35 U.S.C. ¶ 112.

30. In consideration of the proper construction of this term, including the context of the claim and the specification, this term, including as used in the Asserted Claims, has a plain and ordinary meaning to a POSITA such that further construction of this phrase is unnecessary. That plain and ordinary meaning includes that there is sufficient disclosure in the specification, including because none of the words in this disputed term would be understood by a POSITA as having or requiring any construction beyond their plain and ordinary meanings, including in view of the '860 Patent's specification. Plaintiff's alternative proposed construction is based on and consistent with, *inter alia*, a POSITA's understanding of the term in view of the '860 Patent's specification and prosecution history, and is further supported by the provided dictionary definitions for the words of this claim term.

31. I understand that this term appears in claims 1, 22, 26, and 39, and is used consistently therein and intended to have the same meaning in each claim. For example, POSITA would understand that Figures 3-3A and 6 (shown above) disclose various claimed embodiments showing a created digital identification module 20 having a specific structure permitting it to be embedded within a single electronic document 40. Ex. A at Figs. 3-3A & 6; 3:30-45 & 4:14-5:43. In other words, a POSITA would understand that digital identification module 20 is created in a manner for embedding it in a specific electronic document 40. *See id*. Thus, a POSITA would understand that this term includes common terminology used in the field which have no meaning beyond their plain and ordinary meaning and requires no construction.

32. A POSITA would understand that the basic definitions for the words of the term provide more than sufficient basis for Plaintiff's proposed construction. A POSITA would understand that, at most, only the sub-terms "cooperative," "structured," and "embedded" in this claim term are disputed by the parties and require any construction, with the remaining

phrase "within a single electronic file" holding its plain and ordinary meaning to a POSITA.[3]

33. A POSITA would understand that the applicability of the provided dictionary definitions for these three sub-terms is clearly supported by the specification, wherein the '860 Patent disclosures set forth the digital identification module 20 (including any included primary and/or metadata components thereof) that is created for any given electronic document 40 is necessarily created in a manner which permits it to be incorporated or placed into the specific electronic document 40 for which is was created. *See* Ex. A at Figs. 3-3A & 6; 1:65-2:24, 3:30-45, 4:14-5:43, 6:28-57, & 8:15-62. More specifically, a POSITA would understand that, including as disclosed in Figures 3-3A and 6 (shown above), digital identification module 20 is embedded within electronic document 40 (comprising some electronic file, such as a pdf or similar file; *see id*. at 4:62-5:5) such that electronic document 40 includes, as an essential part, digital identification module 20. *See id*. at Figs. 3-3A & 6; 1:65-2:24, 3:30-45, 4:14-5:43, 6:28-57, & 8:15-62. Indeed, a POSITA would understand that the specification continues, discussing how electronic document 40 may be modified after digital identification module 20 is embedded therein, confirming that digital identification module 20, *inter alia*, becomes part of electronic document 40, including such that "a user or recipient of the file 40 cannot delete or remove the digital identification module 20 therefrom" and that "should an electronic copy of the electronic file 40 be made subsequent to embedding or otherwise disposing a digital identification module 20 therein, the copy of the electronic file 40 may also include a copy of the digital identification module 20 embedded therein" *Id*. at 4:52-61.

34. Including as set forth above, this claim term is discussed numerous times throughout the specification, including sufficient for a POSITA to understand the claim term and to understand that Dr. Hughes is incorrect. Defendant's erroneous construction somehow attempts to modify the phrasing "cooperatively structured" to mean "cooperatively modified or 'modified together with'" without providing any real support regarding why a POSITA would make such a drastic modification to the otherwise plain language of this claim term. *See*

---

[3] Indeed, based on Defendant's proposed erroneous construction, the only dispute between the parties appears to be regarding only the three noted sub-terms.

Ex. L at ¶ 21. I understand that Defendant purports to base this proposed construction on statements allegedly made by the patent applicant during prosecution. *Id*. at ¶¶ 21-26. I understand that, during prosecution, the patent applicant asserted that "[p]roperly construed, the digital identification module is matched with the single electronic file (*i.e.*, cooperatively) such [sic] the digital identification module is usable only with a single electronic file" (*id*. at ¶ 23 (*quoting* Ex. B at 264-265)), with respect to separate claim 16, when "[p]roperly construed, this [term] requires that a characteristic of the digital identification module be structured (*i.e.*, modified/changed/adapted) to a pre-selected electronic file" (*id*. at ¶ 24 (quoting Ex. B at 260-261)), and that, "[b]y failing to recognize that the digital identification module has a particular structure (*i.e.*, corresponding to the pre-selected electronic file), the Examiner" is incorrect (*id*.).

35. A POSITA would understand that neither of Defendant's arguments that the Applicant acted as their own lexicographer properly support Defendant's proposed constructions for this term. Regarding the sub-term "cooperative," as an initial matter, a POSITA would understand that the Applicant's alleged lexicography is no different than those definitions already noted above – namely, that the digital identification module is "matched with" (*see* Ex. B at 264-265) or "set to work together with" (*see* Exs. D-F). However, a POSITA would understand that the use of the phrase "matched with" does nothing more than add additional limitations which would beg the question of what a "match" comprises. Similarly, regarding the sub-term "structured," a POSITA would understand that the Applicant's alleged lexicography, again, is not much different, if at all, from the definitions already noted above – namely, that the digital identification module is "modified/changed/adapted" or "corresponds to" (*see* Ex. B at 260-261) the electronic file or "have a defined structure such that the parts relate well together" (*see* Exs. G-H). In other words, a POSITA would understand that "being adapted to" or "corresponding to" an item is nothing more than a more contorted way of saying what the black and white language of the claims already state. Thus, POSITA would understand that neither of Defendant's proposed modifications to this term would properly resolve the parties' dispute, failing to satisfy the

purpose of claim construction. Moreover, a POSITA would understand that the Applicant did not redefine these sub-terms in any manner that would demonstrate manifest exclusion or restriction that would represent a clear disavowal of claim scope, and, accordingly, this term should be interpreted in light of its plain and ordinary meaning to a POSITA.

36. Even considering Defendant's erroneous proposed construction, a POSITA would understand that there is simply no support for the modification of "cooperative structured" as being "is modified together with." Nor would POSITA understand that Dr. Hughes has provided any such justification, nor that Defendant can even attempt to provide same. Rather, a POSITA would understand that Defendant's proposed construction improperly seeks to import words and requirements into the claim term which are otherwise not required. Namely, a POSITA would understand that Defendant seeks to improperly require some interrelated, contemporaneous "modification" of both the digital identification module and electronic file, while the specification is clear that these two events can occur separately. *See, e.g.*, Ex. A at 5:36-52. A POSITA would understand that Defendant's proposed construction is unnecessarily confusing and improperly imports additional limitations.

37. Further, a POSITA would understand that the prosecution history of the '860 Patent, including the PTO's decision on appeal rejecting the Examiner's arguments (*see* Ex. B at 351-358), further supports Plaintiff's proposed constructions over Defendant's proposed constructions. I understand that, as set forth by the PTO, the scope of the claims relates to merely the "structuring [of] a digital identification module (*e.g.*, an electronic signature) to correspond with the…file." *Id*. at 354. Thus, at least for the similar terminology in then-numbered claims 16 and 18, a POSITA would understand that the PTO has already determined that, contrary to Defendant's assertion, there is sufficient written description under 35 U.S.C. § 112. Additionally, a POSITA would understand that, to the extent the PTO's determination on then-numbered claims 16 and 18 are directly applicable to the instant term, at best, the PTO has determined only that a POSITA would understand these similar terms to essentially have their plain and ordinary meaning, including because its determined claim scope merely repeats the words disputed in the instant claim. Thus, a POSITA would have no difficulty

understanding the scope and meaning of this term, particularly when reasonably interpreted in light of the written description of the specification.

I declare under penalty of perjury under the laws of the United States of America and the State of Florida that the foregoing is true and correct.

Executed on December 9, 2022 in Aventura, Miami-Dade County, Florida.

/s/ *Leigh M. Rothschild*
Leigh M. Rothschild