Rachael D. Lamkin
LAMKIN IP DEFENSE
One Harbor Drive, Suite 300
Sausalito, CA 95965
RDL@LamkinIPDefense.com
916.747.6091
*Counsel for Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DIGITAL VERIFICATION SYSTEMS, LLC**<br><br>                    Plaintiff,<br><br>          v.<br><br>**ENCYRO, INC.**<br><br>                    Defendant. | Case No. 5:22−cv−00686−JWH−SP<br><br>**DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**<br><br>January 19, 2023, at 10:00 a.m.<br>Courtroom 9D |

## DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

Herein Defendant responds to Plaintiff's Opening Claim Construction Brief, Dkt. No. 31.

# TABLE OF CONTENTS

I.   MR. ROTHSCHILD'S DECLARATION SHOULD BE STRICKEN,

     AND DVS SANCTIONED UNDER RULE 30(D)(2) ………………..…..3

II.  EACH OF THE FOUR, POSSIBLY FIVE, CLAIM CONSTRUCTION

     ISSUES SHOULD BE RESOLVED IN DEFENDANT'S FAVOR ……..…8

     A. The Module Generating Assembly is Comprised of Hardware…………..8

     B. "Module Generating Assembly" is an Indefinite Term…………………10

     C. The "Partially Associate" Term is Indefinite……………………………21

     D. The Asserted Claims Are Invalid as the Patentee Was Not

        "In Possession" of Limitation [e] When the '860 Patent Was Filed…….22

III. CONCLUSION………………………………………………………..26

# TABLE OF AUTHORITIES

*Ariad Pharms., Inc. v. Eli Lilly & Co*., 598 F.3d 1336 (Fed. Cir. 2010) .......................24

*Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech*., 521 F.3d 1328 (Fed. Cir. 2008) ................................................................................................................................. 15-16

*Balt. Therapeutic Equip. Co. v. Loredan Biomedical, Inc.,* Nos. 93-1301, 93-1331, 1994 U.S. App. LEXIS 7444 (Fed. Cir. Apr. 12, 1994) ...........................................28

*BASF Agro B.V. v. Makhteshim Agan of N. Am., Inc*., 519 F. App'x 1008 (Fed. Cir. 2013) ...........................................................................................................................21, 28

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc*., 334 F.3d 1294 (Fed. Cir. 2003). .....26

*Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2141-42, 195 L. Ed. 2d 423 (2016) .............................................................................................................................................14

*D Three Enters., LLC v. SunModo Corp.,* 890 F.3d 1042 (Fed. Cir. 2018). .................24

*Dexcom, Inc. v. AgaMatrix, Inc*., No. CV 16-05947 SJO (ASx), 2017 U.S. Dist. LEXIS 178846 (C.D. Cal. Aug. 1, 2017) ..........................................................................5, 27

*Diagnostics Corp. v. Elekta AB,* 344 F.3d 1205 (Fed. Cir. 2003) ..................................15

*Infinity Comput. Prods. v. Oki Data Ams., Inc*., 987 F.3d 1053 (Fed. Cir. 2021)..........11

*Interval Licensing LLC v. AOL, Inc*., 766 F.3d 1364 (Fed. Cir. 2014). .......................22

*MTD Prods. Inc. v. Iancu,* 933 F.3d 1336 (Fed. Cir. 2019). ..........................................13

*Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898 (2014)...................................15

*Net MoneyIN, Inc. v. VeriSign, Inc.,* 545 F.3d 1359 (Fed. Cir. 2008)...........................15

*Pelican Int'l Inc. v. Hobie Cat Co*., No. 20-cv-2390-BAS-MSB, 2022 U.S. Dist. LEXIS 18400 (S.D. Cal. Feb. 1, 2022) ......................................................................13

*Phillips v. AWH Corp*., 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*)................................8

*Rain Computing, Inc. v. Samsung Elecs.* 989 F.3d 1002 (Fed. Cir. 2021)........ 12-13, 16

*RG Abrams Ins. v. Law Offices of C.R. Abrams*, No. 2:21-cv-00194-FLA-MAAx, 2021 U.S. Dist. LEXIS 253216 (C.D. Cal. Dec. 22, 2021) .....................................................7

*Rillito River Ltd. Liab. Co. v. Bamboo Indus. Ltd. Liab. Co*., No. 2:17-cv-00181-TLN-CKD, 2018 U.S. Dist. LEXIS 154933 (E.D. Cal. Sep. 10, 2018).............................22

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.,* 948 F.3d 1342 (Fed. Cir. 2020).......14

*Sport Dimension, Inc. v. Coleman Co*., No. CV 14-00438 BRO (MRWx), 2015 U.S. Dist. LEXIS 192011 (C.D. Cal. Jan. 29, 2015)..........................................................8

*Springs Window Fashions LP v. Novo Indus., L.P*., 323 F.3d 989 (Fed. Cir. 2003).....10

*Sundance, Inc. v. DeMonte Fabricating Ltd*., 550 F.3d 1356 (Fed. Cir. 2008). ............8

*Teva Pharm. USA, Inc. v. Sandoz, Inc*., 789 F.3d 1335 (Fed. Cir. 2015)................. 10-1

*United States v. Real Prop*., 763 F. Supp. 2d 1175, 1186 (C.D. Cal. 2011) ................8

*Univ. of Rochester v. G.D. Searle & Co*., 358 F.3d 916 (Fed. Cir. 2004)....................25

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1351 (Fed. Cir. 2015)........ 12-14, 16

*Zoltek Corp. v. United States*, 95 Fed. Cl. 681 (2010). ..................................................8

## I.   MR. ROTHSCHILD'S DECLARATION SHOULD BE STRICKEN, AND DVS SANCTIONED UNDER RULE 30(D)(2)

Pursuant to this Court's Scheduling Order and the adopted Northern District of California's Patent Local Rules ("PLR"), Rule 4-2, extrinsic evidence was to be disclosed on November 11, 2022.  Order, Dkt. No. 21; DVS Rule 4-2 Disclosure, Lamkin Decl., Exh A.  On November 11, 2022, DVS did not disclose that it would be filing a declaration from the named inventor and owner of DVS, Leigh Rothschild.  *Id*. Conversely, in accordance with this Court's Scheduling Order and adopted PLR 4-2, Encyro provided to DVS a copy of Professor Hughes' Declaration. *See* Dkt. Nos. 28, 30-4.  Encyro also offered Professor Hughes' deposition, which Encyro declined to take.

Pursuant to the Court's Scheduling Order and PLR 4-2(c) and 4-3, the Parties then engaged in a meet and confer to narrow the disputed claim construction issues and exchanged drafts of the Joint Claim Construction Statement ("JCCS").  Again, DVS did not disclose Leigh Rothschild or his testimony.  *See* Dkt. No. 28.

Pursuant to the Court's Scheduling Order and PLR 4-3, on December 2, 2022, the Parties filed their JCCS.  The JCCS requires, "an identification of any extrinsic evidence [including . . .] testimony of percipient and expert witnesses".  Dkt. No. 28, at 2.  DVS still did not disclose Mr. Rothschild.  *Id*.   As of the filing of the JCCS, DVS had failed to disclose Mr. Rothschild's testimony to Defendant and to the Court, in

contravention of this Court's Scheduling Order, Dkt. No. 21.

On December 9, 2022, the Parties filed their opening claim construction briefs, wherein DVS surprised Encyro with Mr. Rothschild's 18-page declaration, replete with dense citations. Dkt. No. 31-4. Encyro immediately wrote to DVS and asked that it either withdraw Mr. Rothschild's declaration or allow Encyro to depose Mr. Rothschild to minimize the prejudice to Encyro. Lamkin Decl., Exh. B; *see also Dexcom, Inc. v. AgaMatrix, Inc*., No. CV 16-05947 SJO (ASx), 2017 U.S. Dist. LEXIS 178846, at *15-24 (C.D. Cal. Aug. 1, 2017) (excluding expert declaration for failure to disclose).

DVS largely ignored Encyro's communications until Tuesday December 20, 2022, *i.e.,* 11 days after the opening briefs and 3 days before the responsive briefs were due. Lamkin Decl., Exh C. In its December 20 email, DVS stated that Mr. Rothschild could be available for deposition on Thursday afternoon December 22, 2022, *i.e*., the afternoon before Encyro's rebuttal claim construction brief was due. Encyro ignored DVS' gamesmanship and prepared for Mr. Rothschild's deposition. Said preparation involved Encyro's counsel and expert clearing their full calendars to adequately prepare for Mr. Rothschild's deposition in two day's time. Lamkin Decl., ¶8.

Even as Encyro bent over backward to accommodate DVS' improper conduct, DVS' gamesmanship escalated. Under the Federal Rules, Encyro was entitled to a 7-hour deposition of Mr. Rothschild. Fed.R.Civ.P 30(d)(1). But, at the beginning of his

deposition, Mr. Rothschild again surprised Encyro by announcing that he would only sit for one hour.  Rothschild Rough Depo Tr., 2:6-22.  Lamkin Decl., Exh C.[1]

Encyro's counsel attempted to explain to Mr. Rothschild that Encyro would be forced to move to strike given the prejudice Encyro would suffer at not being able to adequately depose Mr. Rothschild if he did not agree to extend his deposition.  *Id.*, at 3:2-5:9, 41:5-42:16.  Encyro even offered to continue the deposition to the next morning, *i.e.*, today, the deadline for Encyro's responsive brief, but Mr. Rothschild refused every attempt at compromise.  *Id.*, 41:5-42:16.

Further, in deposition, Mr. Rothschild was combative and evasive, refusing to answer nearly every question posed.  The entire transcript is replete with obfuscation, as detailed below and as highlighted in Mr. Rothschild's rough transcript. *See, e.g.,* Rothschild Rough Depo Tr., 7:1-10, 17:9-18:9, 20:3-25, Lamkin Decl., Exh. C.

Mr. Rothschild even refused to follow Encyro's request that he use a computer able to download exhibits because, in his first deposition unrelated to claim construction, Mr. Rothschild forced Encyro to depose him while he used an iPad with no ability to view or download exhibits. As such, Encyro requested, prior to his

---

[1] The rough transcript was provided last night, December 22, 2022.  Encyro will file the final once received.  Encyro notes, while California state courts do not permit submission of draft transcripts, Encyro is aware of no such bar in federal court.  *See Fontenot v. Safety Council of Sw. La.*, No. 2:16-CV-84, 2017 U.S. Dist. LEXIS 97618, at *16 (W.D. La. June 23, 2017); *Jadwin v. Abraham*, No. 1:07-cv-00026-OWW-TAG, 2008 U.S. Dist. LEXIS 116780, at *17 (E.D. Cal. Aug. 22, 2008).

deposition, that Mr. Rothschild employ the proper equipment at deposition.  Lamkin Decl., Exh D, at 1.  But yet again, Mr. Rothschild refused to employ the proper deposition equipment, severely constraining and confusing an already rushed and unnecessarily contentious deposition.  Rothschild Rough Depo Tr., 6:9-14, 37:7-10, *passim*.

Ultimately, as shown below, DVS and Mr. Rothschild frustrated every attempt at a fair deposition.  As such, DVS should pay Encyro's fees and costs associated with Mr. Rothschild's deposition.  Fed.R.Civ.P 30(d)(2); *RG Abrams Ins. v. Law Offices of C.R. Abrams*, No. 2:21-cv-00194-FLA-MAAx, 2021 U.S. Dist. LEXIS 253216, at *71 (C.D. Cal. Dec. 22, 2021) ("Sanctions [under Rule 30(d)(2)] can include the payment of fees, expert witness fees, court reporter fees, and attorney travel.").  Lamkin Decl., ¶8 (setting forth $22,517.15 in fees and costs).

Even setting aside Mr. Rothschild's conduct, Mr. Rothschild's declaration should be stricken because DVS has failed to establish that he is a person of skill in the art ("POSITA").  *United States v. Real Prop.*, 763 F. Supp. 2d 1175, 1186 n.77 (C.D. Cal. 2011) ("The party offering the expert bears the burden of establishing that Rule 702 is satisfied.") (collecting cases); *Lust by & Through Lust v. Merrell Dow Pharm.*, 89 F.3d 594, 598 (9th Cir. 1996) (accord).

It is true that inventors are "typically" presumed to be POSITA, but here that presumption has been rebutted.  *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1313

(Fed. Cir. 2005) (*en banc*) (inventors are typically persons skilled in the field of the invention).  Mr. Rothschild appears to have no experience in the pertinent art, does not have a computer science degree, and cannot cite to any experience that qualifies him as an expert in the pertinent art.  Rothschild Rough Depo Tr., 8:5-10:16.  Moreover, as discussed herein, the '860 Patent fails to contain any actual technical disclosures, further evidencing the named inventor's lack of knowledge in the art. *See Sport Dimension, Inc. v. Coleman Co.*, No. CV 14-00438 BRO (MRWx), 2015 U.S. Dist. LEXIS 192011, at *7 (C.D. Cal. Jan. 29, 2015) ("Mr. Bressler cannot testify as an expert witness unless he 'is qualified as an expert *in the pertinent ar*t'") (emphasis in the original); *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356 (Fed. Cir. 2008).)[2]

   Finally, Mr. Rothschild admitted that DVS' counsel wrote his entire declaration. Rothschild Rough Depo Tr., 40:21-41:2.  It's quite clear from Mr. Rothschild's brief deposition, that he had no familiarity with the contents of his declaration. *See, e.g., id.*, at 11:1-12:17, 21:9-14, 22:12-19, 39:2-40:4.

---

[2] DVS states, "a POSITA of the subject matter claimed by the Patent-in-Suit is a person having a bachelor's degree in computer science or electrical engineering, or by equivalent education or training, and approximately 0-3 years of experience."  DVS OCCB, 10:10-12.  Defendant contends DVS' position is inconsistent with the law, as POSITA must have skill *in the pertinent art*.  *Sport Dimension,* 2015 U.S. Dist. LEXIS 192011, at *7.  As such, POSITA should have a bachelor's degree in computer science with an emphasis on encryption or data verification, or the equivalent in experience or training.

Mr. Rothschild's declaration should be stricken as proffered in contravention of this Court's Scheduling Order and because DVS has failed to meet its burden to establish that Mr. Rothschild is an expert under Rule 702.  Finally, because DVS and Mr. Rothschild's conduct prevented a fair deposition, DVS should pay Encyro's fees and costs associated with said deposition, $22,517.15.  Lamkin Decl., ¶8.

## II.  EACH OF THE FOUR, POSSIBLY FIVE, CLAIM CONSTRUCTION ISSUES SHOULD BE RESOLVED IN DEFENDANT'S FAVOR

### A. The Module Generating Assembly is Comprised of Hardware

The Parties have agreed that the claimed system is at least partially composed of hardware.  Lamkin Decl., Exh B (third point), Exh D, at 4.  The debate before the Court is whether the hardware portion includes the module generating assembly.  DVS OCCB, at 11:18-22.  DVS' refusal to acknowledge a fact it was desperate to establish in the prosecution history is a tad on the nose.  During prosecution, Mr. Rothschild told the USPTO that the module generating assembly "must contain hardware".  '860 Patent, PxHx, Dkt. No. 31-3, at DVSENC_00000268.  In litigation, Mr. Rothschild, the owner of DVS, attempts to duck his own representations to the USPTO:

> Q. Okay. In general, do you make an effort to make truthful statements to the USPTO during the prosecution of your patents?
>
> A. Absolutely and unequivocally.
> . . .
> Q. So you understand that this [Exhibit] is an amendment admitted by applicant [Rothschild] in the prosecution history of the '860 patent; correct?

A. I do.

. . .

Q. I'm reading the last line on the first page.  It says "Therefore, properly construed, the claimed module generating assembly must include hardware." Do you see that line, sir?

A. I do.

Q. Is that the truth?

A. I don't understand the question.

Q. This was a statement submitted on your behalf to the United States Patent and Trademark Office. Is it a true statement?

A. It is a statement that was submitted in the application, Ms. Lamkin.

Q.  Sir, my question is this: Is it a true statement?

A. It is a statement as was submitted in the application.

Q. Sir, it's a yes-or-no question. Is it true?

A. I've given you – I've given you my answer, Ms. Lamkin.

Rothschild Rough Depo Tr., 14:9-12, 16:15-18, 17:9-18:2.

Mr. Rothschild's deposition gymnastics aside, he told the USPTO that the module generating assembly "must" contain hardware, and the public is entitled to hold him to his word.  *Teva Pharm. USA, Inc. v. Sandoz, Inc*., 789 F.3d 1335, 1344 (Fed. Cir. 2015); *Springs Window Fashions LP v. Novo Indus., L.P*., 323 F.3d 989, 995 (Fed. Cir. 2003); *Infinity Comput. Prods. v. Oki Data Ams., Inc*., 987 F.3d 1053, 1059 (Fed. Cir. 2021).

### B. "Module Generating Assembly" is an Indefinite Term

The term "module generating assembly," present in every asserted claim, is indefinite because it is a means-plus-function term, and the specification fails to clearly link the term to a sufficient disclosure in the specification.

The claim term, "a module generating assembly" nested within the functional claim language "structured to receive at least one verification data element corresponding to the at least one entity and create said at least one digital identification module," is a black box that performs claimed functions; it is purely functional claiming.  Claim 1, lim[b].  The claim language fails to provide any structure for performing the claimed function.  As such, the module generating assembly term is a means-plus-function term.[3] *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1351 (Fed. Cir. 2015) (*en banc*); *Rain Computing, Inc. v. Samsung Elecs. Am., Inc.*, 989 F.3d 1002 (Fed. Cir. 2021).

As explained in *Williamson* and applicable here, "'module' is simply a generic description for software or hardware that performs a specified function.  Generic terms such as 'mechanism,' 'element,' 'device,' and other nonce words that reflect nothing

---

[3] There is a presumption, though not a "strong presumption," that a term that does not use "means" is not a means-plus-function term. But that presumption is overcome, where, as here, the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (*en banc*).

more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite structure' and therefore may invoke § 112, para. 6." *Williamson*, at 1350-51; *Rain*, at 1006.

As here, "assembly" is also considered a nonce word. *MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, 1344 (Fed. Cir. 2019). "Indeed, 'assembly' is akin to other terms, like 'mechanism,' 'element,' and 'device,' . . . because they 'typically do not connote sufficient definite structure.'" *Pelican Int'l Inc. v. Hobie Cat Co.*, No. 20-cv-2390-BAS-MSB, 2022 U.S. Dist. LEXIS 18400, at *19 (S.D. Cal. Feb. 1, 2022) (*quoting Williamson*, at 1350).

Tellingly, DVS fails to point to any structure in the claim.  DVS OCCB, 11:12-13:7.  Of concern, instead DVS repeats the same argument made in its opposition to Encyro's bond motion, *i.e.*, "if Defendant's interpretation of the PTAB's ruling was correct, why would the PTAB have determined the term (as Defendant suggests) invalid for failure to provide a structure, yet neither institute a petition to declare the claim invalid nor declare the claim invalid for this reason."  DVS OCCB, 12:27-13:2; Opp. Bond Mot., Dkt. No. 26, 15:10-13.  This argument is legally frivolous.  DVS is represented by 4 patent litigators, 2 of said litigators are admitted to practice before the

USPTO.[4]  Each is responsible for knowing patent law, *i.e.*, that the PTAB is not

permitted to invalidate a claim as indefinite nor is it permitted to institute an IPR if it—

as here—finds the term at-issue indefinite. *Samsung Elecs. Am., Inc. v. Prisua Eng'g

Corp.,* 948 F.3d 1342, 1350 (Fed. Cir. 2020) (*citing Cuozzo Speed Techs., LLC v. Lee*,

136 S. Ct. 2131, 2141-42, 195 L. Ed. 2d 423 (2016).)   The PTAB did the only thing it

was permitted to do, told the world that the asserted claims of the '860 Patent were

means-plus-function with no corresponding structure, *i.e.,* invalid.  IPR Decision, Dkt.

No. 22-7.

        If determined to be means-plus-function, the specification must "clearly link"

the functional claim language to a disclosed corresponding structure in the

specification.  *Williamson,* 792 F.3d, 1352.  Both parties agree that the functional

language is: "[i] receive at least one verification data element corresponding to the at

least one entity and [ii] create said at least one digital identification module".  DVS

RCCB, at 13:11-13.   But there is nothing that "clearly links" these functions to a

structure in the specification, the only "structure" that performs that function is a

generic black box called a "module generating assembly". *See, e.g.*, '860, 3:46-49.  A

generic black box is not sufficient structure; a generic computer or server can do lots of

---

[4] In responding to this same argument in its Reply, Encyro noted that DVS had 3
patent litigators.  Reply, Dkt. No. 27, 7:25.  But this number omits DVS' General
Counsel, who is also a patent litigator admitted before the USPTO.

things, they do not limit the claims to a "corresponding structure".  As explained by the Federal Circuit in *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 521 F.3d 1328 (Fed. Cir. 2008), "In cases involving a computer-implemented invention in which the inventor has invoked means-plus-function claiming, this court has consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor."  *Id.*, at 1333.  "If the specification is not clear as to the structure that the patentee intends to correspond to the claimed function, then the patentee has not paid the price but is attempting to claim in functional terms unbounded by any reference to structure in the specification."  *Id.* (*quoting Diagnostics Corp. v. Elekta AB,* 344 F.3d 1205, 1211 (Fed. Cir. 2003).); *Net MoneyIN, Inc. v. VeriSign, Inc.,* 545 F.3d 1359, 1367 (Fed. Cir. 2008).

It's helpful to consider when a "general purpose computer" might provide sufficient structure.  One example is the "rare" *Katz* exception. *See Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012) (discussing "the rare circumstances where any general-purpose computer without any special programming can perform the function that an algorithm need not be disclosed," and *citing Katz Interactive Call Processing Patent Litig. v. Am. Airlines, Inc. (In re Katz Interactive Call Processing Patent Litig.),* 639 F.3d 1303 (Fed. Cir. 2011).)  In *Katz,* the claimed functions performed were themselves generic, *i.e.*, "processing, receiving, and storing" data. *Ergo*, at 1365.  As such, "the disclosure of a general-purpose

computer was sufficient". *Id; Katz*, 639 F.3d, 1316.  Again, it is rare that a claimed

function is so generic that a general purpose computer can provide the structure. *Ergo*,

at 1364-65.

All of this makes sense.  In the rare instance when a claim contains simple

computer operations like sending and receiving data and nothing more, the structure

that accomplishes those functions can be a general purpose computer.   Put another

way, "a microprocessor can serve as structure for a computer-implemented function

only where the claimed function is coextensive with a microprocessor itself." *EON*

*Corp. IP Holdings LLC v. AT&T Mobility LLC*, 785 F.3d 616, 621-22 (Fed. Cir. 2015).

Here, there can be no sound argument that the admitted functions are "coextensive"

with a processor.  *See Eon*, at 621-22; *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d

1359, 1366-68 (Fed. Cir. 2008); *Ironworks Patents LLC v. Samsung Elecs. Co.*, 798 F.

App'x 621, 628 (Fed. Cir. 2020).  Here, the claimed function—as agreed by both

Parties—is "receive at least one verification data element corresponding to the at least

one entity and create said at least one digital identification module".  As such, they do

not fall under the "rare" *Katz* exception.

DVS' claims must be bounded by a specific structure, else they are boundaryless

and thus indefinite. *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 901, 134

S. Ct. 2120, 2124 (2014).[5]

In his declaration, Mr. Rothschild states that the module generating assembly could be a computer application, a web server, a file server, or "or other computing device". Dkt. No. 31-4, ¶¶21-22. Of course, none of these generic applications or devices constitute a specific "corresponding structure" because a "general purpose computer" cannot be a corresponding structure where, as here, the claimed function is not basic general purpose computer functions. *Williamson,* at 1352; *Aristocrat,* 1333; *Rain*, 989 F.3d, at 1007; *Ergo*, 1364-65.

Further, Mr. Rothschild's position conflicts with the intrinsic record. "In at least one embodiment, however, the module generating assembly is at least partially integrated within the computer application". '860 Patent, 2:19-22, 7:60-66, 8:31-35. This is, the very embodiment cited by DVS in its claim construction disclosure[6] and the very embodiment called for by the claim language: "in at least another embodiment, the module generating assembly is at least partially integrated within the computer application, such as the word processing program, for example, as a feature, option, or plug-in. In such an embodiment, the digital identification module need not

---

[5] "Indefiniteness is a question of law this court reviews de novo." *In re Walter*, 698 F. App'x 1022, 1025 (Fed. Cir. 2017) (*citing Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1377 (Fed. Cir. 2015) (*citing Interval Licensing LLC v. AOL, Inc.,* 766 F.3d 1364, 1370 (Fed. Cir. 2014)).)

[6] JCCS, Dkt. No. 28, 4:15-16, *citing* '860, 7:48-8:62.

be imported, but is rather created, at least in part, by the module generating assembly." Dkt. No. 28, 4:15-16; '860, 8:31-38.  The embodiment called for in the claim (the one that creates the digital identification module, lim[b]) is the embodiment that "is at least partially integrated within the computer application, such as the word processing program". Dkt. No. 28, 4:15-16; '860, 8:31-38, Claim 1, lim[b].

Based on the intrinsic record and DVS' own evidence, the module generating assembly that creates the digital identification module (Claim 1, lim[b]) must be able to be "at least partially integrated within the computer application".  '860, 8:31-38. But it makes no sense to opine that "a computer application, a web server, a file server, or other computing device" can be "at least partially integrated within the computer application".  How can an application (like Microsoft Word) be integrated into itself, Microsoft Word, the example given in the patent (5:1-5)?  Or a server integrated into Microsoft Word?  Its semantically (Word into Word) and technologically (server into Word) impossible.

Again, Mr. Rothschild's refusal to respond to questions on this issue is telling. Indeed, he is so unfamiliar with his own declaration that he refuses to answer questions because verifying the statements in his own declaration would be, according to him, speculation:

> Q. To be clear, then, in paragraphs 21 and 22, Mr. Rothschild, is it true that you are saying the module generating assembly may be a computer application or web server, a file server or other computing device?

A. I know you want, Ms. Lamkin, me to answer to your questions which would call for speculation. My answer is it is what it says in the declaration. I will not speculate.

Q. Sir, I'm not asking you to speculate. I'm asking you to read your own sworn declaration.  I'm asking you, in paragraphs 21 and 22, is it your opinion that the module generating assembly might be a computer application or a web server running on a device or a file server or other computing device?

A. My opinion, Ms. Lamkin, is as stated in those paragraphs, which is part of the declaration of Leigh Rothschild in support of the Plaintiff's Opening Claim Construction Brief, as you defined it, Exhibit 1.
. . .
Q. I'll give you one more opportunity to answer the question, Mr. Rothschild. In paragraphs 21 and 22 of your sworn declaration, document number 31-4, is it your opinion that the module generating assembly may be a computer application or a web server running on a device or a file server or other computing device?

A. If the court reporter would like to read back my testimony, as I previously answered this question twice, that would be my answer.
. . .
Q. If you could please turn to Column 2, lines 8 to 22 [of the patent], which I will read into the record. "In at least one embodiment, however, the module generating assembly is at least partially integrated within the computer application, e.g., an interactive word processing program." Do you see that, sir?

A. I do.

Q. Do you have an understanding of what that passage means in your patent?

A. Yes, I do.

Q. Can you please explain it?

A. It means that in at least one embodiment, however, the mobile generating assembly is at least partially integrated within the computer application, e.g., an interactive word processing program.  In other words, it means what it says. It's

the plain and ordinary meaning as placed in the patent application.

. . .

Q. Okay. So in your opinion, the module generating assembly may be a computer application or a web server returning on a device; correct?

A. That is what it states, Ms. Lamkin.

. . .

Q. Okay. Now, with that in mind, could we please turn back to Exhibit 2, the '860 patent. In the highlighted language, you write "In at least one embodiment, however, the module generating assembly is at least partially integrated within the computer application." Do you see that, sir?

A. I do.

. . .

Q. How is it possible to have a computer application integrated within a computer application?

A. First of all, it means what it says, as provided in the specificity of patent number 9,054,860.[7]

. . .

Q. Mr. Rothschild but I'll give you another opportunity. Could you please explain how it's possible to have a computer application partially integrated within a computer application?

A. I testified that in paragraphs 21 through 25 in my declaration, that is explained. If you would like me to read paragraphs 21 through 25 into the record so that you have it before you, I'd be more than happy to do that now. Just tell me when to start, Ms. Lamkin.

Q. Mr. Rothschild, I'll give you one more opportunity to answer the question that I'm asking, that is: How is it possible to have a computer application partially integrated within a computer application?

A. If the court reporter would choose to read back my testimony, that would be my -- on this matter, as per your question, that would be my answer, for the third

---

[7] Mr. Rothschild then provides a long combative answer that doesn't answer the question and is too long to place herein given the page limitations.  *See* Exh C, at 26:1-27:4.

time.

Rothschild Rough Depo Tr., 21:5-22:6, 23:9-27:23; *see also id.*, at 28:16-32:14 (asking how a server can be "partially integrated" into an application, to the same effect).

In addition to the portions of the patent specification DVS itself identified as providing corresponding structure, DVS also identified Figure 7 as providing corresponding structure for the module generating assembly.  JCCS, Dkt. No. 28, 4:14.  DVS' position is inconsistent with the intrinsic record.  Figure 7 depicts "generally" the process of "digital identification verification".  '860, 7:48-50.  The module generating assembly (50) isn't even depicted in Figure 7.

In deposition, Mr. Rothschild again refused to answer direct questions on the issue:

Q. Where is the module generating assembly 50 in Figure 7 of the '860 patent, Mr. Rothschild?

A. Could you repeat the question?

Q. Where is module generating assembly 50 in Figure 7 of the '860 patent?

A. Well, referring to the drawing, it is, as is stated, Ms. Lamkin. It's self evident.

Q. Your testimony, sir, is that it's self evident that module generating assembly 50 is in Figure 7?

A. My testimony is the exhibit, as – the exhibit is as it was published in my declaration as Figure 7. Nothing more, nothing less.

Q. I'll ask the question one more time, Mr. Rothschild. Can you please explain where module generating assembly 50 is depicted in Figure 7 of the '860 patent?

A  My answer is that Figure 7, as was reproduced in my declaration, is as it stands, is as it was published, and is self explanatory.

Rothschild Rough Depo Tr., 34:5-23.

In addition to his refusal to answer questions about his own declaration and central to claim construction, Encyro had prepared dozens of other questions material to this issue, but Mr. Rothschild refused to sit beyond a single hour.  Mr. Rothschild's declaration should be stricken, and his company DVS sanctioned under Rule 30(d)(2).

Regardless, DVS' position, that the module generating assembly could be "a computer application, a web server, a file server, or other computing device," is *contra* well-established law; a corresponding structure cannot be a general computer.  And the position makes no sense in the context of the intrinsic record. DVS citation to Figure 7 fares no better, it does not even mention the module generating assembly (50). Further, Rothschild's declaration should be disregarded because it contradicts the intrinsic record. *See BASF Agro B.V. v. Makhteshim Agan of N. Am., Inc*., 519 F. App'x 1008, 1018 (Fed. Cir. 2013) ("Extrinsic evidence cannot vary the terms of the claims or otherwise contradict the intrinsic record. Even testimony from a qualified expert has little probative value if it is inconsistent with the intrinsic record.") (citations omitted).

The asserted claims are invalid as indefinite.  The module generating assembly is a means-plus-function term with no corresponding structure disclosed in the

specification.

## C. The "Partially Associate" Term is Indefinite

The asserted claims disclose, "at least one digital identification module comprising at least one primary component structured to at least **partially associate** said digital identification module with said at least one entity". '860, 9:16-19 (emphasis added).   But the patent offers no "objective boundaries" for the term "partially associate".  As such, the term is indefinite.  *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).  As the United States Supreme Court has explained, "a patent does not satisfy the definiteness requirement of § 112 merely because a court can ascribe some meaning to a patent's claims."  *Id*. (*quoting Nautilus*, 134 S. Ct. at 2130).  "The claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art."  *Id*. Here, the specification provides zero explanation, zero meaning, zero "objective boundaries" for the term.   *See, e.g., Rillito River Ltd. Liab. Co. v. Bamboo Indus. Ltd. Liab. Co*., No. 2:17-cv-00181-TLN-CKD, 2018 U.S. Dist. LEXIS 154933, at *26 (E.D. Cal. Sep. 10, 2018) (finding the term "partially surround' indefinite where the patent's specification failed to provide objective boundaries for the term).

As Professor Hughes explains, in the world of data or identity verification, one cannot "partially associate" an electronic signature with the signatory.  Hughes Decl., ¶¶27-32.  Association happens mathematically, and you cannot partially associate a

signatory with a document mathematically. *Id.*  You can't do only part of the math and have an actual verification.  *See id.*

DVS devotes a single paragraph to this issue in its opening brief.  DSV OCCB, 15:26-16:7.  DVS' argument is as follows, "To the contrary, the '860 Patent makes abundantly clear, and a POSITA would agree, that the primary component is structured in a manner, such as being in the form of an image or graphical representation of a signature, which is both part of the digital identification module and indicates that the signatory entity provided such image or graphic." *Id.* (*citing* Rothschild Decl., ¶28). This language is impenetrable.  And ¶28 in Mr. Rothschild's declaration is simply the same language cut-and-pasted (as is much of Mr. Rothschild's declaration.  It appears that DVS' counsel simply pasted some of the brief into a declaration and asked Rothschild to sign it[8]).

Encyro had no opportunity to depose Mr. Rothschild regarding this term.

The "partially associate" term is indefinite as the intrinsic record provides no "objective boundaries" for the term.

### D. The Asserted Claims Are Invalid as the Patentee Was Not "In Possession" of Limitation [e] When the '860 Patent Was Filed

Lack of written description is an issue that generally arises when a patentee

---

[8] *E.g.*, Compare Rothschild Decl., 10:26-11:12 *with* DVS OCCB, 11:20-12:4; Rothschild Decl., 11:13-18 with DVS OCCB, 12:7-12.

amends or attempts to amend his claims during prosecution.  If the new claim language (a new invention) is not disclosed in the specification as originally filed, the inventor was not "in possession" of the newly added invention when he filed his patent.  *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en banc*).  The basic idea is that you can't grab new stuff during prosecution because the date of filing determines the date of invention for priority disputes.  *See Ariad*, at 1357 ("a written description analysis occurs as of the filing date sought").

To overcome an Examiner's rejection, the patentee added limitation [e] during prosecution. Encyro OCCB, 6:10; '860 PxHx, Dkt. No. 31-1, at DVSENC_00000039, 97-98, 167.  If the ideas in limitation [e] were not in the patent when filed, the claims are invalid for failing to meet the "written description" requirement of 35 U.S.C. ¶112(1).

Materially, neither party believes limitation [e] needs to be construed. DVS OCCB, at 16:21-22, 17:14-15; Encyro OCCB, 2417-19.  Thus, the Court need merely look at limitation [e] and compare said limitation to the specification and ask, is the invention in limitation [e] also in the specification?  If not, the term is invalid because applicant Rothschild tried to claim an idea not in his patent as-filed.  *D Three Enters., LLC v. SunModo Corp.,* 890 F.3d 1042, 1047 (Fed. Cir. 2018).

The limitation at-issue reads, "said at least one digital identification module is cooperatively structured to be embedded within only a single electronic file".  '860,

9:20-22. But the language applicant Rothschild added is not in the specification; *i.e.*, there is nothing in the specification as filed that discloses the new invention, limitation [e]. DVS has not, cannot, point to any teachings in the specification that covers technology that limits the embedding of a digital identification module to a single electronic file, and the term "cooperatively structured" doesn't even appear in the specification outside the (new) claims.

Tacitly admitting that the patent contains no disclosure in support of the new invention added to overcome prior art, DVS provides a 3-sentence analysis of the written description issue.  DVS OCCB, 22:2-4.  Indeed, *citing Nautilus*, DVS again appears to confuse the written description requirement with the definiteness requirement.  *Id.*, at 22:8-11; *see also Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 920 (Fed. Cir. 2004) (written description and definiteness are different requirements under Section 112).

Instead of demonstrating written description of the actual claim language, DVS attempts to water down the claim, proposing the following construction for limitation [e]: "having a clearly defined structure or organization to permit incorporation or placement within only a single electronic file at a time".  JCCS, Dkt. No. 28, 7:4-7. Almost every single word in limitation [e] is both changed and diluted.  For example, changing "embedded within only a single electronic file" to "within only a single electronic file ***at a time***".   And "digital identification module is cooperatively

structured" to "a clearly defined structure or organization". JCCS, Dkt. No. 28, 7:4-7.

Materially, DVS' leading evidence in support of its construction is undated dictionary definitions. But, any evidence in support of claim construction must be from the date of invention, *i.e.*, 2008. *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc*., 334 F.3d 1294, 1299 (Fed. Cir. 2003). DVS' undated dictionary definitions plucked from current online sources are inadmissible. *Id*., at 1299.

DVS' alleged intrinsic evidence in support of its own construction is contained in two paragraphs in its opening brief. DVS OCCB, 19:3-18, 21:25-22:11. As to the first paragraph, DVS' cited language is salmagundi, containing a smattering of unrelated concepts and not even remotely touching upon limitation [e]. *See id*., 19:3-18. DVS' second paragraph is, again, out of touch with the actual record. DVS alleges that the Examiner determined the written description requirement to have been met for Claims 16 and 18, and since—DVS alleges—Claims 16 and 18 are the same as limitation [e], the issue is *res judicata*. *Id*., at 21:25-22:11. But the pages cited by DVS in the prosecution history pertain to indefiniteness, not written description. DVS OCCB, at 21:26 (*citing* PxHx, Dkt. No. 31-3, at 351-58); *see* PxHx, Dkt. No. 31-3, at 352. The Examiner did not consider the written description issue.

Limitation [e] does not need to be construed. Nothing in the specification discloses a technology that "cooperatively structures" a "digital identification module" and a "single electronic file". Nothing in the specification discloses a technology that

limits the embedding of a digital identification module to a single electronic file.

If the Court believes it would be helpful to construe limitation [e], Encyro believes Rothschild's statements to the USPTO must control said construction. *See* Encyro OCCB, at 25:12-26:23.

Rothschild devotes 5 pages (11 paragraphs) of his declaration to limitation [e]. Dkt. No. 31-4, ¶¶26-37. Encyro was prevented from asking Mr. Rothschild any questions regarding these opinions. Encyro was prejudiced by DVS/Mr. Rothschild's conduct.

## III.   CONCLUSION

For the reasons stated above and in Encyro's opening brief, Encyro respectfully asks that the terms at-issue be construed in accordance with the cited law and intrinsic record, *i.e.*, according to Encyro's proposed constructions.

Encyro also asks that DVS be ordered to pay Encyro's fees and costs associated with Mr. Rothschild's deposition.

Finally, Encyro asks that Mr. Rothschild's declaration be excluded as submitted in violation of this Court's Standing Order and the adopted Patent Local Rules. To be clear, Encyro is not concerned with "substance" of Mr. Rothschild's declaration. Aside from failing to qualify as POSITA, Mr. Rothschild's declaration is devoid of actual expert analysis and is merely copied from DVS' opening brief. His deposition responses and conduct suggest that Mr. Rothschild has not even read his declaration.

Further, the Rothschild declaration frequently conflicts with the intrinsic record.  On that basis alone, it cannot be considered.  *See BASF Agro,* 519 F. App'x, at 1018.  Plainly stated, Mr. Rothschild's declaration is characteristic of the hundreds of meritless lawsuits he has filed.  And until Mr. Rothschild is appropriately sanctioned and then held accountable to said sanctions, his conduct will continue.

*Rachael D. Lamkin*

Rachael D. Lamkin

Def's RCCB

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of December, 2022, a true and accurate copy of

the above and foregoing:

**DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

**LAMKIN DECL ISO**

**SUPPORTING EXHIBITS**

Was served upon counsel via the Court's ECF system.


*Rachael D. Lamkin*
Rachael D. Lamkin