

# Transcript of Leigh Rothschild

**Date:** December 22, 2022
**Case:** Digital Verification Systems, LLC -v- Encyro, Inc.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

## Page 1

```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE CENTRAL DISTRICT OF CALIFORNIA

DIGITAL VERIFICATION SYSTEMS,
LLC,
       Plaintiff,              Case No.
  v.                           5:22-cv-00686-JWH-SP
ENCYRO, INC.,
       Defendant.
_____

                D E P O S I T I O N
                        o f
                  LEIGH ROTHSCHILD,
              taken on behalf of Defendant

DATE:     December 22, 2022
TIME:     4:03 p.m. to 5:02 p.m. EDT
PLACE:    - REMOTE -
BEFORE:   Dawn A. Hillier, RMR, CRR
          Stenographic Reporter
          Notary Public - State of
          Maryland, at Large
JOB NO:   475803
```

## Page 2

```
APPEARANCES:   ALL PARTIES ATTENDING REMOTELY

ON BEHALF OF PLAINTIFF:
     SHEA PALAVAN, ESQUIRE
     PALAVAN & MOORE, PLLC
     5353 West Alabama Street, Suite 303
     Houston, TX 77056
     713.398.1894
     shea@houstonip.com

ON BEHALF OF DEFENDANT:
     RACHAEL D. LAMKIN, ESQUIRE
     LAMKIN IP DEFENSE
     One Harbor Drive, Suite 300
     Sausalito, CA 95965
     916.747.6091
     rdl@lamkinipdefense.com

ALSO PRESENT:
     James Hughes
     Shegaw Mekonen, Planet Depos technician
```

## Page 3

```
                    INDEX                         PAGE
WITNESS - LEIGH ROTHSCHILD
  EXAMINATION BY MS. LAMKIN                         7
REPORTER'S CERTIFICATE                             47

                    EXHIBITS
Exhibit 1   Declaration of Leigh M.                 7
            Rothschild in Support of
            Plaintiff's Opening Claim
            Construction Brief
Exhibit 2   U.S. Patent No. 9,054,860              11
Exhibit 3   Non-provisional Utility                14
            Patent Application Transmittal
            Letter, U.S. PTO 12/006457
Exhibit 4   Amendment PxHx                         16

        REPORTER'S KEY TO PUNCTUATION:
  --   At end of question or answer references
       interruption.
  ...  References a trail-off by the speaker.
       No testimony omitted.
  "Uh-huh" "Um-hum"  References affirmative sound.
  "Huh-uh" "Um-um"   References negative sound.
```

## Page 4

1  LEIGH ROTHSCHILD,
2  was called as a witness and, having first been duly
3  sworn, was examined and testified as follows:
4       THE WITNESS:  Yes, I do.
5       STENOGRAPHIC REPORTER:  Thank you.
6       MR. PALAVAN:  All right.  Before we get
7  started, I just want to put on the record that we
8  do have a hard stop at 5:00 Eastern time for
9  Mr. Rothschild.  He has other commitments.
10      But with that said, I will turn it to defense
11 counsel to begin.
12      MS. LAMKIN:  I just want to state for the
13 record, we were not informed that Mr. Rothschild
14 was granting a mere one-hour deposition for his
15 late-filed declaration.
16      Is that true, Mr. Palavan, that you did not
17 inform me that Mr. Rothschild would only be sitting
18 for an hour?
19      MR. PALAVAN:  If I did not, that's correct.
20      MS. LAMKIN:  You did not.
21      MR. PALAVAN:  Okay.  I can't argue with your
22 assertions, but yes.
23      THE WITNESS:  For the record, I informed
24 Mr. Palavan numerous times, both in writing and
25 orally.

Page 5

1  MR. PALAVAN: Correct.
2  MS. LAMKIN: Okay. I just -- I want you to
3  understand the gravity of this, Mr. Rothschild.
4  Your declaration was not properly disclosed. Just
5  a minute. I can't see you. Let me get...
6  Your declaration was not properly disclosed
7  under the scheduling order, and, therefore, I
8  offered them a choice, your counsel a choice,
9  either withdraw your declaration or offer you for
10  deposition, so that we could ameliorate the
11  prejudice my client is suffering because we had no
12  knowledge, under the court's scheduling order, that
13  you would be submitting a declaration.
14  Your counsel, a mere two days ago, offered you
15  up for deposition, questions about your 18-page
16  declaration, because, again, it was not disclosed.
17  I just want you to understand, Mr. Rothschild,
18  that if you end this deposition before I'm allowed
19  to fully depose you as to the contents of your
20  late-filed declaration, that it will be excluded
21  under the local rules and under the court's
22  scheduling order.
23  So this is completely your decision,
24  Mr. Rothschild. If you choose to end the
25  deposition in an hour, and now 54 minutes, it's

Page 6

1  highly likely the court will exclude your
2  deposition -- your declaration.
3  Do you understand that?
4  THE WITNESS: I understand, Ms. Lamkin, that
5  you're not a judge, you're not a federal judge,
6  you're an attorney for the other side. Your
7  statements are taken, not necessarily -- not
8  necessarily correct. I rely on my counsel. I
9  don't know anything about exclusion or what the
10  court will do. Your statements are conjecture, it
11  seems to me, at this time.
12  I did inform counsel, both orally and in
13  writing, that I would be available only for an hour
14  for this -- for this deposition. I'd be more than
15  happy to reschedule and give you additional time,
16  if that's what the court provides.
17  If you're allowed to have additional time, I
18  want to state on the record that there would be
19  additional time made before the hearing, which I
20  believe is in January.
21  So I don't know anything about exclusion, and
22  your statements do not seem to be correct to me.
23  But I'm not a judge, nor are you. So I just want
24  to state again, for the record, for the record,
25  that I'm more than happy to be deposed again if

Page 7

1  that is what you -- if that is what is allowed by
2  the court, or the rules, or the rules. So I would
3  make additional time available. So let's make that
4  clear.
5  MS. LAMKIN: Mr. Rothschild, there is no more
6  time because our responsive claim construction
7  brief is due tomorrow.
8  Nonetheless, I have advised you of the
9  potential outcome for your cutting off the
10  deposition before I'm actually able to question you
11  about the contents of your declaration.
12  Now, let's get to the contents of your
13  declaration.
14  EXAMINATION
15  (Exhibit 1 was marked.)
16  BY MS. LAMKIN:
17  Q  I have marked as Exhibit 1 -- you've only
18  given me now 50 minutes, Mr. Rothschild, so let me
19  proceed. I have marked as Exhibit 1 a document, docket
20  31-4, the Declaration of Leigh Rothschild in Support of
21  Plaintiff's Opening Claim Construction Brief.
22  Can you please reference Exhibit 1,
23  Mr. Rothschild?
24  A  I have the declaration printed out in front of
25  me, Ms. Lamkin.

Page 8

1  Q  Okay. Do you recognize this document,
2  Mr. Rothschild?
3  A  I do. But Exhibit 1 is not shown -- for the
4  record, Ms. Lamkin, Exhibit 1 is not being shown on the
5  screen. So I only have a document in front of me that's
6  not marked Exhibit 1, but I printed it before the
7  deposition, that's marked as my declaration. But
8  there's no documents on the screen, as well as reported
9  that there would be -- I thought it was reported that
10  there would be before the -- okay. So now the document
11  is on the screen.
12  So please don't ask me, Ms. Lamkin, about
13  documents that are not on the screen, to reference them.
14  I will point out when they're not.
15  Q  Mr. Rothschild, as with standard practice, and
16  as we did last time in the deposition, the exhibits were
17  placed in the Chat. It is in your Chat on your Zoom.
18  Now, again, please do not be argumentative on
19  the record. I have limited time.
20  Do you recognize the document marked as
21  Exhibit 1?
22  A  I do.
23  Q  What is it?
24  A  And for the record, I'm not being
25  argumentative. That's your opinion, not mine.

Page 9

1  It is, as it states, the Declaration of Leigh
2  Rothschild in Support of the Plaintiff's Opening Claim
3  Construction Brief.
4      Q   Okay.  Would you please look at paragraph one?
5  I'll read the line into the record.  It says [as read]:
6  I make this declaration based upon my personal
7  knowledge.
8          Do you see that statement, Mr. Rothschild?
9      A   I do.
10     Q   What does that mean?
11     A   I make this declaration based on my
12 personal -- it means what it says, Ms. Lamkin.
13     Q   Do you have an understanding of what that
14 means, Mr. Rothschild?
15     A   Yes, ma'am.  It means what it says.
16     Q   That the facts stated in your declaration are
17 facts that you've personally verified?  Do you
18 understand that?
19     A   It means what it says, Ms. Lamkin.
20     Q   I'm going to give you one last opportunity to
21 answer the question that I'm asking.  What is your
22 understanding of the meaning of that statement, "I make
23 this declaration based on my personal knowledge"?
24     A   It means, and I quote, "I make this
25 declaration based on my personal knowledge, and, if

Page 10

1  called to testify to the truth of the matters set forth
2  herein, could and do so competently."
3      Q   If you could please turn to paragraph three in
4  Exhibit 1.  I'll read it into the record.
5          "I understand that Plaintiff contends that, at
6  least at the time of the filing and prosecution of the
7  '860 patent, a POSITA of the subject matter claimed by
8  the Patent-in-Suit is a person having a bachelor's
9  degree in computer science or electrical engineering."
10         Mr. Rothschild, do you have a bachelor's
11 degree in computer science or electrical engineering?
12     A   I do not.
13     Q   Okay.  I'm going to read into the record the
14 field of invention in the '860 patent.  I am reading
15 from the '860 patent, Column 1, line six, Field of the
16 Invention.  It says, "The present specification is
17 generally directed to a digital verified identification
18 system and method having at least one digital
19 identification module structured to be embedded or
20 otherwise disposed within one or more electronic files."
21         Mr. Rothschild, what was your experience in
22 the field of invention at the time of invention, 2008?
23     A   Ms. Lamkin, the part you quoted was not on the
24 screen, one more time.  The document you're referencing
25 is not in front of me, nor on the screen.  We seem to

Page 11

1  have a lag in the documents on the screen versus your
2  statements.
3      Q   Mr. Rothschild, to save time, I was just
4  reading into the record.  There's no document on the
5  screen.  I'll now offer it.  I'm offering as Exhibit 2
6  patent number 9,054,860.
7          MS. LAMKIN:  If the technician could please
8  turn Exhibit 2 to the first page after the figures.
9  That would be page 11, please.  Thank you.
10         (Exhibit 2 was marked.)
11 BY MS. LAMKIN:
12     Q   So, Mr. Rothschild, you see where it says
13 field of invention, Column 1, line six?
14     A   I'm looking, Ms. Lamkin.
15         I see field of invention.  Line six.  Could
16 you give me the first word of that sentence, please?
17     Q   "The present specification."
18     A   Yes.  I see it now.
19     Q   Okay.  What is your experience -- or what was
20 your experience in the field of invention in 2008?
21     A   In 2008, I was an inventor of various patents,
22 also a technical advisor to various entities.
23     Q   I'm asking specifically about the field of
24 invention for this patent, the patent-in-suit.  As to
25 the specific field of invention for the '860 patent,

Page 12

1  what was your experience in 2008?
2      A   I had knowledge of the art.
3      Q   Please explain that in depth.
4      A   I had knowledge of the art.  That's my
5  explanation.  I had knowledge of the art.
6      Q   What knowledge of the art did you have, sir?
7      A   Knowledge of the way digital verification
8  works.
9      Q   How did you obtain that knowledge?
10     A   By research.
11     Q   Can you please expand on that?
12     A   No, I can't.  It's many years ago.  I cannot
13 expand on it.  I had knowledge of the art.  I had been,
14 previously, a prolific and accomplished inventor.  I had
15 represented and given technical support to various
16 entities, and I had knowledge of this art.
17     Q   At this time, sitting in this deposition, you
18 cannot recall the specifics of your experience in the
19 field of the art for the '860 patent?
20     A   I cannot recall it with specificity.
21     Q   Okay.  Thank you, Mr. Rothschild.
22         Mr. Rothschild, if you could please, turning
23 back to Exhibit 1.
24     A   The document is lagging behind one more time,
25 Ms. Lamkin.

## Page 13

1  Q  Give him a moment, Mr. Rothschild. The
2  technician has to move to Exhibit 1.
3  A  Ms. Lamkin, you need to give him a moment as
4  you ask the questions.
5  Q  If you could please look at paragraph five,
6  Mr. Rothschild.
7  A  It's now on the screen, Ms. Lamkin.
8  Q  Do you see in paragraph five where you quote
9  the prosecution history of the '860 patent?
10  A  Yes, ma'am.
11  Q  Okay. Did you review personally the
12  prosecution history of the '860 patent as part of
13  drafting this declaration?
14  A  I'll have to read paragraph five.
15    I had previously reviewed. To answer your
16  question, yes.
17  Q  Yes, you reviewed the prosecution history of
18  the '860 patent as part of drafting your declaration
19  that is Exhibit 1?
20  A  I had reviewed it previously.
21  Q  So the discussion of the prosecution history
22  in your declaration is from memory?
23  A  I don't understand the question.
24  Q  Did you review the prosecution history of the
25  '860 patent while drafting your declaration?

## Page 14

1  A  I had reviewed it previously, as I just
2  testified.
3  Q  When did you review the prosecution history
4  previously?
5  A  I don't remember with specificity.
6  Q  Was it within a year?
7  A  I don't remember with specificity.
8  Q  It could be more than a year prior?
9  A  I don't remember with specificity.
10    MS. LAMKIN: I'm going to mark as Exhibit 3 a
11    document bearing Bates range DVSENC_17 to 61.
12    (Exhibit 3 was marked.)
13  BY MS. LAMKIN:
14  Q  Mr. Rothschild, have you seen Exhibit 3
15  before?
16  A  I need time to look at it. It just appeared
17  on the screen, Ms. Lamkin.
18    I don't really know if I've seen this with
19  specificity. I don't remember.
20  Q  You don't remember if you've seen Exhibit 3?
21  A  Do not.
22  Q  Okay. Do you generally recognize the document
23  as a prosecution history document?
24  A  I don't identify it any way except the
25  document that's on the screen. As it states, it is a

## Page 15

1  non-provisional utility patent application transmittal
2  letter.
3    If you scroll down, if the document person
4  could scroll down for me, please.
5    Signed by James Wetterling and Jennie Malloy,
6  or one of the two attorneys, for the applicant.
7    MS. LAMKIN: If you could ask the technician
8  to please turn to page 42. That's 42 on the pdf.
9  Thank you.
10  BY MS. LAMKIN:
11  Q  Mr. Rothschild, is that your signature on --
12  A  It is.
13  Q  Just a moment, please.
14    Mr. Rothschild, is that your signature on page
15  42 of Exhibit 3?
16  A  It is.
17  Q  Okay. Do you see above your signature where
18  it says [as read]: I hereby declare that all statements
19  made herein of my knowledge are true and that all
20  statements made of information and belief are believed
21  to be true?
22    Do you see that, sir?
23  A  I do.
24  Q  Is this the kind of declaration that you
25  submit in the prosecution history of a patent?

## Page 16

1  A  I don't quite understand the question.
2  Q  Do you --
3  A  Let me -- sorry. If I could finish.
4    I'm not a patent attorney, nor an attorney,
5  Ms. Lamkin, so I don't understand what your question is.
6  If you're asking me for a legal opinion, I would defer
7  to counsel, to patent counsel.
8  Q  Do you recognize this document,
9  Mr. Rothschild?
10  A  I see it now. I see it with my signature.
11  Q  The question was: Do you recognize this
12  document, Mr. Rothschild?
13  A  I recognize it as a document that I signed,
14  Ms. Lamkin.
15  Q  Okay. In general, do you make an effort to
16  make truthful statements to the USPTO during the
17  prosecution of your patents?
18  A  Absolutely and unequivocally.
19    MS. LAMKIN: I'm going to mark as Exhibit 4 a
20    document bearing Bates range DVSENC_166 to 191.
21    (Exhibit 4 was marked.)
22  BY MS. LAMKIN:
23  Q  Do you recognize this document,
24  Mr. Rothschild?
25  A  I see a document on the screen.

**Page 17**

1  Q  Sir, my question is: Do you recognize the
2  document?
3  A  Not with specificity.
4  Q  Okay. Do you see the application number
5  12/006,457?
6  A  Yes, I do.
7    MS. LAMKIN: Okay. If we could please pull up
8  Exhibit 2, which is the '860 patent, the first
9  page?
10 BY MS. LAMKIN:
11 Q  Do you see the application number here,
12 Mr. Rothschild, 12/006,457?
13 A  I do.
14 Q  Do you see that the application number on the
15 face of the asserted '860 patent is the same as the
16 application number on Exhibit 4?
17 A  I'd have to go back to Exhibit 4, wouldn't I?
18    MS. LAMKIN: If we could please go back.
19    THE WITNESS: I do.
20    MS. LAMKIN: Thank you.
21 BY MS. LAMKIN:
22 Q  So that's the same application -- Exhibit 4 is
23 the same application number as the asserted '860 patent?
24 A  It appears to be.
25    MS. LAMKIN: Okay. If we could please turn to

**Page 18**

1  page 14 of the pdf on this document.
2    Actually, for context, please, if we could
3  return to the first page of Exhibit 4? Thank you.
4  BY MS. LAMKIN:
5  Q  Do you see where it says, "The following
6  Amendment and Remarks are submitted in response to the
7  Office Action dated February 1, 2011"?
8    Do you see that, Mr. Rothschild?
9  A  I do.
10 Q  Do you have an understanding of what that
11 means?
12 A  I do.
13 Q  What does it mean?
14 A  It means the following amendment and remarks
15 are submitted in response to the office action dated
16 February 1st, 2011.
17 Q  Do you understand that the applicant, that is
18 you, is submitting amendment and remarks to the USPTO?
19 A  Through counsel, the amendment was submitted,
20 I believe.
21 Q  So you understand that this is an amendment
22 submitted by applicant in the prosecution history of the
23 '860 patent; correct?
24 A  I do.
25 Q  Okay. If we could now please turn to page 14.

**Page 19**

1  I'm going to read the language starting "Therefore,
2  properly construed."
3  A  Ms. Lamkin, I'll need to see the full page
4  number. I have no idea what page you're on. The
5  document's not showing it in the entirety, for the
6  record.
7  Q  It is, sir. It is showing in its entirety.
8  A  I don't see a page number, for the record,
9  Ms. Lamkin.
10 Q  The technician is circling the page number for
11 you on the screen.
12 A  I can't see that.
13    Okay. I see it now.
14 Q  Okay.
15 A  It was a lag, for the record.
16 Q  I'm reading the last line on the first page.
17 It says, "Therefore, properly construed, the claimed
18 'module generating assembly' must include hardware."
19    Do you see that line, sir?
20 A  I do.
21 Q  Is that the truth?
22 A  I don't understand the question.
23 Q  This was a statement submitted on your behalf
24 to the United States Patent and Trademark Office. Is it
25 a true statement?

**Page 20**

1  A  It is a statement that was submitted in the
2  application, Ms. Lamkin.
3  Q  Sir, my question is this: Is it a true
4  statement?
5  A  It is a statement as was submitted in the
6  application.
7  Q  Sir, it's a yes-or-no question. Is it a
8  true --
9  A  I've given you -- I've given you my answer,
10 Ms. Lamkin.
11 Q  Okay. I'll give you one more opportunity to
12 respond to my question.
13 A  It is a statement that was submitted in the
14 application, Ms. Lamkin. It doesn't need --
15 Q  Thank you, Mr. Rothschild.
16 A  It doesn't -- for the record, it does not need
17 interpretation.
18    MS. LAMKIN: If we could please return to
19 Exhibit 1. Please go to paragraph 21.
20    THE WITNESS: What exhibit are we on?
21 BY MS. LAMKIN:
22 Q  Exhibit 1, page 21. This is your declaration,
23 sir, that you submitted in this matter. Do you see
24 paragraph 21, Mr. Rothschild?
25 A  I do.

**Page 21**

1  Q  At the bottom of page 10, lines 27 to 28, you
2  write "including that the module generating assembly may
3  be, inter alia, a computer application or a web server
4  running on a device."
5      Do you see that, sir?
6  A  I do.
7  Q  Is that a true statement?
8  A  It is the statement -- it is a true statement
9  as it is stated in the -- my declaration, as stated in
10 my declaration.
11 Q  So in your opinion, the module generating
12 assembly might be, inter alia, a computer application or
13 a web server.  Is that true?
14 A  It means what it says, Ms. Lamkin, that
15 including the mobile [sic] -- and I read as follows [as
16 read]:  Including that the mobile generating assembly
17 may be, inter alia, a computer application or a web
18 server running on a device.
19 Q  Is that a true statement, sir?
20 A  It is a true statement.
21 Q  Thank you.
22    Now, please turn to paragraph 22.  At 22, you
23 write [as read]:  The specification is clear, at least a
24 POSITA, that any alleged function for this term is
25 performed by some hardware, such as a web server, file

**Page 22**

1  server, or other computing device.
2      Do you see that, sir?
3  A  I do.
4  Q  Is that a true statement?
5  A  It is a correct statement as reported under
6  paragraph 22 in Exhibit 1, as you defined Exhibit 1,
7  which is, by the way, my declaration in support of the
8  Plaintiff's Opening Claim Construction Brief.
9  Q  Is the first sentence of paragraph 22 a true
10 statement?
11 A  It is a correct statement, Ms. Lamkin.
12 Q  And when you say "for this term," which term
13 are you referring to?
14 A  I don't understand the question.  Could you
15 please repeat it?
16 Q  Yes.
17    First sentence in paragraph 22, you say [as
18 read]:  The specification is clear, at least a POSITA,
19 that any alleged function for this term is performed by
20 hardware.
21    When you say "this term," which term do you
22 mean?
23 A  I believe that would be the term that's to be
24 construed by the court.
25 Q  Which term, sir?

**Page 23**

1  A  I believe it would be the term to be construed
2  by the court, as listed in the affidavit, which is the
3  declaration of Leigh Rothschild in support of the
4  Plaintiff's Opening Claim Construction Brief, as you
5  defined it, Exhibit 1.
6  Q  I'll give you one more opportunity to answer
7  the question, sir.
8     In paragraph 22, when you use the phrase "for
9  this term," which term are you referring to?
10 A  I would ask the court reporter to read back
11 my -- that would be my answer.
12    STENOGRAPHIC REPORTER:  Counsel, do you want
13 me to read back?
14    MS. LAMKIN:  I don't.  Thank you.
15 BY MS. LAMKIN:
16 Q  To be clear, then, in paragraphs 21 and 22,
17 Mr. Rothschild, is it true that you are saying the
18 module generating assembly may be a computer application
19 or web server, a file server, or other computing device?
20 A  I know you want, Ms. Lamkin, me to answer to
21 your questions which would call for speculation.  My
22 answer is it is what it says in the declaration.  I will
23 not speculate.
24 Q  Sir, I'm not asking you to speculate.  I'm
25 asking you to read your own sworn declaration.

**Page 24**

1     I'm asking you, in paragraphs 21 and 22, is it
2  your opinion that the module generating assembly might
3  be a computer application or a web server running on a
4  device or a file server or other computing device?
5  A  My opinion, Ms. Lamkin, is as stated in those
6  paragraphs, which is part of the declaration of Leigh
7  Rothschild in support of the Plaintiff's Opening Claim
8  Construction Brief, as you defined it, Exhibit 1.
9  Q  I'll give you one more opportunity to answer
10 the question, Mr. Rothschild.
11    In paragraphs 21 and 22 of your sworn
12 declaration, document number 31-4, is it your opinion
13 that the module generating assembly may be a computer
14 application or a web server running on a device or a
15 file server or other computing device?
16 A  If the court reporter would like to read back
17 my testimony, as I previously answered this question
18 twice, that would be my answer.
19 Q  Okay.  Thank you, Mr. Rothschild.
20    If we could please turn to Exhibit 2, the
21 asserted '860 patent.
22 A  I would like to add to that, if I would be
23 allowed, Ms. Lamkin.
24 Q  Please.
25 A  Yes.  Your question calls for speculation.

25

And apparently, you want me to vary from what I said in the declaration. And the declaration was carefully thought out by me after a lot of, you know, careful thought.

I believe the declaration to be entirely truthful and accurate, correct. And it is what it says, despite your questions that are calling upon me to speculate. So I would like to have that in the record.

MS. LAMKIN: If we could please turn to Exhibit 2, the '860 patent.

THE WITNESS: And for the record, the exhibit is not before me.

I see it now. There's a lag.

MS. LAMKIN: If the technician could please turn to Column 2 of the '860 patent, right after the figures.

BY MS. LAMKIN:

Q Do you see that, Mr. Rothschild?

A Could you ask me -- could you state what you're asking me to look at, Ms. Lamkin?

Q If you could please turn to Column 2, lines 19 to 22, which I will read into the record. "In at least one embodiment, however, the module generating assembly is at least partially integrated within the computer application, e.g., an interactive word processing

26

program."

Do you see that, sir?

A I do.

Q Do you have an understanding --

A It helps, by the way, when your document person highlights for me. It makes it quicker, Ms. Lamkin. Appreciate that.

Q Do you have an understanding of what that passage means in your patent?

A Yes, I do.

Q Can you please explain it?

A It means that [as read]: In at least one embodiment, however, the mobile generating assembly is at least partially integrated within the computer application, e.g., an interactive word processing program.

In other words, it means what it says. It's the plain and ordinary meaning, as placed in the patent application.

Q Do you recall, in paragraph 21 of your declaration, where you write that the module generating assembly may be, inter alia, a computer application or a web server running on a device?

A I would have to see that exhibit again. If your document person would be so kind as to highlight

27

that section that you're referring to, it would make it much easier for me to provide additional testimony.

MS. LAMKIN: If we could please go to Exhibit 1, paragraph 21.

THE WITNESS: We have a lag again.

BY MS. LAMKIN:

Q Okay. I'm referring specifically to lines 27 and 28, starting with "including."

A Give me a second to look at it, please.

Q Again, the language we're referring to is in your declaration, page 10, lines 27 to 28, where you write "including that the module generating assembly may be, enter alia, a computer application or a web server running on a device."

Do you see that, Mr. Rothschild?

A As highlighted, I see it.

Q Okay. So in your opinion, the module generating assembly may be a computer application or a web server returning on a device; correct?

A That is what it states, Ms. Lamkin.

Q Okay. Now, with that in mind, could we please turn back to Exhibit 2, the '860 patent. In the highlighted language, you write, "In at least one embodiment, however, the module generating assembly is at least partially integrated within the computer

28

application."

Do you see that, sir?

A I do.

Q Can you please explain how the module generating assembly, as a computer application, could be at least partially integrated within a computer application? How do you have --

A Ms. Lamkin --

Q How do you -- sir, let me ask my question.

How is it possible to have a computer application integrated within a computer application?

A First of all, it means what it says, as provided in the specificity of patent number 9,054,860.

Now, I refer you to my declaration in paragraphs 21 through 25. If one reads those paragraphs, it's very clear that the construction that we are asking for, in terms of means plus function, is the correct instruction and not the construction, as you're trying to, today, in today's deposition, to take bits and pieces out of order, put them together, to come up with some disjointed construction that you'll present to the court, as you have in your brief, which is totally erroneous, in my opinion, as I state here in my declaration, which is my declaration in support of the plaintiff's opening claim.

29

1 Because it is very clear, Ms. Lamkin, in
2 paragraphs 21 through 25, if one reads those, as the
3 court will read, as you have read, as your experts have
4 read, it's very clear that this is not a means plus
5 function claim, absolutely not, as we defined here, the
6 reason that it's not. And if it was, there's function
7 that is provided.
8 Now, we detailed that very clearly in
9 paragraphs 21, 22, 23, 24, and 25. And your efforts to
10 take little pieces of little sentences and put them all
11 together to come up with some tortured claim
12 construction that you're trying to present to the court
13 is totally inaccurate.
14 And that is what my declaration states. You
15 may want to mischaracterize my declaration, as you're
16 doing during today's deposition, and that is not
17 correct. That is absolutely not what we're saying.
18 That's not what I said. It's very clear what I said in
19 my declaration in paragraphs 21 through 25. I hope that
20 answers your question.
21    Q   It does, Mr. Rothschild -- does not,
22 Mr. Rothschild, but I'll give you another opportunity.
23      Could you please explain how it's possible to
24 have a computer application partially integrated within
25 a computer application?

30

1    A   I testified that in paragraphs 21 through 25
2 in my declaration, that is explained. If you would like
3 me to read paragraphs 21 through 25 into the record so
4 that you have it before you, I'd be more than happy to
5 do that now. Just tell me when to start, Ms. Lamkin.
6    Q   Mr. Rothschild, I'll give you one more
7 opportunity to answer the question that I'm asking. And
8 that is: How is it possible to have a computer
9 application partially integrated within a computer
10 application?
11    A   If the court reporter would choose to read
12 back my testimony, that would be my -- on this matter,
13 as per your question, that would be my answer, for the
14 third time.
15    Q   You also say, in paragraph 21 --
16    A   I'm sorry to interrupt. I didn't hear an
17 answer if the court reporter is going to read back my
18 testimony.
19    Q   No.
20    A   Sorry.
21    Q   The court reporter is not.
22    A   Oh, okay. I just wanted to put that in the
23 record.
24      So my answer is the same as the other two
25 times. I want it on the record that my answer is the

31

1 same as the other two times. Your question is clearly
2 defined by paragraphs 21 through 25, which will explain,
3 absolutely, your question, for yourself and the court,
4 anyone that is reading this, you know, transcript of the
5 deposition. I'd be more than happy to read that into
6 the record.
7    Q   In paragraph 21 of your declaration,
8 Exhibit 1, you also say that the module generating
9 assembly can be a web server running on a device;
10 correct?
11    A   I would need to have that highlighted. If the
12 document person would be kind enough to do that, I can
13 refer to that statement -- that purported statement that
14 you just read.
15    Q   Do you need the question again,
16 Mr. Rothschild?
17    A   I need it highlighted. There was a lag.
18      So could you repeat the question? I want to
19 make sure the question matches with what I see on the
20 screen, Ms. Lamkin. I appreciate your kindness in this
21 regard.
22    Q   Paragraph 21 of your declaration, you also say
23 that the module generating assembly may be a web server
24 running on a device; correct?
25    A   And I quote from what is highlighted now by

32

1 the document person, [as read]: Including that the
2 mobile generating assembly may be, inter alia, a
3 computer application or a web server running on a
4 device.
5    Q   It's a yes-or-no question, sir. In paragraph
6 21 of your declaration, do you say that the module
7 generating assembly may be a web server running on a
8 device?
9    A   I see that, and that is the statement that I
10 made, Ms. Lamkin.
11    Q   The answer is yes, sir?
12    A   The answer would be yes. That is the
13 statement I made in the declaration, which would be, for
14 the record, the Declaration of Leigh M. Rothschild in
15 Support of the Plaintiff's Opening Claim Construction
16 Brief, Exhibit 1, as you defined it.
17    Q   Okay. If we could please turn back to
18 Exhibit 2, the same provision in Column 2. Again,
19 Column 2 of the '860 asserted patent, it says, "In at
20 least one embodiment, however, the module generating
21 assembly is at least partially integrated within the
22 computer application, e.g., an interactive word
23 processing program."
24      Do you see that, sir?
25    A   No, I don't. It's not highlighted by your

### Page 33

1  document person. If they could zoom, also, in on it,
2  I'd appreciate it. Is it possible? Perfect.
3  Could you repeat the question, Ms. Lamkin?
4  Q  Am I accurately reading the text from Column 2
5  of the '860 patent, "In at least one embodiment,
6  however, the module generating assembly is at least
7  partially integrated within the computer application,
8  e.g., an interactive word processing program."
9  Have I accurately read your patent, sir?
10  A  You accurately read that section of the
11  specification of the 9,054,860 patent, Column 2,
12  apparently line 19.
13  Q  Will you please explain, sir, how a web server
14  can be at least partially integrated within a computer
15  application?
16  A  It is as it says, and it has the plain and
17  ordinary meaning of the words, which are [as read]: In
18  at least one embodiment, however, the mobile generating
19  assembly is at least partially integrated within the
20  computer application, e.g., an interactive word
21  processing program.
22  Now, if you're referring to how that applies
23  to this motion that's before the court for claim
24  construction, I would refer you, again, to paragraphs 21
25  through 25, where we talk about our construction versus

### Page 34

1  your construction of means plus function, where we
2  clearly show that this is a means plus function
3  absolutely -- where we clearly slow the definition of
4  means plus function and explain the construction that
5  we've taken upon, that we've asserted or that we are
6  asking the court to validate, we're asking the court to
7  validate.
8  Q  I'll give you one more opportunity to answer
9  the question that I've asked, sir. Can you please
10  explain how a web server running on a device can be at
11  least partially integrated within a computer
12  application?
13  A  The words -- my answer is that the words are
14  clearly defined in the specificity. And then there's
15  additional support for the claim construction that we're
16  now talking about in paragraphs 21 through 25 in my
17  declaration.
18  If you would like, Ms. Lamkin, I'd be more
19  than happy to read that explanation on 21 -- excuse me,
20  those paragraphs 21 through 25 into the record, which
21  would, I believe, answer your question.
22  The question is fragmented and, therefore,
23  could be not answered in partial. Again, I believe
24  you're taking little bits and pieces and trying to come
25  up with a distorted claim construction, which is not,

### Page 35

1  clearly, what should be done.
2  The claim -- we are, in my declaration, we are
3  trying to provide a full explanation to your question,
4  which is, in this case, for this particular claim
5  construction term, contained what's in Claim 21 through
6  25 -- claimed within paragraph, excuse me, 21 --
7  correcting myself -- paragraph 21 through 25 which, if
8  understood and read, would answer your question in
9  totality.
10  Q  If we could please turn to paragraph 25 of
11  Exhibit 1.
12  A  Paragraph 25.
13  Q  Do you see paragraph 25 highlighted,
14  Mr. Rothschild?
15  A  A bit of a lag, but I now do.
16  And thank you for zooming in, to the document
17  person. Thank you.
18  Q  I'm referring specifically to line 16,
19  starting with "a POSITA." I'll read it into the record.
20  [As read]: A POSITA would understand that the
21  corresponding structure for any alleged function is
22  module generating assembly 50, including as outlined in
23  Figure 7 and its corresponding description, namely '860,
24  Column 7, line 48 to Column 8, line 62.
25  Can you explain what you mean by that

### Page 36

1  sentence, Mr. Rothschild?
2  A  Certainly, Ms. Lamkin.
3  Right. So repeating where it says "a POSITA,"
4  and I am defined as a POSITA -- right? -- a person of --
5  right. Right. That I would understand -- right, that I
6  would understand, as POSITA, that the corresponding
7  structure for any alleged function is a module
8  generating assembly, clearly as outlined in Figure 7.
9  So we're referring you, Ms. Lamkin --
10  referring the court, I should say, in this declaration,
11  to Exhibit [sic] 7, where we clearly, in addition to
12  Exhibit 7, with Exhibit 7 and in addition to Exhibit 7,
13  clearly show function, clearly show function as part of
14  the means plus function claim construction, which is a
15  different construction, by the way, than you're taking.
16  So we are pointing you to Exhibit 7 here as
17  one place where the court could see function in terms of
18  the claim.
19  MS. LAMKIN: Could we please turn to Figure 7
20  in the '860 patent, Exhibit 2? I'm sorry for not
21  being more clear to the technician. Exhibit 2,
22  please. Correct. Thank you.
23  And then just above -- just -- thank you very
24  much.
25  BY MS. LAMKIN:

**37**

1 Q Where is the module generating assembly 50 in
2 Figure 7 of the '860 patent, Mr. Rothschild?
3 A Could you repeat the question?
4 Q Where is module generating assembly 50 in
5 Figure 7 of the '860 patent?
6 A Well, referring to the drawing, it is, as is
7 stated, Ms. Lamkin, it's self-evident.
8 Q Your testimony, sir, is that it's self-evident
9 that module generating assembly 50 is in Figure 7?
10 A My testimony is the exhibit as -- the exhibit
11 is as it was published in my declaration, as Figure 7.
12 Nothing more, nothing less.
13 Q I'll ask the question one more time,
14 Mr. Rothschild. Can you please explain where module
15 generating assembly 50 is depicted in Figure 7 of the
16 '860 patent?
17 A My answer is that Figure 7, as was reproduced
18 in my declaration, is as it stands, is as it was
19 published, and is self-explanatory.
20     MS. LAMKIN: If we could please turn to
21 Exhibit 2, Column 7.
22 BY MS. LAMKIN:
23 Q In your declaration -- and if you need to
24 switch back, Mr. Rothschild, that's fine.
25     In your declaration, paragraph 25, you cite --

**38**

1 A Well, the documents, Ms. Lamkin, are not --
2 excuse me for interrupting, by the way. The document
3 you're referring to is not on the screen.
4     MS. LAMKIN: Would you please turn back to
5 Exhibit 1, paragraph 25?
6 BY MS. LAMKIN:
7 Q Do you see in paragraph 25 where you cite
8 Column 7, line 48 to Column 8, line 62?
9 A If you could highlight just that particular
10 section, please.
11     I do see that.
12 Q Okay. And is it your testimony that the
13 module generating assembly corresponding structure is
14 contained within Column 7, line 48 to Column 8, line 62
15 in the '860 patent?
16 A My testimony is that, as contained in my
17 declaration, paragraph 25, that the module generating
18 assembly 50, including as outlined in Figure 7, and its
19 corresponding description, namely '860/7:48-8:62, that
20 was what we put in the declaration. That is what is
21 correct.
22     And as I said before and testified to before,
23 Exhibit 7, in addition to additional support that we
24 provided, as the declaration clearly shows, that there
25 is functionality in terms of the claim construction.

**39**

1     MS. LAMKIN: If we could please turn back to
2 Columns 7 and 8 in the '860 patent?
3 BY MS. LAMKIN:
4 Q So just by way of reminder, Mr. Rothschild,
5 you've cited Column 7, starting at line 48, to Column 8,
6 going to line 62; correct?
7 A I have not cited it, to the best of my
8 knowledge, in today's testimony. It is cited in the
9 declaration, paragraph 25, as you've defined it,
10 Exhibit 1.
11     MS. LAMKIN: If we could highlight at
12 Column 7, line 60 to 66, please.
13 BY MS. LAMKIN:
14 Q You see that language, Mr. Rothschild?
15 A No, I don't. It's a teeny little -- it needs
16 to be zoomed by the document person.
17     I do see it now.
18 Q That provision is within the section that
19 you've cited in your declaration --
20 correct? -- Column 7, 48 to 8, 62?
21 A It's not fully highlighted, I would point out.
22 Q I'm only asking you, sir, if the parts we have
23 highlighted, Column 7, line 60 to 66, is a subset of the
24 section that you cited in your declaration, 7, 48 to 8,
25 62.

**40**

1 A Could you scroll -- could you scroll the
2 patent, please? Very hard when you're not working with
3 the document in front of you, Ms. Lamkin.
4     I point out for the record --
5 Q It's in the Chat, sir. You're welcome to
6 download it. I have provided the actual document to you
7 in the Chat, and you're more than welcome to download it
8 and hold it in your hand.
9 A Thank you for that courtesy.
10     Could you repeat the question?
11 Q Yes. Does Column 7, line 60 to 66, fall
12 within your citation of Column 7, line 48 to Column 8,
13 line 62?
14 A With that, yes, I believe that it would be the
15 case.
16 Q Okay.
17 A Yes.
18 Q I'm going to read the highlighted section into
19 the record. "In addition, the module generating
20 assembly may be at least partially integrated within a
21 computer application such as an interactive word
22 processing program, as a feature, option, or plug-in for
23 example."
24     Do you see that, Mr. Rothschild?
25 A I do.

---

**Page 41**

Q Okay. So if the module generating assembly is a computer application, as you state in your declaration, how can a computer application be at least partially integrated within a computer application?

A I believe we explained, to answer your question, the claim construction, in my declaration, our position on claim construction in paragraphs -- in terms of the means plus function claim that you're asking to be construed, asking the court to be construed, in paragraphs 21 through 25.

I would point out that there's an introduction in paragraph 20, but the substance is in paragraph 21 to 25. If we had time, which I don't believe we do now, I'd be happy to read that into the record. And that would be the answer.

And that citation, that reading would be the answer to your question, as opposed to the disjointed sentences and fragments that you've been presenting today to try to put together in some kind of disjointed fashion, to prove out a tortured claim construction that the defendant, that your client is taking upon themselves.

MS. LAMKIN: If we could please turn to page three of Mr. Rothschild's declaration, Exhibit 1?

Thank you.

---

**Page 42**

BY MS. LAMKIN:

Q Do you see the first line on page three of your declaration, Mr. Rothschild, where you say "Moreover, the Asserted Claims were challenged in an IPR, but the IPR was not instituted"? Did you see -- do you see that?

A I thought you said page -- what paragraph, please?

Q Line one --

A What paragraph?

Q Line one, page three, just above paragraph six.

A So paragraph five.

I see the statement, Ms. Lamkin. And I read it as follows: "Moreover, the Asserted Claims were challenged in an IPR, but the IPR was not instituted."

Q How do you know the IPR was not instituted, Mr. Rothschild?

A I was informed of such by my counsel at the time.

Q When was the time?

A I do not recall with specificity.

Q Did you review the IPR when drafting your declaration?

A I believe I did. It was many years ago. But

---

**Page 43**

I believe that I did, yes.

Q So you believe that the last time you reviewed the IPR was many years ago?

A Yes. That would be correct.

Q Okay. In paragraph six, the last line is, "Plaintiff is presently the exclusive assignee of the Patent-in-Suit."

Do you see that, sir?

A I do.

Q Is that a true statement?

A To the best of my knowledge, that is a true statement.

Q Okay. Where did you get the information in that sentence, "Plaintiff is presently the exclusive assignee of the Patent-in-Suit"?

A From attorneys, from counsel.

Q Did you draft that sentence in your declaration?

A I did not draft it, but reviewed it and signed the declaration accordingly.

Q How much of your declaration -- sorry, sir. How much of your declaration did you personally draft?

A I did not draft the declaration. I reviewed the declaration.

Q Your attorney drafted your declaration for

---

**Page 44**

you?

A That would be correct.

Q On paragraph eight -- do you see paragraph eight?

A I now inform you, Ms. Lamkin, and all parties, that it's now 5:00. As we reported earlier, and as I notified my counsel to notify you with great specificity, both orally and in writing, on several occasions, unfortunately, I have a hard stop at 5:00, a previous commitment that I can't change.

But I also would like to inform you, Ms. Lamkin, that I'm more than happy, before any deadlines are due, to -- if allowed by the rules, to sit down with you again to complete this deposition, if allowed.

MS. LAMKIN: Our responsive brief is due tomorrow, under the court's order, Mr. Rothschild. So unless you want to sit tomorrow morning, which I'm happy to do, if you would like to sit tomorrow morning, then we can continue.

THE WITNESS: I would be more than happy to talk about scheduling with counsel, not with you, Ms. Lamkin. And my counsel, I am sure, would inform you of my availability.

MS. LAMKIN: You do not know whether or not

45

1 you are available tomorrow morning, Mr. Rothschild?
2     THE WITNESS: I need to talk to counsel,
3 Ms. Lamkin. Do you want to ask me again?
4     MS. LAMKIN: Okay. And I just want to make
5 sure you understand, Mr. Rothschild, that your
6 client -- my client is being prejudiced by not
7 being able to ask you questions about your
8 declaration, which was not disclosed, and we will
9 move to strike. Do you understand that, sir?
10     THE WITNESS: I choose to get my legal advice,
11 Ms. Lamkin, not from you. You don't represent me
12 now or haven't represented me in the past. So I do
13 have legal counsel that I take advice from. With
14 all due respect, Ms. Lamkin, I don't need your
15 legal advice. But thank you for offering it.
16     MS. LAMKIN: Okay. This deposition is
17 concluded.
18     STENOGRAPHIC REPORTER: Okay. Counsel,
19 regular time on the transcript?
20     MS. LAMKIN: No. I need a rush of the -- I
21 need a rush of the rough now. And then how quickly
22 could you -- I don't want to make you work on
23 Christmas weekend.
24     (Off the record.)
25     STENOGRAPHIC REPORTER: Absolutely,

46

1 absolutely.
2     And, Mr. Palavan, did you also want a rough
3 draft?
4     MR. PALAVAN: Sure. Actually, no, we should
5 be good. I don't need a rough.
6     (The reading and signing of the deposition is
7 not waived.)
8     (At 5:02 p.m. the deposition was concluded.)

47

1 State of Maryland
2 Baltimore City
3     I, Dawn A. Hillier, a Notary Public of the State
4 of Maryland, Baltimore City, do hereby certify that the
5 within-named witness personally appeared before me via
6 Zoom at the time and place herein set out, and after
7 having been first duly sworn by me, according to law,
8 was examined by counsel.
9     I further certify that the examination was
10 recorded stenographically by me and this transcript
11 is a true record of the proceedings. I further certify
12 that I am not of counsel to any of the parties, nor an
13 employee of counsel, nor related to any of the parties,
14 nor in any way interested in the outcome of the action.
15     As witness my hand and seal this 29th day of
16 December 2022.
17
18
19 *Dawn A. Hillier* (signature)
20 _____
21 Dawn A. Hillier
22
23 My Commission Expires August 14, 2026
24
25